# Selected docket entries for case 20−1477

Generated: 07/28/2020 11:01:45

| Filed | Document Description | Page | Docket Text |
|-------|---------------------|------|-------------|
| 05/05/2020 | 1 | | ORIGINAL PROCEEDING, PETITION FOR WRIT OF HABEAS CORPUS, on behalf of Petitioner Lawal Olaniyi Babafemi, FILED.[2832557] [20−1477] |
| | 1 Docketing_Notice_OP_cases | 2 | |
| | 1 Original Proceeding FILED | 4 | |
| 05/05/2020 | 2 Motion FILED (c) | 66 | MOTION, to file successive petition, on behalf of Petitioner Lawal Olaniyi Babafemi, FILED. Service date 03/27/2020 by US mail.[2832571] [20−1477] |
| 05/05/2020 | 3 Distr_instructions_ps_pris_successive | 128 | INSTRUCTIONAL FORMS, to Pro Se litigant, SENT.[2832573] [20−1477] |
| 05/11/2020 | 9 Notice of Appearance for Additional or Substitute Counsel FILED | 129 | NOTICE OF APPEARANCE AS SUBSTITUTE COUNSEL, on behalf of Respondent United States of America, FILED. Service date 05/11/2020 by CM/ECF, US mail. [2836527] [20−1477] |
| 06/04/2020 | 22 Motion Order FILED | 131 | MOTION ORDER, denying motion to file successive petition [2] filed by Petitioner Lawal Olaniyi Babafemi, by RJS, MHP, WJN, copy to pro se, FILED. [2854372][22] [20−1477] |
| 06/04/2020 | 24 Certified copy ISSUED | 132 | CERTIFIED ORDER, dated 06/04/2020, to EDNY (BROOKLYN), ISSUED.[2854729] [20−1477] |
| 07/27/2020 | 26 Certified Copy Mandate ISSUED | 133 | CERTIFIED COPY OF ORDER, dated 06/04/2020, determining the appeal to EDNY, copy sent to pro se, ISSUED.[Mandate][2892973] [20−1477] |

**United States Court of Appeals for the Second Circuit**
**Thurgood Marshall U.S. Courthouse**
**40 Foley Square**
**New York, NY 10007**

**ROBERT A. KATZMANN**
CHIEF JUDGE

**CATHERINE O'HAGAN WOLFE**
CLERK OF COURT

Date: May 05, 2020
Docket #: 20-1477
Short Title: Babafemi v. United States of America

DC Docket #: 1:13-cr-109-1
DC Court: EDNY (BROOKLYN)
DC Judge: Gleeson

**DOCKETING NOTICE**

A Petition for Writ of Habeas Corpus filed by 20-1477 has been docketed in the above referenced case under [docket number]. This number must appear on all documents related to this case that are filed in this Court. For pro se parties the docket sheet with the caption page, and an Acknowledgment and Notice of Appearance Form are enclosed. In counseled cases the docket sheet is available on PACER. Counsel must access the Acknowledgment and Notice of Appearance Form from this Court's website http://www.ca2.uscourts.gov.

The form must be completed and returned within 14 days of the date of this notice. The form requires the following information:

YOUR CORRECT CONTACT INFORMATION: Review the party information on the docket sheet and note any incorrect information in writing on the Acknowledgment and Notice of Appearance Form.

The Court will contact one counsel per party or group of collectively represented parties when serving notice or issuing our order. Counsel must designate on the Acknowledgment and Notice of Appearance a lead attorney to accept all notices from this Court who, in turn will, be responsible for notifying any associated counsel.

CHANGE IN CONTACT INFORMATION: An attorney or pro se party who does not immediately notify the Court when contact information changes will not receive notices, documents and orders filed in the case.

An attorney and any pro se party who is permitted to file documents electronically in CM/ECF must notify the Court of a change to the user's mailing address, business address, telephone number, or e-mail. To update contact information, a Filing User must access PACER's Manage

My Appellate Filer Account, https://www.pacer.gov/psco/cgi-bin/cmecf/ea-login.pl. The Court's records will be updated within 1 business day of a user entering the change in PACER.

A pro se party who is not permitted to file documents electronically must notify the Court of a change in mailing address or telephone number by filing a letter with the Clerk of Court.

CAPTION: The caption in a Petition for a Writ of Mandamus of Writ or Prohibition is *In re [EDIT], Petitioner.* It shall not bear the name of the district court judge. *(Local Rule 21(a)).*

DESIGNATIONS OF RESPONDENTS: All parties below other than the petitioner shall be deemed respondents for all purposes. *(FRAP21(b)).*

NO ANSWER: Unless the Court directs otherwise no answer to a petition for writ of mandamus or prohibition will be accepted. *(FRAP21(b)).*

Inquiries regarding this case may be directed to 212-857-8551.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 17 2020 ★

BROOKLYN OFFICE

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### MOTION FOR AN ORDER AUTHORIZING THE DISTRICT COURT
### TO CONSIDER A SUCCESSIVE OR SECOND HABEAS CORPUS APPLICATION
### PURSUANT to 28 U.S.C. §§ 2244 (b), 2254
### BY A PRISONER IN STATE CUSTODY

| NAME: |
|-------|
| Lawal Babafemi |

| PLACE OF CONFINEMENT: | PRISONER NUMBER: |
|----------------------|------------------|
| Allenwood Low | 82814-053 |

### Instructions–Read Carefully

(1) This motion must be legibly handwritten or typewritten and signed by the movant under penalty of perjury. All documents must be on 8½ x 11 inch paper; the Court will not accept other paper sizes. Any false statements of a material fact may serve as the basis for prosecution and conviction for perjury.

(2) All questions must be answered concisely in the proper space on the form.

(3) Movant seeking leave to file a second or successive petition is required to use this form. In capital cases only, the use of this form is optional.

(4) Movant may use additional pages only to explain additional grounds for relief and set forth additional facts and documents supporting any alleged grounds. Separate petitions, motions, briefs, arguments, etc. should not be submitted.

(5) In capital cases only, the use of this form is optional, and separate petitions, motions, briefs, arguments, may be submitted.

2020 MAY - PM 12: 50 CLERK OFFICE U.S. COURT APPEAL RECEIVED

Rev. 1.24.2018

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

Lawal Babafemi
(Petitioner)

v.

United States of America

**CERTIFICATE OF SERVICE***

Docket Number: 13-CR-109-IUG

Civil Action No.: _____

I, Lawal Babafemi _____, hereby certify under penalty of perjury that
on _March 27th, 2020_, I served a copy of _Memorandum Brief and Attachments_
(print name)
(date)

_____
(list all documents)

by (select all applicable)**

___ Personal Delivery      Certified
                       x  United States Mail      ___ Federal Express or other
                                                      Overnight Courier

___ Commercial Carrier    ___ E-Mail (on consent)

on the following parties:

| Clerk of Court/Hon. J. Gleeson/EDNY 225 Cadman Plaza East Brooklyn NY 11201 | | | | |
|------|---------|------|-------|----------|
| Name | Address | City | State | Zip Code |
| AUSA Zainab Ahmad/Office US Atty 271 Cadman Plaza East Brooklyn NY 11201 | | | | |
| Name | Address | City | State | Zip Code |
| | | | | |
| Name | Address | City | State | Zip Code |
| | | | | |
| Name | Address | City | State | Zip Code |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

_26th March, 2020_
Today's Date

_____
Signature

Certificate of Service Form (Last Revised 12/2015)

# MOTION

1.  (a)  Name and location of court which entered the judgment of conviction under attack
        United States District Judge, Eastern District of New York,
        225 Cadman Plaza East, Brooklyn New York 11201
    (b)  Case number ___13-CR-109___

2.  Date of judgment of conviction ___August 12, 2015___

3.  Length of sentence ___22 years___ Sentencing Judge ___Hon. John Gleeson___

4.  Nature of offense or offenses for which you were convicted: _____
    Conspiracy to Provide Material Support to a Foreign Terrorist Organ-
    ization 18 USC 2339B (A) (1), 2239b(d) and 3551; and attempted provision
    same as above and (2)

5.  Have you ever filed a post-conviction petition, application, or motion for collateral relief
    in any federal court related to this conviction and sentence?
    Yes [ ] No [X.]
    If "yes", how many times? _____ (if more than one, complete 6 and 7 below as
    necessary)
    (a) Name of court _____
    (b) Case number _____
    (c) Nature of proceeding _____
    _____
    _____
    (d) Grounds raised (list all grounds; use extra pages if necessary)_____
    _____
    _____
    _____
    _____
    _____
    (e) Did you receive an evidentiary hearing on your petition, application, or motion?
    Yes [ ] No [X]
    (f) Result _____
    _____
    (g) Date of result _____

6.  As to any second federal petition, application, or motion, give the same information:
    (a) Name of court _____
    (b) Case number _____

Rev. 1.24.2018

(c)  Nature of proceeding _____

_____

(d) Grounds raised (list all grounds; use extra pages if necessary) _____

_____

_____

_____

_____

_____

(e) Did you receive an evidentiary hearing on your petition, application, or motion?
Yes [ ]  No [X]
(f) Result _____

_____

(g) Date of result _____

7.    As to any third federal petition, application, or motion, give the same information:
(a) Name of court _____
(b) Case number _____
(c)  Nature of proceeding _____

_____

(d) Grounds raised (list all grounds; use extra pages if necessary)_____

_____

_____

_____

(e) Did you receive an evidentiary hearing on your petition, application, or motion?
Yes [ ]  No [X]
(f) Result_____

_____

(g) Date of result_____

8.    Did you appeal the result of any action taken on your federal petition, application, or
motion? (Use extra pages to reflect additional petitions if necessary)
(1) First petition, etc. No [X]  Yes [ ] Appeal No. _____
(2) Second petition, etc. No [X]  Yes [ ] Appeal No. _____
(3) Third petition, etc. No [X]  Yes [ ] Appeal No. _____

Page 4                                                      Rev. 1.24.2018

9.  If you did not appeal from the adverse action on any petition, application, or motion, explain briefly why you did not:  New laws were not available at the time of sentencing.

10.  State concisely every ground on which you now claim that you are being held unlawfully. Summarize briefly the facts supporting each ground.

    A.  Ground one: Petitioner's sentence was procedurally & substantively unreasonable.

    Supporting FACTS (tell your story briefly without citing cases or law): Petitioner's sentencing transcripts do not appropriately address any actual crime that Petitioner committed pertaining to attempting to provide material support to a foreign terrorist organization.

Was this claim raised in a prior federal petition, application, or motion?
Yes [ ]  No [X]

Does this claim rely on a "new rule of constitutional law?" Yes [ ]  No [X]
If "yes," state the new rule of constitutional law (give case name and citation):

Does this claim rely on "newly discovered evidence?" Yes [X]  No [ ]
If "yes," briefly describe the newly discovered evidence, attach a copy (if available), state when you obtained it, and why it was not previously available to you.
Recent new case laws and decisions not previously available at the time of sentencing; obtained while incarcerated.

Rev. 1.24.2018

B.   Ground two:   Change in language pursuant to the statute of conviction.

Supporting FACTS (tell your story briefly without citing cases or law):
Petitioner was sentenced on an illegal first impression, now Supreme Court decision that, individuals cannot be charged or enhanced on actual or relevant conduct; only the statute of conviction.

_____

Was this claim raised in a prior federal petition, application, or motion?
Yes ☐   No ☒

Does this claim rely on a "new rule of constitutional law?"   Yes ☐   No ☒
If "yes," state the new rule of constitutional law (give case name and citation):

_____

_____

Does this claim rely on "newly discovered evidence?" Yes ☒   No ☐
If "yes," briefly describe the newly discovered evidence, attach a copy (if available), state when you obtained it, and why it was not previously available to you
Recent new case laws (Supreme Court Rulings) not previously available at the time of sentencing and obtained while incarcerated.

_____

_____

_____

**[Additional grounds and facts and documents supporting any alleged grounds may be set forth on extra pages if necessary]**

11.   Do you have any motion or appeal now pending in any court as to the judgment now under attack? Yes ☐   No ☒
If yes, Name of court _____   Case number _____

Page 6                                                    Rev. 1.24.2018

C. Ground three: The Court (nor Govt) stated any material support
or resources that an actual crime was committed.

Supporting FACTS (tell your story briefly without citing cases or law):
The Court allowed erroneous assertions not supported by
real facts that were not supported by actual or material
resources, thus violated Petitioner's 5th Amendment Rights.

Was this claim raised in a prior federal petition, application, or motion?
Yes ☐   No ☒

Does this claim rely on a "new rule of constitutional law?" Yes ☐  No ☒
If "yes," state the new rule of constitutional law (give case name and citation):

Does this claim rely on "newly discovered evidence?" Yes ☒  No ☐
If "yes," briefly describe the newly discovered evidence, attach a copy (if
available), state when you obtained it, and why it was not previously available to
you.
Recent new case laws (Supreme Court Rulings) not previously
available at the time of sentencing obtained while incarcerated.

Page 6A.                                      Rev. 1.24.2018

D. Ground four: <u>The Court erred in not sentencing Petitioner</u>
<u>based on the national sentencing disparities of others or</u>
<u>similar conduct and charges.</u>
Supporting FACTS (tell your story briefly without citing cases or law):
<u>The District Court must avoid unwarranted sentencing</u>
<u>disparities among defendnats who have been found guilty</u>
<u>of similar correct charges.</u>
_____
_____
_____

Was this claim raised in a prior federal petition, application, or motion?
Yes ☐ No ☒

Does this claim rely on a "new rule of constitutional law?"  Yes ☐ No ☒
If "yes," state the new rule of constitutional law (give case name and citation):
_____
_____
_____

Does this claim rely on "newly discovered evidence?" Yes ☒ No ☐
If "yes," briefly describe the newly discovered evidence, attach a copy (if
available), state when you obtained it, and why it was not previously available to
you
<u>Recent new case laws (Supreme Court Rulings) not previously</u>
<u>available at the time of sentencing obtained while incarcerated.</u>
_____
_____
_____
_____
_____

**[Additional grounds and facts and documents supporting any alleged grounds
may be set forth on extra pages if necessary]**

Do you have any motion or appeal now pending in any court as to the judgment now
under attack? Yes ☐ No ☒
If yes, Name of court _____ Case number _____

Page 6B

Rev. 1.24.2018

Wherefore, movant prays that the United States Court of Appeals for the Second Circuit grant an Order Authorizing the District Court to Consider Applicant's Second or Successive Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254.

_____
Movant's Signature

I declare under Penalty of Perjury that my answers to all the questions in this motion are true and correct.

Executed on _26th March, 2020_    _____
[date]                              Movant's Signature

## PROOF OF SERVICE

Movant must send a copy of this motion and all attachments to the attorney general of the state in which applicant was convicted.

I certify that on _March 27th, 2020_, I mailed a copy of this motion*
[date]

and all attachments to _AUSA & Clerk of Court_ at the following address:    NY 11201

_AUSA Zainab Ahmad/office US Atty 271 Cadman Plaza East Brooklyn_

_Clerk of Court/Hon. J. Gleeson/EDNY 225 Cadman Plaza East Brooklyn NY 11201_

_____
Movant's Signature

_____

*     Pursuant to FRAP 25(a), "Papers filed by an inmate confined in an institution are timely filed if deposited in the institution's internal mail system on or before the last day of filing. Timely filing of papers by an inmate confined in an institution may be shown by a notarized statement or declaration (in compliance with 28 U.S.C. § 1746) setting forth the date of deposit and stating that first-class postage has been prepaid."

Rev. 1.24.2018

**Federal Rules of Appellate Procedure Form 7.   Declaration of Inmate Filing**

United States District Court for the District of <u>Eastern District of New York</u>

| | |
|---|---|
| United States of America | ) |
| *Plaintiff,* | ) |
| v. | ) |
| | ) |
| Lawal Babafemi | ) |
| *Defendant.* | ) |

Case No. <u>13-CR-109 (JG)</u>

Civil Action No. <u>      </u>

I am an inmate confined in an institution. Today, <u>3/26/20</u> [*insert date*], I am depositing the <u>2255(h)(2)</u> [*insert title of document; for example, "notice of appeal"*] in this case in the institution's internal mail system. First-class postage is being prepaid either by me or by the institution on my behalf.

I declare under penalty of perjury that the foregoing is true and correct (see 28 U.S.C. § 1746; 18 U.S.C. § 1621).

Sign your name here <u>             </u>

Signed on <u>3/26/20</u>     [insert date]

[*Note to inmate filers: If your institution has a system designed for legal mail, you must use that system in order to receive the timing benefit of Fed. R. App. P. 4(c)(1) or Fed. R. App. P. 25(a)(2)(C).*]

UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF NEW YORK

Lawal Babafemi
    (Petitioner)

                              Civil Action No. _____

v                             | Criminal Action No.: 13-CR-109 (JG)

United States of America
    (Respondents)


PETITIONER'S MEMORANDUM OF LAW IN SUPPORT
(AND IN LIGHT OF NEW CASE LAWS)
MOTION TO VACATE, SET ASIDE OR CORRECT
CONVICTION AND SENTENCE PURSUANT
TO PETITIONER'S 28 U.S.C. §2255
(h)(2) PETITION
---------------------------------------------

NOW COMES the Petitioner, Lawal Babefemi, Pro Se, and moves this Honorable Court to vacate, set aside or correct his conviction and sentence pursuant to this 28 U.S.C. §2255(h)(2) petition, and Petitioner states as follows:

## I.  BACKGROUND

On or around February 2013; the Government (by way of a Court Order) issued an arrest warrant against Petitioner based on an indictment carrying four (4) counts ranging from Conspiracy to Provide Material Support to a Foreign Terrorist Organization to multiple 924(c) charges.

Post facto of an Extradition Order in which Petitioner willingly agreed to (after being tortured in his own home country's jail of Nigeria, Africa); Petitioner ultimately plead to the following two counts such as: [1]


### COUNT ONE

(Conspiracy to Provide Material Support
to a Foreign Terrorist Organization)

In or about and between January 2010 and August 2011, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendant LAWAL OLANIYI BABAFEMI, also known as "Abdullah"

---

Footnote (1): See Attachment of the Psychology Report  (#2)

1

and "Ayatollah Mustapha," together with others, did knowingly and intentionally
conspire to provide material support and resources, as defined in Title 18,
United States Code, Section 2339A(b), including services and personnel, including
himself, to a foreign terrorist organization, to wit: al-Qaeda in the Arabian
Peninsula.

(Title 18, United States Code, Sections 2339B(a)(1), 2339B(d) and 3551
et seq.)


## COUNT TWO
(Provision and Attempted Provision of Material
Support to a Foreign Terrorist Organization)

In or about and between January 2010 and August 2011, both dates being
approximate and inclusive, within the extraterritorial jurisdiction of the
United States, the defendant LAWAL OLANIYI BABAFEMI, also known as "Abdullah"
and "Ayatollah Mustapha," together with others, did knowingly and intentionally
provide and attempt to provide material support and resources, as defined
in Title 18, United States Code, Section 2339(A(b), including services and
personnel, including himself, to a foreign terrorist organization, to wit:
al-Qaeda in the Arabian Peninsula.

(Title 18, United States Code, Sections 2339B(a)(1), 2339(d), 2 and 3551
et seq.)


Petitioner now appropriately files this timely motion pursuant to a 2255(h)(2);
based on the Grounds that new case laws in support not available at the time
of Petitioner's sentence had occurred. (2)


Petitioner is now 40 years old at the time of this filing; having served
about 8½ years of his 22 year(s) sentence.

## II.  PRELIMINARY STATEMENT
Petitioner seeks relief under statute 28 USC 2255 Habeas Petition; pursuant
to a second and successive filing under the Rule where it states when an individual
could (or should) file pursuant to the 2255 statute. The Rules pursuant 28
USC §2255 does address that an individual can file even past the one (1) year
statute of limitations; when or on the grounds that he is "actually innocent"

---

Footnote (2): Petitioner was sentenced on August 12, 2015; yet was taken into
custody on or around August 2011 in Nigeria, Africa.

2

of a particular charge (or enhancement illegally derived) and in the interest
of brevity and judicial economy, when a correction of an illegal sentence
must be further adjudicated such as:

1) To prevent a complete miscarriage of Justice that would
   result from allowing a unconstitutional sentence to stand
   (U.S. v. Cabey) 429 F.3d 93 (2005) (Also see), (U.S. Maybeck)
   23 F.3d 888 (1994), (U.S. v. Mikalajunas) 186 F.3d 490, 495
   (1999)

2) A new claim raised could not have been raised in a prior
   motion; nor presented previously because the issue raised
   was not available at the time of sentencing; ((2255)(h)(2))

3) A change in the law that directly effect the guideline range
   of his sentence or incorrectly created resulting in an im-
   proper classification (U.S. v. Whitley), 737 F.App x 147,
   148-49 (4th Cir. 2018); (Also see) (U.S. v. McCollum),885
   F.3d 300, 307-09 (2018); or

4) Newly discovered evidence that if proven and viewed in the
   light of the evidence as a whole would be suffcent to est-
   ablish by clear and convincing evidence; that no reasonable
   fact finder would have found the movant guilty of the offense.

### III. STATEMENT OF FACTS

Petitioner acknowledges that in his plea (signed) agreement; he agreed
to not file an appeal or otherwise challenge, by petition pursuant to 28 USC
§2255 or any other provision, the conviction or sentence in the event that
the Court imposes a term of imprisonment of 360 months or below. Thus waiving
all his rights to appeal Post Facto of the sentence.

However, Petitioner now understands that he cannot waive his rights
constitutionally (even as a non-U.S. citizen); when challenging his rights
pursuant to any violation of the amendments of the United States. Petitioner
now challenges that his 5th Amendment Rights of Due Process were in fact violated.

Accordingly, Petitioner cites New Supreme Court Ruling that clearly contradicts
any district court's decision that Petitioner waived his rights by signing
and/or agreeing to do so during the sentencing process now decided in (U.S.
v. Class).

3

As recently as February 21, 2018, Supreme Court decided in <u>favor</u> in the case (<u>Class v. United States</u>), 138 S.Ct. 798, 200 L.Ed. 2d 37; 2018 US Lexis 1378; 86 U.S.L.W 4055; 27 FLA.L.Weekly Fed.5.60 No. 16-424; that a valid guilty plea forgoes not only a fair trial, but also other accompanying constitutional guarantees. While those simultaneously relinquished rights include the privilege against compulsory self-incrimination, the jury trial right, and the right to confront accusers, they do not include a waiver of the privileges which exist beyond the confines of the trial.

By its own terms, Fed.Rule.Crim.P.11(a)(2) itself does not say whether it sets forth the exclusive procedure for a defendant to preserve a constitutional claim following a guilty plea. At the same time, the drafters' notes acknowledge that the United States Supreme Court has held that certain kinds of Constitutional objections may be raised after a plea of guilty. The notes then specifically refer to the Menna-Blackledge doctrine. They add that the Rule should not be interpreted as either broadening or narrowing that doctrine or as establishing procedures for its application. And the notes state that Rule 11(a)(2) has no application to the kinds of constitutional objections that may be raised under that doctrine.

Furthering, the Court found that a guilty plea, by itself does not bar a federal criminal defendant from challenging the constitutionality of his statute of conviction on direct appeal or collateral proceedings.

This holding flows directly from this Court's prior decisions. Fifty years ago, in Haynes v. United States, the Court addressed a similar claim challenging the Constitutionality of a criminal statute. Justice Harlan's opinion for the Court stated that the defendant's "plea of guilty did not, of course, waive his previous [constitutional] claim." 390 US 85, 87, n.2 88 S.Ct. 722, 19 L.Ed.2d 923, 1968-1 C.B. 615. That [200 L.Ed.2d 40] clear statement reflects an understanding of the nature of guilty pleas that stretches, in broad outline, nearly 150 years. Subsequent decisions have elaborated upon it. In Blackledge v. Perry, 417 US 21, 94 S.Ct. 2098, 40 L.Ed.2d 628, the Court recognized that a guilty plea bars some "':anecdotal constitutional violations;'" related to events (such as grand jury proceedings) that "'occu[r] prior to the entry of the guilty plea.'" Id., at 30, 94 S.Ct. 2098, 40 L.ed.2d 628 (quoting Tollett v. Henderson), 411 US 258, 266-67, 93 S.Ct. 1602, 36 L.Ed.2d 235). However, where the claim implicates "the very power of the State" to prosecute the defendant, [138 S.Ct. 801] a guilty plea cannot by itself bar

the claim." Id, at 63, n.2d, 96 S.Ct. 241, 46 L.Ed.2d 19. In more recent years,
the Court has reaffirmed the Menna-Blackledge doctrine's basic teaching that"
'a plea of guilt to a charge does not waive a claim that -- judged on its face--
the charge is one which the State may not constitutionally prosecute.' "United
States v. Broce, 488US 563, 575, 109 S.Ct. 757, 102 L.Ed.2d 927 (quoting Menna,
supra, at 63, n.2 96 S.Ct. 241, 46 L.Ed.2d 19). Pp._____-____, 200, L.Ed.2d,
at 42-44.

In this case the Government and Petitioner agreed on a Plea Agreement.
As in (Class v. U.S.), the Government contends that by entering a guilty plea
and the Court (colloquy) explains the waiver conditions on which Petitioner
inherently relinquished his constitutional claims in similar circumstances such
as Petitioner as in (Class)¿

The Supreme Court's most recent ruling in (Class v. U.S.) puts to rest
claims made by the Court that Petitioner waived his rights to appeal per his
plea agreement and sentencing colloquy. This decision is a harmful plain error
and violation of Petitioner's Constitutional Rights.

It is safe to say now; that any claims to be made by the Gov't, that Petitioner
waived all his rights to appeal is legally inconsistent with the Supreme Court's
decision; and such a claim would be harmful error and cannot stand based
specifically on (but not limit to) (U.S. Class)(2018).

## IV.   ARGUMENT(S)/GROUNDS

Petitioner's case at bar has been affected tremendously with new changes
in Higher and Lower Court rulings not available at the time of Petitioner's
sentence. Petitioner cites both 5th and 6th Amendment violations (herein),
when given misadvice led to harmful errors made by counsel and allowed the
Court to adopt an incorrect PSR, and such allowing Petitioner to be exposed
illegally to an incorrect Guideline Range and increased sentence unnecessarily.

Counsel's misadvice having Petitioner plead to two (2) counts of (Count 1)
and (Count 2) provision and attempted provision of material support to a foreign
terrorist organization; both carrying 15-year sentences pursuant to 18 USC
§2339B(A)(1); and supervised release of life pursuant to 3583(b) and (e).
Based on the charges applied, Petitioner faced a consecutive imprisonment
term of 30-years. The Court reduced the range downward to 22-years (a difference of 8-years).

Petitioner now cites new laws/grounds in favor of his case for relief, and had he not received misadvice, Petitioner was sentenced more harshly than he should have been.

<u>GROUND I</u>: Petitioner's sentence was procedurally and substantively unreasonable.

Recently, in Petitioner's same circuit (2nd), the Court ruled that a Court that failed to sufficiently articulate its reasoning for imposing the statutory maximum sentence; along with failing to provide sufficient opportunity to address the Court, must not be allowed; and shall be remanded back for resentencing. Petitioner cites:

United States v. Pugh, (No. 17-1889) (2nd Cir. August 29, 2019) Pugh was charged with attempting to provide material support to a foreign terrorist organization (count one) and obstruction of justice (count two). At trial, the government admitted into evidence, over Pugh's objection, a draft letter that Pugh had purportedly written to his wife which, inter alia, professed his allegiance to the Islamic State. Pugh was convicted by a jury on both counts and sentenced to 180 months of incarceration on count one, and 240 months of incarceration on count two, the sentences to run consecutively, for a total effective sentence of 420 months of incarceration, the maximum allowable sentence. Pugh argued on appeal, among other things, that his sentence was procedurally and substantively unreasonable because the court (1) failed to sufficiently articulate its reasoning for imposing the statutory maximum sentence, and (2) failed to provide Pugh sufficient opportunity to address the court. The Court agreed that further articulation of the sentence determination was required and vacated the sentence, and remanded for resentencing.

Petitioner's sentencing transcripts do not appropriately address any actual crime that Petitioner committed pertaining to attempting to provide material support to a foreign terrorist organization. In fact, when the Court inquired about Petitioner's involvement, the Govt. made false claims that someone told them Petitioner had some involvement on a publication for Al-Qaida; without providing any physical proof to such claims.

The Record clearly shows that Petitioner had signed onto a group; however, Petitioner's involvement led to nothing against the United States. Accordingly, other individuals arrested by the Government were released from custody when the Govt. finally determined these individuals also had little to no involvement with Al-Qaida.

Petitioner understands that he could have received what amounted to a a 30-year sentence, and received a lesser sentence of 22-years. However, based on no evidence provided by the Govt, Petitioner plead to a Count of Conspiracy (Count 1) that cannot stand based on what the Government claimed to be his involvement. Period!  Petitioner will address the false claims of Relevant Conduct in Ground 2.

6

<u>GROUND II</u>: Petitioner qualifies for relief based on the change in language
pursuant to the statute of conviction (new evidence not available at sentencing).


Of great legal consequence, in (U.S. v. Maupin) No. 19-6817; speaks to
what Supreme Court makes clear, that a covered offense is determined by the
Statute of Conviction, not "actual conduct" or "relevant conduct". This ruling
the Govt. conceded to in the Fourth Circuit (See United States Motion to Remand,
(E.C.F. No. 26).

Therefore, in this case; Petitioner was told of his supposed actions
to the Court but nothing ever actually proven to have occurred. Accordingly, when
such is the case, then the Courts have decided that relevant
conduct not presented to a jury may not be used to enhance a defendant beyond
the findings of a jury (See Rosales - Mireles v. U.S. 138 S.Ct. No. 187 (2018);
Also, U.S. v. Antonucci, 667 Fed.Appx 121, 2016 US App.Lexis 11396).

Subsequently the Govt. enhancement being illegal would mean that Petitioner
was sentenced on a calculation of applicable guideline range used that was
in error. Such is the case, that on April 20, 2016 in (Molina - Martinez
v. U.S.) 136, S.Ct. 1338, 1344 the Court determined that the district court
had errored and should have sentenced the defendant to a lower guideline
range because the Court found that a sentencing procedure which begins with
an incorrectly calculated guideline range level is infected with "plain"
error and requires resentencing even when there has been failure to object
(by way of plea) to the Court's guideline calculation. (In further support
also see....(Haskell v. Superintendent Green SCI, 2017 BL 266640 3rd Cir.
No. 15-3427 (2017); Harris v. U.S. , No. 17-3341 (3rd Cir.)(2018).


The record will show that such relevant conduct cited by the Govt.
and adopted by the Court should not have been used at Sentencing, now based
on the admitted change in the language pertaining to a subsequent charges.

Even if the Govt. provided written statements of others never cross-examined
by Defense Counsel; now also cannot be used against Petitioner at sentencing
of suggested relevant (or actual) conduct. Accordingly to the change in the
language in (Maupin), Petitioner was illegally sentenced harmfully on first
impressions now pursuant to new caselaws, proves that should not have happened!

7

GROUND III:  Petitioner is deserving of relief due to the fact that the Court
(nor the Govt.) stated any material support or resources that an actual crime
was committed.

Petitioner was charged (in Count One) with Conspiracy to Provide Material
Support to a Terrorist Organization; however, neither the Govt. nor the Court
provided any factual support materials or resources beyond mere "hearsay speculation"
and "accusations."

Accordingly, the Court in the (1st Dist.) decided that, when a Court
gives (or allows) erroneous assertions not supported by real facts supported
by underline actual materials or resources during a trial (or at a sentencing; then
the Court violated a defendant's 5th Amendment Rights. (See recent case in
U.S. v. Wright; 1st Cir. - Aug. 28, 2019).

In further support; (similar to Petitioner's claims) in (U.S. v. Harris),
No. 18-1174 (8th Cir. Feb. 21, 2020); that the Court fails when it in the
materials suggested by the Govt. does not speak plainly, then the categorical
approach's (used by the Court) "demand for certainty"; and falling short of
such means the burden on the Govt. has not been met. (See Also, Mathis v.
U.S., 136 S.Ct. 2243 (2016)).

The record provides proof that much of the Govt's claims against Petitioner
was not consistent with other (states) laws pursuant to felony  offenses of
terroristic threatening claims where Petitioner should have been sentenced
to Category History VI; where essentially qualifying Petitioner as a Career
Offender or under an act of crime of violence of any sort had ever occurred
against the United States. Period! (See U.S. v. Myers, also 8th Cir.).

Petitioner claims clearly that he is innocent of Count One of his Indictment;
and thus could not have plead to this charge. What's more, failure by Defense
Counsel led to a violation of Petitioner's 5th Amendment substantive rights
when allowing the Court to adopt an incorrect PSR Report which findings were
not found to support the Court's determination at sentencing).

As of 2019; Courts have vastly agreed as found in (U.S. v. Sterling);
No. 18-2974 (8th Cir.)(Nov 1, 2019); similar to Petitioner's new claims, that
his PSR Report based on information contained in the PSR did not have sufficient
indicia of reliability to support its probable accuracy. The record is clear
that Petitioner's indictment had no material support for such a charge to
be levied.

8

In conclusion, Petitioner's case is in-line with Sterling where the Court stated, "it is the Govt's burden to prove the quantity of drugs a person is responsible for by a preponderance of the evidence...and the Govt's sole argument that the amount stipulated (by co-defendants) by Informants claiming relevant conduct, without testimony from those informants at sentencing hearings to establish quantity and forseeability, cannot stand and must be viewed as mere speculation by the govt. The Court reversed and remanded (Sterling's) case for resentencing; as should this Court due to the fact that like Sterling, this court adopted a PSR and Plea Agreement not supported by a drug amount given to Petitioner on mere speculation. (See Attachment #1 - the Sterling decision).

GROUND IV.  Petitioner now qualifies to be sentenced in light of new laws affecting the correct sentencing Guideline Range and national sentencing disparities of others of similar conduct and correct charges.


It must not be understated, when imposing a Federal Sentence (or Resentence) disparities; District courts must also consider "the need to avoid unwarranted sentence disparities among defendants who have been found guilty of similar conduct." (18 USC §3553(A)(6). See (Kimbrough v. U.S.) 552 US 85, 108 (2007). Additionally; this statute requires a sentencing court to consider any re-sentencing of co-defendants by also reviewing nationwide sentencing disparities under procedural reasonableness.  (See, Titchell v. U.S.), 261 F.3d 348, 2001 Appx. Lexis 18480 (3rd Cir. 2001).

Of great importance; a review of the discrepancies that arose (at sentencing and/or resentencing) when the sentencing courts did not look at the actual participants in the crime in determining the minor role reduction, regardless if co-defendants not having similar records, applies to Petitioner in comparison to others, where in summary is as such:

Some courts "assessed" a defendant against a hypothetical average participant. See, e.g. US v. Teeter, 257 F.3d 14, 30-31 (1st Cir. 2001)(writing that a defendant must demonstrate that he is both less culpable than most other participants in his crime and also less culpable than the majority of those within the universe of persons participating in similar crimes). In the Ninth and Seventh Circuits, however, the "relevant comparison" was between the Defendant and other actual participants in the same crime. See U.S.S.G.App.C.Amend.794: U.S. v. Rojas-Millan, 234 F.3d 464. 473 (9th Cir); US v. Davis 938 F.2d 744, 747 (7th 1991).

9

Finally, at best, defense counsel would have argued similar conduct of other co-defendants by law needing to avoid sentencing disparities; and at best, counsel should have argued and presented a nationwide approach to address the ridiculous sentence imposed on Petitioner of twenty (20) years.

What really establishes Petitioner's counsel's performance as falling below an objective professional standard of reasonableness is counsel's failure to address correctly both sentencing disparity matters. Every circuit court to address the subject of sentencing disparity has concluded that to "base a defendant's sentence on a co-conspirator's sentence is a short-sighted approach, and that the guideline's goal is national sentencing uniformity across the country."

See United States v. Joyner, 924 F.3d 454, 460 (2d Cir. 1991); United States v. Parker, 462 F.3d 273, 277 (3d Cir. 2006); United States v. Whithers, 100 F.3d 1142, 1149 (4th Cir. 1996); United States v. Simmons, 501 F.3d 620, 623 (6th Cir. 2007); United States v. Saeleurn, 504 F.3d 1175, 1181 (9th Cir. 2007); and United States v. Williams, 980 F.3d 1463, 1467 (DC Cir. 1992). All these circuit courts clarify that the goal of the US Sentencing Commission was to eliminate unwarranted sentencing disparities nationwide.

In summation, Petitioner's counsel could have easily consulted the national statistics concerning defendants who were similarly situated as Petitioner. These statistics are readily available on the U.S. Sentencing Commission Website. As the record demonstrates, however, Petitioner's counsel made no attempt whatsoever to investigate what the national average sentence defendants have been receiving for the past five years for the Petitioner's crime. If properly investigated and further advocated at sentencing, Petitioner's counsel could have very well secured a substantially lower sentence for the Petitioner, in conformity with the national average.

## V. CONCLUSION

Petitioner's §2255(h)(2) petition is to correct the sentence imposed wrong-fully due to massive and repeated violations of ineffective assistance of counsel. Petitioner never claimed innocence of his actions throughout any and all procedural processes: and in fact sought to cooperate to assist the Govt.'s efforts substantially, yet was prejudiced immeasurably in the negative at no fault of his own. Petitioner's Habeas Corpus filing makes clear that had his legal counsel not given improper (yet curable) advice; along with

incorrectly vitally important documentation and alike, the outcome to Petitioner's sentence would have been much different and a downward departure and under 3553(E) must apply when weighing all the facts against the debacle of a shameless attempt by counsel, violated Petitioner's Fifth and Sixth Amendment rights.

Petitioner was given an unproven, mis-charged, non-covered offense violation based on what seems to be relevant "supposed" conduct; that is now considered illegal when not presented to a jury of his peers. Pursuant to new laws (evidence) cited throughout this motion; Petitioner was illegally sentenced. (See U.S. v. Maupin), No. 19-6817, concerning actual or relevant conduct issues.

Based upon the foregoing undisputed factual and legal issues, Petitioner contends that, cumulatively speaking, there can be no doubt that he was denied a fair sentence in violation of the Fifth and Sixth Amendment's mandate that a defendant is entitled to the effective assistance of counsel. Moreover, both U.S. Supreme Court authorities in Strickland v. Washington and Molina-Martinez have been violated because of counsel's deficient performance, causing counsel finally to be removed as defense counsel by the Court as well as the "plain harmful errors" committed by the Court at sentencing.

Under Molina-Martinez, Petitioner is not required to prove any additional facts or provide additional evidence to show that the sentencing errors--where the district court applied the incorrect Guidelines--affected his substantial rights.

Similarly, where defense counsel failed to review and discuss the PSR with Petitioner; while exposing him to enhanced range on misadvice of a plea; there is no excuse for Petitioner to suffer injustice. Therefore, the court retains the power to set aside the restitution order. Restitution ordered by the Court has to relate to the offense charged, and be within the statutory powers of the court, and restitution that is outside the statutory powers of the court will be set aside on appeal as "plain" error even if the amount of restitution was stipulated to at sentencing. See, United States v. Behrman, 235 F.3d 1049, 1052-1053 (7th Cir. 2000). An illegal sentence is an illegal sentence!

## REASONS FOR GRANTING THE PETITION

There exists multiple Supreme Court (case precedent) decisions that address specifically in the Second Circuit, issues similar to Petitioner's case at bar that was overlooked by the District Court. Petitioner provides key claims of Constitutional (5th and 6th Amendment), factual and legal matters that the District Court cannot/would not consider due to any faulty claims that Petitioner waived his rights to appeal based on a colloquy at sentencing would be a plain harmful error if allowed by the Court.

Petitioner seeks to have his claims heard before the Court on new claims raised (presented) previously because issues raised were not available at the time of sentencing to prevent a complete miscarriage of Justice that would result from allowing an unconstitutional sentence to stand; changes in the law (and statutes) that directly effect the Guideline Range of Petitioner's sentence or incorrectly created resulting in an improper classification of sentence; and newly discovered evidence that the District Court errored (harmfully) by ruling on Petitioner's first 2255 petition when not uncovering that Petitioner still had legal representation unbeknownst to Petitioner or the District Court. Accordingly, Petitioner claims his innocence of claims and charges never proven; as well as, due to new laws in support of Petitioner's Motion for Relief.

## VI.  PRAYER FOR RELIEF

The Petitioner, Lawal Babafemi, pro se, prays that this Honorable Court GRANT RELIEF on this Petition for Habeas Relief pursuant to 28 USC (Second and Successive) Section 2255(h)(2) to include:

1) Vacation of both his conviction and sentence; and

2) Resentencing to time-served (based on new case laws that, at worst, Petitioner could have only plead to one of the counts of 15-years pursuant to 18 USC §2339b(A)(1); and utilizing the 8-year downward departure the Court previously applied, would be a correct sentence of 7-years.  NOTE: As of this filing, Petitioner has served 8 years which now puts him 1-year past the correct time the Court could (should) have allowed or to which Petitioner could (should) have plead to.

3) Reduction of Supervised Release to no more than three (3) years

12

4) reduction of restitution and for any other relief deemed necessary and appropriate in the Interest of Justice.

Dated: _March 26_ , 2020

Respectfully Submitted,

_____

Lawal Babafemi, pro se
Fed. Reg. #82814-053
LSCI Allenwood-LOW
PO Box 1000
White Deer PA 17887.

13

## AFFIDAVIT

I Hereby Certify that the foregoing facts are true and correct to the best of my knowledge and belief under penalty of perjury as per 28 USC Section 1746.

_(signature)_

Lawal Babafemi  Pro Se

## CERTIFICATE OF SERVICE

I Hereby Certify that a copy of the foregoing Petition/Motion was mailed on this _27th_ day of _March_ , 2020, by First Class Mail, postage prepaid to:

Office of the US Attorney
AUSA Zainab Ahmad/EDNY

271 Cadman Plaza East

Brooklyn  NY 11201

_(signature)_

Lawal Babafemi  pro se

ATTACHMENTS

FEDERAL PRISON NEWSLETTER FOR NOVEMBER 15, 2019

United States v. Sterling, No. 18-2974 (8th Cir. Nov. 1, 2019)

Sterling pled guilty to two counts of cocaine distribution and one count of conspiracy to distribute 28 grams or more of cocaine, in violation of 21 U.S.C. 841(a)(1), (b)(1)(B), (b)(1)(C), and 846.

The PSR calculated quantities of powdered cocaine and cocaine base involved in controlled buys, and the quantities of drugs and cash seized during a warrant search of a co-defendant's residence. The PSR found Sterling accountable for 168 kilograms of marijuana equivalent based on the controlled buys and seizure, which resulted in a Base Offense Level ("BOL") of 24 (U.S.S.G. 2D1.1(c)(8) calls for a BOL of 24 for 100 to 400 kilograms of marijuana equivalent). However, the PSR noted that Sterling's two co-defendants' plea agreements contained stipulations to being accountable for distributing at least 400 but less than 700 kilograms of marijuana equivalent. Sterling objected to this being included in the PSR, as it raised his BOL from 24 to 26.

At sentencing, the government produced no further evidence regarding the drug quantity. Instead, it called three witnesses who testified to an unrelated offense that occurred during the conspiracy period to underscore Sterling's criminal history. At the end of the hearing, the district court overruled Sterling's objection to the BOL of 26 based on "what was presented in the [PSR]."

On appeal before the Eighth Circuit, Sterling argued that the district court's Guidelines calculations were clearly erroneous. The Eighth Circuit agreed.

The court noted that it is the government's burden to prove the quantity of drugs for which Sterling is responsible for by a preponderance of the evidence. Further, since Sterling was charged in a conspiracy, he was liable for acts of his co-defendants that were in furtherance of the conspiracy and reasonably foreseeable. U.S.S.G. 1B1.3(a)(1)(B). In addition, the court discussed how "[w]hen the amount of narcotics seized by the government does not reflect the scale of the drug trafficking offense 'the court shall approximate the quantity of the controlled substance' and may consider, for example, 'similar transactions in controlled substances by the defendant.' U.S.S.G. 2D1.1, comment. (n.5)."

In Sterling's case, the Eighth Circuit held, "[m]any defendants have appealed estimated drug quantity findings; few have cleared the high bar of clear error review." But here, the PSR combined with the plea agreement conclusively established only a BOL of 24 based on the 168 kilograms of marijuana equivalent. As the court found, the "PSR made no attempt to quantify the 'multiple individually wrapped baggies' the undercover detective observed during five controlled buys, and the detective did not testify.

The government's sole argument on appeal is that the amount Sterling's co-defendants stipulated to was reasonable foreseeable to Sterling as relevant conduct. The Eighth Circuit found that without the co-defendants' testimony at the sentencing hearing to establish quantity and foreseeability, the government's argument was mere speculation.

Because the information contained in the PSR did not have "sufficient indicia of reliability to support its probable accuracy," U.S.S.G. 6A1.3(a), the Eighth Circuit held that the district court clearly erred in relying on the Probation Officer's unsupported opinion. The court reversed and remanded the case for resentencing.

Attachment #1

# ADEYINKA M. AKINSULURE-SMITH, Ph.D.
275 West 96th Street, Suite 8D
New York, New York 10025
(917) 332-8904
NYS License # 013405

## PSYCHOLOGICAL EVALUATION

THIS INFORMATION IS PRIVILEGED AND CONFIDENTIAL

**Name**: Lawal Olaniyi Babafemi
**Date of Birth**: June 4, 1980
**Place of Birth**: Ibadan, Oyo State, Nigeria
**Gender**: Male
**Age**: 34 years
**Date(s) of Examination**: June 23, July 10, July 17, July 24, & September 5, 2014
**Date of Report**: September 23, 2014

## Qualifications of Evaluating Clinician:

My qualifications to render a psychological opinion in this case can be found in the attached curriculum vitae. To summarize, I am a counseling psychologist, licensed to practice in the State of New York (NYS License # 013405). I received my Doctorate of Philosophy in Counseling Psychology from Columbia University in 1997. My clinical, advocacy, research and teaching experiences have focused on the areas of severe psychopathology, trauma, and refugee/immigrant mental health.

Since 1999, I have been on staff at the Bellevue/NYU Program for Survivors of Torture (PSOT) in New York City as a Senior Supervising Psychologist. PSOT continues as the leading torture survivor and refugee trauma treatment and resource center in New York City. The Program is the first and only comprehensive treatment program for survivors of torture and refugee trauma in the New York metropolitan area. This unique program provides interdisciplinary care to victims of torture and other human rights abuses, traumatized refugees, and to their families. As a tri-lingual clinician (English, French, and Krio), my responsibilities include providing intensive treatment for refugees and traumatized asylum seekers who have a history of torture or war-related trauma, sexual violence, and other human rights abuses. This includes conducting forensic evaluations in support of asylum proceedings, providing consultation and training to healthcare, legal, and human rights agencies in the matters of interviewing and managing various posttraumatic psychological dysfunctions in trauma victims. I am also an Assistant Clinical Professor in the Department of Psychiatry at the New York University School of Medicine and, in addition to my clinical

**Name:** Babafemi, Lawal O.                                                                    2
**DOB:** 06/04/1980

duties, I supervise and train psychology interns and externs and psychiatric residents in the diagnosis and treatment of torture and war trauma survivors.

I am a recipient of a 2014-2015 Fulbright Africa Regional Research Program Award.

**Conditions of Evaluation:**

Prior to this psychological evaluation, Mr. Babafemi agreed to the condition that I approach the psychological evaluation with no particular result in mind and that I would exercise independent professional judgment in all aspects of this evaluation. When we first met on June 23, 2014 and during our subsequent meetings, I informed Mr. Babafemi of the limits of confidentiality in a psychological evaluation. In this regard, I advised him that I would share my findings with his attorney and submit a written report which could be used in court at the discretion of his attorney. Mr. Babafemi understood the limits of confidentiality and consented.

**Sources of Information:**

The following report is based on 22 hours of detailed inquiry into Mr. Babafemi's life history and background, along with a detailed mental status exam, and four self-report psychological measures.

**Presenting Problem:**

Mr. Lawal Olaniyi Babafemi is a Nigerian male, who reports suffering through many traumatic events in his country of origin, while in the custody of the Nigerian Police in Abeokuta, Ogun State and later on while detained in the headquarters of State Security Service of Nigeria in Abuja, the Federal Capital Territory, Nigeria. Mr. Babafemi described extensive physical and psychological torture, including repeated beatings (with wire cables), electric shocks (to his neck), verbal abuse, verbal threats (including death threats to him and threats to his immediate family), forced postures (while held in iron chains with a black hood placed over his head), and sensory deprivation.

**Demographic Information:**

Mr. Babafemi is a 34-year-old Yoruba, Muslim, married Nigerian male. Mr. Babafemi married Ms. Lawal Adenike in 2007; the couple have two young children, a 5-year-old son, Abdallah, and a 3-year-old daughter, Fareeda. Mr Babafemi was extradited to the United States (US) on September 27, 2013. He has resided in the Metropolitan Correctional Center in New York, New York since his arrival.

**Education/Employment:**

By his own admission, Mr. Babafemi was "a very poor student." Due to his family's limited resources, he struggled to complete elementary and secondary school repeating several grades along the way. Eventually with the emotional, educational and financial support of an older brother, Mr. Babafemi was able to complete secondary school and go on to attend Lagos State University. Unfortunately, due to several problems at the University (e.g., strikes by faculty and student gang misconduct) which forced students to have to repeat the academic year, Mr. Babafemi became discouraged and dropped out of university. In an effort to support himself and his family, Mr. Babafemi unsuccessfully tried several business ventures (including fish farming and transportation).

**Mental Status and Clinical Impressions:**

Our sessions were conducted in a visiting room of the Metropolitan Corrections Center, New York, New York during June, July and September of 2014 over a total of 22 hours. Mr. Babafemi arrived to each session wearing his brown detainee jump suit and sneakers. He presented as a well-groomed man who wore a tidy goatee and had a dark spot in the middle of his forehead. He informed me that he speaks English and Yoruba. English was the language of communication throughout the duration of our session.

Initially, Mr. Babafemi appeared guarded, and pulled on his left ear nervously. However, as our sessions progressed and he became comfortable, he offered spontaneous, detailed information. Early on, Mr. Babafemi informed this clinician, "My story is a very long story, so bear with me. I want you to get it straight." It was not until our second session after this clinician conveyed full permission to Mr. Babafemi from his attorney to talk to me, that he really opened up. Despite this initial hesitation, Mr. Babafemi carefully reflected on all questions asked of him and provided detailed information. He made good eye contact, smiled gently and was very polite, often pausing to make sure that his responses were fully understood, "Do you get me?" Mr. Babafemi did become visibly upset when discussing his torture experiences, particularly when describing being told that his mother, wife and young children had been imprisoned because of his actions.

Once trust was established and he felt comfortable, Mr. Babafemi spoke fluidly and without hesitation and his speech was normal in rhythm and rate. His affect (emotional presentation) was calm. He spoke politely and deferentially to this clinician. Mr. Babafemi's judgment and insight were good. He was oriented to person, place, time, and situation. He demonstrated no apparent difficulty understanding questions asked of him. His thought processes and content were clear, coherent, logical, and goal directed. No psychotic processes were noted. Mr. Babafemi's overall remote and recent memory was intact and he appeared to be within the average range of intellectual functioning. Mr. Babafemi adamantly denied all aggressive impulses including any

suicidal or homicidal ideation. He also denied any substance use or abuse and any previous psychiatric history.

**Trauma History**

According to Mr. Babafemi during the Holy Month of Ramadan, early on the morning of August 19, 2011, four men in black uniforms carrying "heavy guns" burst into his compound, beat him up and dragged from his home in Ijebu-Ode, Ogun State into a waiting car. Initially Mr. Babafemi thought he had been kidnapped, it was not until they arrived at the State Capital of Abeokuta, that he realized he was in the custody of the Nigerian Authorities. He was taken straight to the Command Office of the State Security Service (SSS) branch in Abeokuta, Ogun State. Mr. Babafemi recalled that as soon as he was taken out of the vehicle, he was handcuffed and forced to sit on the ground. Later he was held in a separate room where his captors informed him, "We heard you went to Pakistan." Eventually, Mr. Babafemi was taken to a larger room where his photograph was taken and he was told to write a statement. Mr. Babafemi reported that he was so shocked by the events and the accusations that he began to cry. He was later interrogated for approximately three hours. Afterwards, he was thrown into a small, filthy holding cell filled with mosquitos. At that time, Mr. Babafemi was informed that his wife would also be arrested. The next morning, when he was given a djellaba to wear (he had been wearing his night singlet and shorts the morning of his arrest the previous day) and he saw a bag with some of his possessions, Mr. Babafemi realized that the SSS had gone back to his home and searched it.

Mr. Babafemi recalled that the next morning the armed guards drove him to the SSS Headquarters in Abuja, the Federal Capital Territory. During the 11-12 hour drive, he was kept in handcuffs. Upon his arrival at the SSS Headquarters that night, Mr. Babafemi was given a fresh set of handcuffs and his legs were now also chained with iron cuffs. He was then forced to sit on the ground and wait. Eventually, he was taken into the "Interrogators Office" (the office of the "Chairman of SSS," who was also the "Chairman of Interrogations"). According to Mr. Babafemi, in the beginning, he was interrogated about his friends, contacts, and his recent travels. Later on, he was given forms to complete and told to write a statement. Shortly after, "the Chairman" (the man who later on would direct much of his torture) came to Mr. Babafemi's cell to interrogate and threaten him. Mr. Babafemi was questioned until about midnight and then taken to a "segregation cell" where his handcuffs and leg chains were removed and left there. For the first 28 days, Mr. Babafemi was interrogated twice a day for several hours. Whenever he was moved from the "Segregation Cell" to the "Interrogation Office" (or vice versa), Mr. Babafemi was placed in handcuffs and leg chains (the chains around his ankles were so tight that they began to peel the skin, creating painful sores. Later he would tear material from his clothes to wrap around his ankles to protect the skin) and a black hood (made out of "rough khaki material" with a drawstring to pull it closed around his neck) was placed over his head. The first time the hood was placed over his head; Mr. Babafemi thought he was going to be executed. During his interrogation sessions, the hood was only removed when he was asked to write something or when he was

**Name:** Babafemi, Lawal O.                                                        5
**DOB:** 06/04/1980

returned in his isolation cell and later when he was with other prisoners in the underground cell.

It was not until approximately the third day of his captivity that the "real" torture started. Mr. Babafemi recalled that he was tortured primarily by three men (the Chairman and two of his "caseworkers"). From then on, Mr. Babafemi described being beaten repeatedly with wire cables (three cables woven together), kicked, slapped, threatened, and receiving relentless verbal abuse. His torturers also gave him electric shock to various parts of his anatomy, but seemed to enjoy applying electric shock most of all to his neck. The first time he experienced both the electric shock and beating together, the pain was such that Mr. Babafemi passed out. He recalled, "My heart was beating like it wanted to burst out of my chest..I'd never experienced something like that in my life." He woke up with the foot of the Chairman kicking him in the face and calling him "coward!" The beatings and the electric shocks continued.

According to Mr. Babafemi, over the next month, he was tortured twice a day, every day. Mr. Babafemi recalled that no matter what his responses were to the questions, the torture continued. Often during the more severe beatings, paper was stuffed into his mouth to muffle his cries of pain. Often the paper was left in his mouth, even after he was returned to his cell. To make matter worse, Mr. Babafemi was informed that his mother, wife and children had been arrested and imprisoned. His captors gave such intimate details about his family members, that Mr. Babafemi believed them.

Approximately 28 days later, Mr. Babfemi was moved from his isolation cell, to an underground location (in the same building) and placed in a small cell with approximately 17-25 other prisoners. Although he was no longer in isolation, Mr. Babafemi realized that he was now placed with Boko Haram suspects. For Mr. Babafemi, this placement created further distress. These men were all from Northern Nigeria and spoke neither Yoruba nor English, so he could not communicate with them. His torture (beatings and electric shock) continued in a cell next door and he was able to hear the screams and cries of other prisoners as they were being tortured. It was during this time, that Mr. Babafemi heard one of his interrogators calling for his friend, Luqman to be brought in. Mr. Babafemi could hear his friend crying. Later on, Mr. Babafemi learned from Luqman that his torturers had shown him pictures of Mr. Babafemi with his injuries, in an effort to intimidate him.

After approximately a week of being held in the underground cell, and not admitting to anything, Mr. Babafemi was abruptly moved. This time, he was hooded, handcuffed, his legs placed in iron chains, with several chains around his body, and then he was shackled to the iron bars of an unused office in the hallway. Mr. Babafemi described being "chained all over my body." He was bound by his chains so tightly he could not sit up and he could only lie down awkwardly on his back, creating intense physical discomfort (because of the chains, his arms and feet were suspended in the air). Mr. Babafemi was kept shackled to the iron bars with the hood over his head for nearly an entire month. He was only removed from the chains when was fed or the

times when he was allowed to go to the bathroom. Mr. Babafemi was not allowed to wash his body and was kept in the same soiled clothes. When he needed to urinate, the guards gave him a bottle to use. On some occasions, he was ushered into a bathroom, where depending on the whims of guard one of his chains might be removed to allow him to move with minimal discomfort.

During this time, Mr. Babafemi also struggled with extensive sleep deprivation. He could not sleep (in large part because of the way he was shackled). Whenever he heard the doctor come by, Mr. Babafemi would call out to him, pleading for a sleep aid. Initially, the doctor gave him something, but the medication did not help and Mr. Babafemi asked for more. However, the doctor told him, "The problem is within you, I can't give you any more. In fact I am stopping the medicine." In addition to the sleep deprivation, Mr. Babafemi also experienced sensory deprivation. Cold air from an air conditioner in the unused office was blasted at him. He shivered constantly from the cold. At one point the Chairman had one of the nurses give him an injection to stop the shivering. Mr. Babafemi firmly believes that his current Hypertensive diagnosis is due to the sleep deprivation and the extreme physical and emotional distress that he encountered during that period. Mr. Babafemi described that month as "the most difficult time I have ever spent since I have been in incarceration."

At various points during that month, the "case officers" (the authorities) informed Mr. Babafemi that his mother, wife and young children had been arrested and detained (later he learned that this was a lie and all part of the psychological torture). Often his torturers would say things like "I referred your greetings to your mum" or "When I went to your wife, I delivered your greetings to her"). The thought of his elderly mother, his wife and their young children being held under similar circumstances was too much for him to bear. On many occasions, Mr. Babafemi recalled, "I was thinking I was going mad, it was too difficult for me, I trembled from head to toe all the time…"

After a month of being shackled in this manner, the relentless torture sessions (being kicked in the face and chests, relentless insults, electric prods placed on his neck and repeated shocks, being hooded, interrogations that lasted for hours, along with numerous death threats), his fears for his family wore Mr. Babafemi down. Ultimately, his fears for the wellbeing of his family compounded by a warning from the Chairman, "You refuse to cooperate, I will force you to cooperate…by all means…I give you three days…" overwhelmed Mr. Babafemi, and he told his interrogators "anything you want me to say, I'll agree with it." After he made the next set of statements, the torture stopped completely. A few days later, he was informed by his captors that his mother had been released from prison, and then told, "Congratulations, your wife has been freed with your baby, she's gone back home." About a week later, he was released from his chains and hood and taken back to the underground cell with the other men. Mr. Babafemi would be held in this underground cell for another 10 months.

## Current Symptoms and Diagnostic Profile

Mr. Babafemi is currently struggling with symptoms consistent with a diagnosis of Posttraumatic Stress Disorder (PTSD) and Major Depressive Disorder (MDD), conditions most likely associated with the traumatic events he reports experiencing while incarcerated in his country. During this psychological evaluation, he manifested and articulated classic symptoms of PTSD. He described intrusive PTSD symptoms, including distressing recollections of his physical and psychological torture, along with frequent trauma-related nightmares. Mr. Babafemi reported flashback episodes and intense psychological distress when exposed to internal and external cues that remind him of these draumatic events. He also demonstrated avoidance symptoms such as trying to avoid thoughts, feelings, and conversations associated with the trauma, emotional numbing, and feelings of detachment and isolation from others. Furthermore, he experiences the increased arousal and related physical sensations that often correlate with PTSD, such as difficulty breathing, increased heart rate and nervousness.

In terms of depressive symptoms, Mr. Babafemi exhibited typical symptoms of this condition. He continues to report depressed mood, feelings of loneliness, loss of interest in daily activities, decreased appetite and insomnia. At one point during our session, we had to pause so Mr. Babafemi could go to the bathroom to recompose himself. He stated, "I don't like to remember all this, I feel depressed, I don't feel comfortable, the memory is flashing back, I don't want to remember it, my heart is beating…"

At the end of the clinical interview, four psychological instruments, the Posttraumatic Stress Diagnostic Scale[1] (PDS), the Harvard Trauma Questionnaire[2] (HTQ), the Patient Health Questionnaire[3] (PHQ-9) and the Beck Depression Inventory-II[4] (BDI-II) were administered to Mr. Babafemi. The PDS and the HTQ are both measures of Posttraumatic Stress Disorder and the PHQ-9 and the BDI-II are measures of depressive symptoms. All of these instruments have been used widely in research and clinical settings, with a variety of populations and have been shown to have strong psychometric properties.

For the purposes of this assessment, these instruments offered collateral, objective support to the findings of the clinical interview. They are especially valuable for evaluating symptoms in trauma victims. Mr. Babafemi willingly agreed to have the psychological instruments administered to him. On the PDS, Mr. Babafemi consistently endorsed items in a manner that indicated difficulty in areas (i.e., symptoms of re-experiencing, hyperarousal, avoidance, and avoidance) relevant to Posttraumatic Stress

[1] McCarthy, S. (2008). Post-traumatic diagnostic scale (PDS). *Occupational Medicine, 58,* 379.

[2] Kroenke K, Spitzer R, Williams W. (2001) The PHQ-9: Validity of a brief depression severity measure. *Journal of General Internal Medicine, 16(9),* 606-616.

[3] *Oruc, L., Kapetanovic, A., Pojskic, N.,* Miley, K., Forstbauer, S., Mollica, R., & Henderson, D.C. (2008). Screening for PTSD and depression in Bosnia and Herzegovina: Validating the Harvard Trauma Questionnaire and the Hopkins Symptom Checklist. *International Journal of Culture and Mental Health, 1(2),* 105-116.

[4] Beck, A.T., Steer, R.A. & Brown, G.K. (1996). *Manual for the Beck Depression Inventory-II.* San Antonio, TX: Psychological Corporation.

Name: Babafemi, Lawal O.                                                                                8
DOB: 06/04/1980

Disorder. Concordant with the DSM-5, he satisfied all criteria to be considered PTSD positive. On this measure, he endorsed 11 out of the 17 PTSD related items and received a symptom severity rating of "Moderate to Severe." Mr. Babafemi scored 2.63 which is above the clinical cut-off of 2.50 on the HTQ, and is indicative of significant post traumatic symptomatology. He endorsed items related to feeling distressed quite a bit by reminders of distressing events and having sudden emotional and physical reactions when reminded of the events. He reported being extremely upset by feeling jumpy or easily startled and feeling irritable at times. He described feeling quite a bit distressed by feeling as though the event is happening again, feeling detached or withdrawn from people, and feeling on guard.

On the PHQ-9, Mr. Babafemi earned an 11, indicating moderate depression. He endorsed having little interest or pleasure in doing things or feeling down, depressed, or hopeless "several days over the past 2 weeks." On this measure, he reported having little energy and feeling bad about himself nearly every day. Mr. Babafemi's score on the BDI-II where he earned a total score of 24 out of a possible 63 echoed this finding, placing him in the "Moderate" depression range. With the deep feelings of depression and sadness, along with tearfulness, insomnia, and loss of pleasure that he reported, Mr. Babafemi clearly suffers from MDD.

Mr. Babafemi's scores on all four measures along with the findings in the clinical interview are consistent with the DSM-5 diagnoses for Posttraumatic Stress Disorder, Chronic and Major Depressive Disorder, Initial Onset, Moderate.

**Medical and Medication History:**

Mr. Babafemi reports his childhood health and development was normal, but stated that he developed severe headaches, insomnia, along with Hypertension during the torture he experienced while incarcerated in Nigeria. Mr. Babafemi reports that at the time he was placed on medication to alleviate his insomnia, but that the medication did not help him. He currently takes Hydrochlorothiazide, 15mg/day and Lisipril 5mg/day to manage his Hypertension. Since his incarceration in the US, he has been told that he has problems with his kidneys. Approximately 3 months ago, Mr. Babafemi reports that he was taken to "an outside hospital in Brooklyn," for tests on his kidneys. To date he has not been given the results of any testing that was conducted.

**Summary Assessment:**

Mr. Lawal Babafemi is a 34-year-old Nigerian male who reports extensive torture during his detention by Nigerian Authorities. He was extradited to the US in September 2013 and has been incarcerated since his arrival. He was oriented x4 throughout our sessions and displayed a range of affect. Mr. Babafemi currently meets diagnostic criterion for Posttraumatic Stress Disorder, Chronic, and Major Depressive Disorder, according to the *Diagnostic and Statistical Manual of Mental Health Disorders, Fifth Edition (DSM-5)*. Furthermore, those past stressors continue to impact his current daily psychosocial functioning in significant ways.

In my professional opinion, Mr. Babafemi's traumatic experiences during his imprisonment and interrogation by the State Security Service of Nigeria meet criteria for torture as outlined by the United Nations Convention Against Torture. During the time I met with Mr. Babafemi his presentation and narrative were consistent. I found him to be believable. Mr. Babafemi's account of torture while in the custody of the Nigerian authorities is consistent with my knowledge of other individuals held under similar circumstances.

**Diagnostic Impression:**

309.81   Posttraumatic Stress Disorder, Chronic
296.22   Major Depressive Disorder, Initial onset, Moderate
V62,5    Imprisonment or other Incarceration
V62.89   Victim of Torture
401.9    Hypertension


Adeyinka M. Akinsulure-Smith, Ph.D.
Psychologist, New York State License #013405

# ADEYINKA M. AKINSULURE-SMITH, PH.D.
The Department of Psychology
The City College of New York, CUNY
160 Convent Avenue, NAC 7/120
New York, NY 10031
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
aakinsulure-smith@ccny.cuny.edu

## ACADEMIC DEGREES

| | | |
|---|---|---|
| 1997 | Ph.D. | Counseling Psychology, Columbia University |
| 1995 | M.Phil. | Counseling Psychology, Columbia University |
| 1992 | Ed.M. | Psychological Counseling, Teachers College, Columbia University |
| 1991 | M.A. | Psychological Counseling, Teachers College, Columbia University |
| 1989 | B.A. | Honors Psychology, University of Western Ontario |

## LICENSURE AND CERTIFICATIONS

| | |
|---|---|
| 2000 | Eye Movement Desensitization and Reprocessing Level II |
| 1999 | Eye Movement Desensitization and Reprocessing Level I |
| 1999 | Registered Play Therapist – Supervisor, International Association for Play Therapy, Inc. |
| 1998 | Psychologist, Licensed in the State of New York |

## HONORS AND AWARDS

| | |
|---|---|
| 2014-2015 | Fulbright Scholar, Africa Regional Research Program Award |
| 2008-2012 | Fellow, Minority Research in HIV Intervention: Skills for the Community (RHISC), National Institute of Mental Health (NIMH, R25MH083602) |
| 2010 | Community-Based Research Fellow, Colin L. Powell Center for Leadership and Service, the City College on New York |
| 2005 | Early Career Award, Teachers College, Columbia University |
| 2003 | Union Square Award for Community Organizing, Fund for the City of New York |
| 1989 | Honors degree in Psychology, University of Western Ontario |

## ACADEMIC APPOINTMENTS

8/06-Present    **DEPARTMENT OF PSYCHOLOGY**, City College of the City of New York, New York, New York
**Associate Professor of Psychology**
*Teach and develop curriculum for undergraduate and graduate psychology courses:
    Adolescent & Youth (PSY 25600)
    Women & Violence (PSY 31823E)
    Contemporary Issues in Human Rights and Social Justice (PSY 41000)
    Theories and Techniques of Counseling (PSY B9732)
    Multicultural Issues in Counseling (PSY B 9760)
*Provide student mentorship and advisement
*Conduct research related to human rights abuses and refugee trauma
*Submit manuscripts for publication in these areas
*Write grant proposals

Adeyinka M. Akinsulure-Smith
Page 2

| | |
|---|---|
| 7/09-Present | **DEPARTMENT OF PSYCHIATRY**, New York School, Langone Medical Center, New York, New York<br>**Assistant Professor of Psychology, part-time**<br>*Provide weekly individual and group supervision to graduate students who conducted psychotherapy to a diverse population at a university based medical and mental health clinic |
| 9/98-5/00 | **DEPARTMENT OF COUNSELING AND CLINICAL PSYCHOLOGY**<br>Teachers College, Columbia University, New York, New York<br>**Adjunct Assistant Professor of Psychology and Education:**<br>Course: Racial-Cultural Counseling Laboratory, CCPJ5165<br>*Lectured on multicultural theory and clinical applications to masters and doctoral students<br>*Taught masters and doctoral students multicultural awareness and competence using a didactic, experiential and skill-building model<br>*Assessed students multicultural development through their written and experiential contributions<br>*Supervise teaching associates using an individual and small group format |
| 9/97-12/98 | **DEPARTMENT OF COUNSELING AND CLINICAL PSYCHOLOGY**<br>Teachers College, Columbia University, New York, New York<br>**Adjunct Assistant Professor of Psychology and Education, Clinical Supervisor:**<br>Course: Practicum in Individual Counseling, TJ 5360<br>*Provided weekly individual and group supervision to masters students who conducted psychotherapy and vocational counseling to a diverse population at a university based mental health clinic |

## CLINICAL EXPERIENCE

| | |
|---|---|
| 10/99-Present | **BELLEVUE/NYU PROGRAM FOR SURVIVORS OF TORTURE**, Bellevue Hospital Center, New York, New York<br>**Trilingual Psychologist** (English, French and Krio):<br>*Provide a range of psychological services to survivors of torture, traumatized refugees, and their families within the framework of a multidisciplinary team<br>*Provide supportive individual, family and group therapy to help patients cope with their post-traumatic stress symptoms and immigration adjustment<br>*Evaluate and document the psychological trauma suffered by survivors of torture and civil war for asylum hearings in New York and New Jersey<br>*Evaluate individuals to verify their claim of Sierra Leonean nationality for asylum hearings in New York and New Jersey<br>*Supervise psychology externs and interns |
| 12/96-12/01 | **THE LUCY A. WICKS HIV/AIDS MENTAL HEALTH CLINIC, DEPARTMENT OF PSYCHIATRY**, New York Presbyterian Hospital Center and Columbia University College of Physicians and Surgeons, New York, New York<br>**Psychologist and Assistant Professor in Clinical Psychology:**<br>*Provided a broad range of individual, family, couples, and group outpatient psychological services to a diverse adult urban population diagnosed with chronic terminal illness<br>*Supervised psychology externs and interns |

Case 1:13-cv-09195-BMC Document 168 Filed 04/17/23 Page 41 of 133 PageID #: 680

| 6/96-9/99 | **DEPARTMENT OF PSYCHOLOGICAL SERVICES,** Seamen's Society for Children and Families, Staten Island, New York |

**Psychologist:**
*Provided outpatient individual, family, and group psychotherapy to diverse children, adolescents, adults and collateral others involved with foster care
*Performed a broad range of psychological services to diverse families with member(s) diagnosed with chronic terminal illness
*Performed psychological evaluations
*Conducted training to staff, clients, and collateral others
*Supervised psychology externs and social work interns
*Contributed to program development by serving on multiple departmental committees

| 8/96-12/96 | **FOSTER BOARDING HOME PROGRAM AND ADOPTION SERVICES,** Central Brooklyn Coordinating Council, Brooklyn, New York |

**Psychotherapist:**
*Performed a variety of outpatient psychological services including psychological evaluations, individual, family and group psychotherapy to a diverse children, adolescents, adults and collateral others involved with foster care

| 7/95-6/96 | **PSYCHOLOGY DEPARTMENT,** Kings County Hospital Center, Brooklyn, New York |

**Psychology Intern:**
*Provided psychological services to a multi problem, high risk, chronic, diverse urban population with a broad range of psychological issues and diagnoses, at different levels of functioning, using multiple assessment and treatment approaches. Services ranged from admission through discharge and diagnostic evaluations. Treatment modalities utilized included dynamically oriented individual psychotherapy, cognitive-behavioral therapy, group therapy, family therapy, brief therapy, and play therapy

## PUBLICATIONS

**Refereed articles:**

**Akinsulure-Smith, A.M.** (in press). Displaced African female survivors of conflict-related sexual violence: Challenges for service providers. *Violence Against Women.*

**Akinsulure-Smith, A.M.** & Keatley, E. (2014). Secondary Trauma and Local Mental Health Professionals in Post-Conflict Sierra Leone. *International Journal for the Advancement of Counseling.* 36(2), 125-135.

**Akinsulure-Smith, A.M.,** Jones, W. L. & Dachos, N. (2013). Nah We Yone's De Fambul Camp: Facilitating resilience in displaced African children. *Journal of Immigrant and Refugee Studies, 11*(3), 221-240.

Rasmussen, A., Chu, T., **Akinsulure-Smith, A.M.,** & Keatley, E. (2013). The social ecology of resolving family conflict among West African immigrants in New York: A grounded theory approach. *American Journal of Community Psychology 52*(1), 185-196. DOI 10.1007/s10464-013-9588-0.

**Akinsulure-Smith, A.M.** (2013, April). Exploring HIV knowledge, risk and protective factors among West African forced migrants in New York City. *Journal of Immigrant and Minority Health.* Advance online publication. DOI 10.1007/s10903-013-9829-1.

**Akinsulure-Smith, A.M.,** Chu, T., Keatley, E. & Rasmussen, A. (2013). Intimate partner violence among West African immigrants. *Journal of Aggression, Maltreatment & Trauma, 22,* 109-126.

Muzacz, A. & **Akinsulure-Smith, A.M.** (2013). Older adult sexuality: Implications for counseling ethnic and sexual minorities. *Journal of Mental Health Counseling, 35,* 1-14.

**Akinsulure-Smith, A.M.** (2012, Dec). Exploring female genital cutting among West African immigrants. *Journal of Immigrant and Minority Health,* 14(6). Advance online publication. DOI 10.1007/s10903-012-9763-7.

**Akinsulure-Smith, A.M.** (2012). Responding to the trauma of sexual violence in asylum seekers: A clinical case study. *Clinical Case Studies, 11*(4), 285-298.

**Akinsulure-Smith, A.M.** (2012). Using group work to rebuild family and community ties among displaced African men, *Journal for Specialists in Group Work, 37*(2), 95-112.

Adeyinka M. Akinsulure-Smith
Page 4

Rasmussen, A., **Akinsulure-Smith, A.M.**, Chu, T. & Keatley, E. (2012, May 15). "911" among West African immigrants in New York City: A qualitative study of disciplinary practices and perceptions of child welfare authorities. *Social Science & Medicine*, Advance online publication. doi: 10.1016/j.socscmed.2012.03.042.

**Akinsulure-Smith, A.M.**, Keatley, E. & Rasmussen, A. (2012). Responding to secondary traumatic stress: A pilot study of torture treatment programs in the United States. *Journal of Traumatic Stress, 25*, 232-235.

**Akinsulure-Smith, A.M.** & Smith, H. (2012). Evolution of family policies in post-conflict Sierra Leone. *Journal of Child and Family Studies, 21*, 4-13.

**Akinsulure-Smith, A.M.** & O'Hara, M. (2012). Working with forced migrants: Therapeutic issues and considerations for mental health counselors. *Journal of Mental Health Counseling, 34*, 38-55.

Smith, H.E. & **Akinsulure-Smith, A.M.** (2011). Needed – Not Just Needy: Empowerment as a Therapeutic Tool in the Treatment of Survivors of Torture and Refugee Trauma. *African Journal of Traumatic Stress, 2, 17-31.*

O'Hara, M. & **Akinsulure-Smith, A.M.** (2011). Working with interpreters: Tools for clinicians conducting psychotherapy with forced immigrants, *International Journal of Migration, Health, and Social Care, 7*, 33-43.

**Akinsulure-Smith, A.M.** & Jones, W. L. (2011). Nah We Yone – A grassroots community based organization in New York City: Successes, challenges, and lessons learned, *International Journal of Migration, Health, and Social Care, 7*, 44-57.

**Akinsulure-Smith, A.M.** (2010). Torture. In Clauss-Ehlers, C.S. (Ed.). *Encyclopedia of Cross-Cultural School Psychology (Vol. 2, pp. 27-29).* New York, NY: Springer.

**Akinsulure-Smith, A.M.**, Ghiglione, J. & Wollmershauser, C. (2009). Healing in the midst of chaos: Nah We Yone's African women's wellness group, *Women & Therapy, 32*, 105-120.

**Akinsulure-Smith, A.M.**, (2009). Brief psychoeducational group treatment with re-traumatized refugees and asylum seekers. *Journal for Specialists in Group Work, 34(2)*, 137-150.

Amowitz, L.L., Reis, C., Lyons, K.H., Vann, B., Mansaray, B., **Akinsulure-Smith, A.M.**, Taylor, L. & Iacopino, V. (2002). Prevalence of war-related sexual violence and other human rights abuses among internally displaced persons in Sierra Leone. *Journal of the American Medical Association, 287*, 513-521.

Carter, R.T., **Akinsulure-Smith, A.M.**, Smailes, E.M. & Clauss, C.S. (1998). The Status of Racial/Ethnic Research in Counseling Psychology: Committed or Complacent? *Journal of Black Psychology, 24*, 322-334.

Carter, R.T. & **Akinsulure-Smith, A.M.** (1996). White racial identity and expectations about counseling. *Journal of Multicultural Counseling and Development, 24*, 218-228.

**Manuscripts under review:**

Jeswani, S., **Akinsulure-Smith, A.M.**, Chu, T., Keatley, E. & Rasmussen, A. (under review). Coping strategies among West African youth. *Cultural Diversity and Ethnic Minority Psychology*.

Betancourt, T.S., McBain, R.K., Newnham, E.A., Hann, K., **Akinsulure-Smith, A.M.**, Brennan, R.T., Weisz, J.R., & Hansen, N.B. (under review). A randomized trial of a mental health intervention for war-affected youth. *New England Journal of Medicine*.

Newnham, E.A., **Akinsulure-Smith, A.M.**, Hansen, N. & Betancourt, T.S. (in progress). A Collaborative Model for Building Capacity in Mental Healthcare: Training and Supervision for the Youth Readiness Intervention in Sierra Leone. *American Journal of Community Psychology*.

Betancourt, T.S., Newnham, E.A., Hann, K., McBain, R.K., **Akinsulure-Smith, A.M.**, Weisz, J.R., & Hansen, N.B. (under review). Developing a group mental health intervention for war-affected youth: A mixed methods approach. *Health Services Research.*

Adeyinka M. Akinsulure-Smith
Page 5

**Manuscripts in progress:**

**Akinsulure-Smith, A.M.**, Chu, T., & Rasmussen, A. (in progress). *Recruitment, Retention and Research with African Immigrants*. Manuscript in preparation.

**Akinsulure-Smith, A.M.**, Chu, T., Keatley, E. & Rasmussen, A. (in progress). *Exploring Female Genital Cutting among Survivors of Torture*. Manuscript in preparation.

**Akinsulure-Smith, A.M.**, Chu, T., & Diallo, A. (in progress). *Female Genital Cutting and West African Immigrants: Current Attitudes, Beliefs and Practices*. Manuscript in preparation.

**Akinsulure-Smith, A.M.**, Chu, T., Keatley, E. & Rasmussen, A. (in progress). *Exploring Female Genital Cutting among Survivors of Torture*. Manuscript in preparation.

**Akinsulure-Smith, A.M.**, Chu, T., Keatley, E. & Rasmussen, A. (in progress). *Friends: Perceived challenges facing West African immigrant parents*. Manuscript in preparation.

**Akinsulure-Smith, A.M.** & Sicalides, E. (in progress). *Female Genital Cutting in the United States: Implications for mental health services*. Manuscript in preparation.

**Akinsulure-Smith, A.M.** (in progress). *Emotional wellbeing and African immigrants*. Manuscript in preparation.

**Akinsulure-Smith, A.M.**, Chu, T., Keatley, E. & Rasmussen, A. (in progress). *Friends: Perceived challenges facing West African immigrant parents*. Manuscript in preparation.

Lanfranchi, M. & **Akinsulure-Smith, A.M.** (in progress). Global immigration: Opportunities and challenges for human rights, social justice and culturally competent counseling. (Manuscript in preparation).

Betancourt, T.S., Bearman, S.K., Newnham, E.A., **Akinsulure-Smith, A.M.**, Hann, K., Granetz, R.,...Hansen, N. (in progress). *Sierra Leone Youth Readiness Intervention Facilitator's Manual*. Manuscript in preparation.

Porterfield, K., Kia-Keating, M., **Akinsulure-Smith, A.M.**, Benson, M.A., Betancourt, T., Ellis, B.H. & Miller, K. (in progress). A socio-ecological understanding of refugee resilience and recovery after war: Implications for science and practice. Manuscript in preparation.

Chu, T., **Akinsulure-Smith, A.M.**, Keatley, E. & Rasmussen, A. (in progress). Cultural community support among forced and voluntary West African Migrants in New York City.

Gonzalez, S., Reid, K., Follins, L., **Akinsulure-Smith, A.M.** & Tiburcio, N. (in progress). *Insider-outsider experiences of HIV prevention researchers of color*. Manuscript in preparation.

Perez, C. & **Akinsulure-Smith, A.M.** (in progress). *Modern Day Slavery*. Manuscript in preparation.

**Book chapters:**

Berthold, S.M. & **Akinsulure-Smith, A.M.** (in press). Survivors and victims of terrorism. In A. Glitterman (Ed.). *Handbook of Social Work with Vulnerable and Resilient Populations*, 3rd Ed., New York, NY. Columbia University Press.

**Akinsulure-Smith, A.M.** & Smith, H. (2014). Emerging family policies in Sierra Leone. In M. Robila (Ed.), *Family Policies across the Globe* (pp15-29). New York, NY: Springer.

Clauss-Ehlers, C.S. & **Akinsulure-Smith, A.M.** (2013). Working with Forced Migrant Children and their Families: Mental Health, Developmental, Legal, and Linguistic Considerations in the Context of School-Based Mental Health Services. In C. Clauss-Ehlers, Z. Serpell & M. Weist (Eds.), *Handbook of Culturally Responsive School Mental Health: Advancing Research, Training, Practice, and Policy* (pp.135-146). New York, NY: Springer.

Robila, M. & **Akinsulure-Smith, A.M.** (2012). Psychological ethics and immigration. In M.M. Leach, M.J. Stevens, A. Ferrero, Y. Korkut, & G. Lindsay (Eds.). The *Oxford Handbook of International Psychological Ethics*. New York, NY Oxford University Press (pp 191-200).

**Akinsulure-Smith, A.M.** (2007). Use of Interpreters with Survivors of Torture, War, and Refugee Trauma. In Smith, H.E., Keller, A.S., & Lhewa, D.W. (Eds.). *"...Like a Refugee camp on First Avenue." Insights and Experiences from the Bellevue/NYU Program for Survivors of Torture*. The Bellevue/NYU Program for Survivors of Torture, New York (pp 82-105).

Porterfield, K. & **Akinsulure-Smith, A.M.** (2007). Therapeutic Work with Children and Families. In Smith, H.E., Keller, A.S., & Lhewa, D.W. (Eds.). "...Like a Refugee camp on First Avenue." Insights and Experiences from the Bellevue/NYU Program for Survivors of Torture. The Bellevue/NYU Program for Survivors of Torture, New York (pp 299-336).

Adeyinka M. Akinsulure-Smith
Page 6

Smith, H.E. & **Akinsulure-Smith, A.M.** (2004). A global perspective on youth outreach. In C.S. Clauss-Ehlers & M.D. Weist (Eds.), *Community Planning to Foster Resiliency in Children.* New York: Kluwer Academic/Plenum publishers.

**Akinsulure-Smith, A.M.** (2003). The black-eye peas group game. In Kaduson, H.G. & Schaefer, C.E. (Eds.), *101 Favorite Play Therapy Techniques, Volume III,* Northvale, NJ: Jason Aronson Inc.

## ADDITIONAL PUBLICATIONS

American Psychological Association (2010). *Resilience and recovery after war: Refugee children and families in the United States. Report of the APA Task Force on the Psychosocial Effects of War on Children and Families who are Refugees from Armed Conflict Residing in the United States* Washington, DC: American Psychological Association. Retrieved from: http://www.apa.org/pi/families/refugees.aspx (Member of the APA Task Force).

**Akinsulure-Smith, A.M.** (2004). Giving voice to the voiceless: Providing interpretation for survivors of torture, war, and refugee trauma. *The Gotham Translator,* 6-7.

**Akinsulure-Smith, A.M.** (January 1, 2002). African women don't get the blues. *Mu Yepe, 1,* 4-5.

**Akinsulure-Smith, A.M.** & Smith, H. (2002). Mission to Freetown. *Mano Vision,* 26/27, 12-13.

**Akinsulure-Smith, A.M.** (May 10, 2000). Perspective on Sierra Leone; rape and trauma arise from a deal made in hell; peacekeeping won't do. International peacemaking must show it viability in Africa. *Los Angeles Times,* Part B; Page 9.

**Akinsulure-Smith, A.M.** (1997). *The Effects of HIV/AIDS Knowledge, Sexual Self-Efficacy, and Susceptibility on Sexual Risk-Taking Behavior in Sierra Leonean Students of Higher Education.* Unpublished doctoral dissertation, Columbia University.

Akinsulure, A.M. (1989). *Processing Ethnic Stereotypes.* Unpublished Senior Honors Thesis, University of Western Ontario, Canada.

## PRESENTATIONS

Peer reviewed presentations:

**Akinsulure-Smith, A.M.,** Chu, T., Rasmussen, A., & Roubeni, S. (2013, June). *Population Movement Cultural Identity, and Public Health: The Case of West African Immigrants in New York City.* Paper presentation at the Global Health and Well-Being the Social Work Response Conference, New York, NY.

Jeswani, S., Rasmussen, A., **Akinsulure-Smith, A.M.,** & Chu, T. (2013, June). *Stressors and Coping Strategies among West African Immigrant Youth.* Paper presentation at the 25th Annual Ethnographic and Qualitative Research Conference, Cedarville, OH.

Betancourt, T.S., Hann, K, Newnham, E.A., **Akinsulure-Smith, A.M.,** & Hansen, N. (2012, November). *Design and Evaluation of a Group Mental Health Intervention for Multi-Symptomatic War-Affected Youth in Sierra Leone.* Paper presentation at the 28th Annual Meeting of the International Society for Traumatic Stress Studies, Los Angeles, CA.

Newnham, E.A., **Akinsulure-Smith, A.M.,** Hansen, N. & Betancourt, T.S. (2012, November). *A Collaborative Model for Building Capacity in Mental Healthcare: Training and Supervision for the Youth Readiness Intervention in Sierra Leone.* Paper presentation at the 28th Annual Meeting of the International Society for Traumatic Stress Studies, Los Angeles, CA.

**Akinsulure-Smith, A.M.,** Chu, T., Keatley, E., & Rasmussen, A., (2012, November). *Family Conflict and Community Support Among West African Refugee Families in New York.* Paper presentation at the 28th Annual Meeting of the International Society for Traumatic Stress Studies, Los Angeles, CA.

Newnham, E.A., **Akinsulure-Smith, A.M.,** Hansen, N. & Betancourt, T.S. (2012, July). *A Collaborative Model for Building Capacity in Mental Healthcare: Training and Supervision for the Youth Readiness Intervention in Sierra Leone.* Poster presentation at the McGill University Advanced Study Institute in Cultural Psychiatry, Montreal, Canada.

Rasmussen, A., **Akinsulure-Smith, A.M.,** Chu, T., & Keatley, E. (2012, May). *The place of public health institutions within problem-solving strategies of West African families in New York City.* Paper presentation at the 2012 Annual Meeting of the Society for the Study of Psychiatry and Culture, New York, NY.

Rasmussen, A., Chu, T., Keatley, E. & **Akinsulure-Smith, A.M.** (2011, Jun.). *Community resilience and conflict among West African migrants to New York City.* Paper presented at the 13th Biennial Conference of the Society for Community Research and Action, Chicago, IL.

Adeyinka M. Akinsulure-Smith
Page 7

Rasmussen, A., Chu, T., **Akinsulure-Smith, A.M.** & Keatley, E. (2010, Oct.). *The social ecology of solving family conflict in West African communities in New York.* Paper presented at the 9th international Conference on Urban Health, New York, NY.

**Akinsulure-Smith, A.M.** (2010, July). *Female Genital Cutting.* Workshop conducted at MAN UP, Young Leaders Summit 2010, Johannesburg, South Africa.

**Akinsulure-Smith, A.M.** & Smith, H.E. (2010, July). *Violence against women around the world.* Seminar conducted at MAN UP, Young Leaders Summit 2010, Johannesburg, South Africa.

Rasmussen, A., **Akinsulure-Smith, A.M.,** Chu, T. & Keatley, E. (2010, May). *Assessing family conflict in West African immigrant families.* In D. Hinton (Chair), Culturally Sensitive Assessment of Psychologically Distressed Ethnic and Non-English Speaking Populations. Symposium presented at the 2010 meeting of the American Psychiatric Association, New Orleans, LA.

**Akinsulure-Smith, A.M.** & Smith, H.E. (2010, April) *Rebuilding Community & Family Ties: The use of group treatment for Africans Survivors of torture & trauma.* Panel Presentation conducted for the 1st United States Conference on African Immigrant Health (USCIAH 2010), Atlanta, GA.

**Akinsulure-Smith, A.M.** & Smith, H.E. (2010, April). *Nah We Yone – Rebuilding and empowering shattered African communities.* Panel Presentation conducted for the 1st United States Conference on African Immigrant Health (USCIAH 2010), Atlanta, GA.

Pfister, J., Aubry, T., **Akinsulure-Smith, A.M.,** Bost, S.M., McGee, M. & Travis, T. (2009, November). *Re-thinking "Therapeutic Culture."* Roundtable conducted at American Studies Association Annual Convention, Washington, DC.

Muzacz, A., & **Akinsulure-Smith, A. M.** (2008, October). *Counseling healthy sexuality with ethnic minority and LGBT older adults.* Workshop presentation at the State Society on Aging of New York's 36th Annual Meeting, Saratoga Springs, NY.

Porterfield, K., **Akinsulure-Smith, A.M.,** Betancourt, T.S. & Kia-Keating, M. (2009, August). *War-affected refugee youth in America – Challenges and new directions.* Symposium conducted at the 117rd Annual American Psychological Association Annual Convention, Toronto, Ontario, Canada.

Muzacz, A. & Akinsulure-Smith, A.M. (2009, April). *Sexuality and Aging: Practice and Research with Ethnic Minority and LGB Adults.* Paper presented at the Southeastern Regional Counseling Psychology Conference, Athens, GA.

Muzacz, A. & **Akinsulure-Smith, A.M.** (2008, October). *Counseling Healthy Sexuality with Ethnic Minority and LGBT Older Adults.* Workshop presented at the State Society on Aging of New York's 36th Annual Meeting, Saratoga Springs, NY.

Muzacz, A., & **Akinsulure-Smith, A.M.** (2008, May). *Counseling Older Adults: Implications for Sexual Health.* Poster presented at Pace University's 16th Annual Psychology Conference, New York, NY.

Annan, J, Betancourt, T, Rasmussen, A, Borisova, I. & **Akinsulure-Smith, A.M.** (2007, November). *War-affected women and girls in three African conflicts – Wives, mothers, soldiers.* Symposium conducted at the 23rd Annual Meeting of the International Society for Traumatic Stress Studies, Baltimore, MD.

**Akinsulure-Smith, A.M.** & Smith, H.E. (2006, October). *Making therapy culturally relevant: Group therapy with African survivors of torture and refugee trauma.* Workshop conducted at the Institute for the Study and Promotion of Race and Culture, Boston College, Chestnut Hill, MA.

**Akinsulure-Smith, A.M.** & Smith, H.E. (2006, October). *Nah We Yone – It belongs to us.* Structured Discussion conducted at the Institute for the Study and Promotion of Race and Culture, Boston College, Chestnut Hill, MA.

**Akinsulure-Smith, A.M.,** Rogers, J. & Smith, H.E. (2004, November). *Nah We Yone, Inc.: Creating hope, support and safety out of chaos.* Workshop conducted at the 20th Annual Meeting of the International Society for Traumatic Stress Studies, New Orleans, LA.

**Akinsulure-Smith, A.M.** & Porterfield, K. (2004, November). *Two short-term group treatment models for war trauma survivors.* Workshop conducted at the 20th Annual Meeting of the International Society for Traumatic Stress Studies, New Orleans, LA.

**Akinsulure-Smith, A.M.,** Smith, H.E. & Nguyen, L. (2003, October). *Identity and meaning: Psychotherapy with survivors of torture.* Workshop conducted at the 19th Annual Meeting of the International Society for Traumatic Stress Studies, Chicago, Il.

**Akinsulure-Smith, A.M.,** Smith, H.E., Sesay, S. & Moore, M. (2003, May). *Working with African survivors of torture and refugee trauma.* African Refugees: The Enduring Search for Durable Solutions. Ethiopian Community Development Council, Inc. Ninth National Conference, Washington, DC.

**Akinsulure-Smith, A.M.,** Rogers, J. & Smith, H. E. (2000, February). *A challenge to cross-cultural psychology: Considerations for psychotherapy with war traumatized African refugees – Is there a place at the table?* Symposium conducted at the 17th Annual Teachers College Winter Roundtable on Cross-Cultural Psychology and Education, Teachers College, Columbia University, New York, NY.

**Akinsulure-Smith, A.M.** & Smith, H. E. (1997, February). *Africans in America: Cultural and environmental considerations for psychotherapy.* Families and Environmental Influences in Cross-Cultural Psychology and Education. Symposium conducted at the 14th Annual Teachers College Winter Roundtable on Cross-Cultural Psychology and Education, Teachers College, Columbia University, New York, NY.

Carter, R.T., Sicalides, E.I., Lee, D.Y., Ota Wang, V., **Akinsulure-Smith,** H.E. (1996, February). *A process model for cultural competence.* Workshop conducted at the 13th Annual Teachers College Winter Roundtable on Cross-Cultural Psychology and Education, New York, NY.

Carter, R.T., **Akinsulure, A.M.,** Lee, D.Y., Ota Wang, V., Sicalides, E.I. & Smith, H.E. (1995, August). The *Evolution of a training model for racial-cultural competencies.* Symposium conducted at the 103rd Annual American Psychological Association Annual Convention, New York, NY.

Carter, R.T., Clauss, C.S., **Akinsulure, A.M.** & Smailes, E.M. (1995, August). *The status of cross-cultural research in Psychology: Committed or complacent?* Poster presented at the 103rd Annual American Psychological Association Annual Convention, New York, NY.

Carter, R.T., **Akinsulure, A.M.,** Lee, D.Y., Ota Wang, V., Sicalides, E.I. & Smith, H.E. (1995, February). *A model for training racial-cultural competencies.* Workshop conducted at the 12th Annual Winter Roundtable on Cross-Cultural Psychology and Education, Teachers College, Columbia University, New York, NY.

**Invited Presentations**

**Akinsulure-Smith, A.M.** (2014, March). *International Human Rights, International House, and Me.* The Women's International Leadership Program and The Davis Peace and Diplomacy Initiative at International House, New York, NY.

Betancourt, T. & **Akinsulure-Smith, A.M.** (2013, July). *Mental Health Issues among Former Child Soldiers in Sierra Leone: A Longitudinal Perspective.* Paper presentation at the 6th Pan Africa PCAF Psychotrauma Conference, Kampala, Uganda.

Figley, K.R., Brancu, M., **Akinsulure-Smith, A.M.,** & Figeley, C. (2013, July). *Developing Resilience in Trauma Workers,* Webinar. APA Division 56 (Trauma) and Early Career Psychologists (ECP) Committee.

Betancourt, T. & **Akinsulure-Smith, A.M.** (2013, March). *Child Development and Mental Health: Using Longitudinal Data to Develop a Youth Readiness Intervention.* Paper presentation at the 2nd Annual Mental Health Conference, Freetown, Sierra Leone.

O'Hara, G., **Akinsulure-Smith, A.M.** & Porterfield, K. (2012, April). Refugees and Psychosocial Wellbeing. Panel discussion conducted for 5th Annual Psychology Day at the United Nations. *Human Rights for Vulnerable People: Psychological Contributions and the United Nations Perspective,* New York, NY.

**Akinsulure-Smith, A.M.** (2012, March). *Building on community strengths: Using group work to facilitate healing in refugee communities.* First Annual "It Takes a Community: Optimizing Refugee Resettlement" Conference. Franklin & Marshall College, Lancaster, PA.

**Akinsulure-Smith, A.M.,** Abdi, S. & Miller, C. (2011, July). *Refugee health in FY2011 and 2012 challenges and innovative strategies.* Panel Presentation conducted for Church World Service/The Immigration and Refugee Program National Conference, New York, NY.

**Akinsulure-Smith, A.M.** (2011, March). *Sexual Violence as a Tool of Torture and Weapon during Conflict,* Webinar - http://gulfcoastjewishfamilyandcommunityservices.org/refugee/2011/04/15/sexual-violence-by-dr-akinsulure-smith-webinar/

**Akinsulure-Smith, A.M.,** Constantino, G, Javier, R., Suzuki, L. & Wilkinson, L. & Clauss-Ehlers, C.S. (2010, April). *Promoting social justice and positive mental health in educational settings.* Panel Presentation Sponsored by NYSPA's Division of Culture, Race, and Ethnicity, New York, NY.

Adeyinka M. Akinsulure-Smith
Page 9

Soysa, C., Saunders, A. & Akinsulure-Smith, A.M. (2010, March). *Women's health and mental health in times of crisis: War, natural disasters, epidemics.* Panel Discussion conducted for The 54[rd]Session of the Commission on the Status of Women Parallel Event, Sponsored by the American Psychological Association (APA); the NGO Committee on HIV/AIDS; the NGO Committee on the Family, New York, NY.

Akinsulure-Smith, A.M. (2009, April). *The war on women: Gender based violence in armed conflict,* 2009 Women's Resource Center and Women's Studies Guest Lecture, College of Staten Island, the City University of New York, NY.

Akinsulure-Smith, A.M. (2008, April). *Caught in the crossfire –Violence against women during armed conflict,* 2008 Women and Gender Guest Lecture, University of Maine at Farmington, Farmington, ME.

Akinsulure-Smith, A.M. (2008, April). *Responding to the tragedy of war: The Nah We Yone Story.* Invited guest lecture, 2008 Culture and Diversity Program, University of Maine at Farmington, Farmington, ME.

Akinsulure-Smith, A.M. (2008, March). *Women and genocide: The use of sexual violence against women as a tool of genocide during armed conflict.* Invited guest lecture, 2008 Women and Genocide Lecture, Center for Holocaust/Gender Study & Women's Studies Program, Drew University, Madison, N.J.

Mattis, J.S., Akinsulure-Smith, A.M., Mahoney, A.M. & Fullilove, R. (2008, February). *Demographic profiles.* Panel Discussion conducted for The 3rd Annual Conference on the Health of the African Diaspora: Mental Health, New York University School of Medicine and Bellevue Hospital Center, New York, NY.

Akinsulure-Smith, A.M. (2007, December). *Refugee women and violence.* Workshop conducted at Episcopal Migration Ministries/ Program for Survivors of Torture Refugee Mental Health Training Atlanta, GA.

Akinsulure-Smith, A.M. (2007, December). *Responding to refugee children and their families.* Workshop conducted at Episcopal Migration Ministries/ Program for Survivors of Torture Refugee Mental Health Training Atlanta, GA.

Kodindo, G., Akinsulure-Smith, A.M., Hein, K. & Askew, G. (2007, December). *Promoting health and human rights of women and children.* Panel Discussion conducted for Profiles in Courage: Health and Human Rights in Action. Center for Health and Human Rights: New York University School of Medicine, New York, NY.

Akinsulure-Smith, A.M. (2007, June). *Therapeutic responses to displaced African female survivors of sexual violence.* Workshop conducted at War, Torture and Terror: The Role of Psychology. Ferkauf Graduate School of Psyhcology. Yeshiva University, New York, NY.

Myerfeld, J., Green, J. & Akinsulure-Smith, A.M. (2007, April). *Torture and the body.* Panel Discussion conducted for Rutgers University's Human Rights Panel Series, New Brunswick, NJ.

Otto, J., Rone, J., & Akinsulure-Smith, A.M. (2006, March). *Between two fires: Torture and displacement in Northern Unganda.* Panel Discussion conducted for WITNESS, United Nations Plaza, New York, NY.

Akinsulure-Smith, A.M., Kante, A., Traore, T. & Gogo, M. (2005, August). *A discussion on social relationships and (X)ual politics for the African woman.* A Day of A.W.E. African Women's Empowerment. Panel Discussion conducted for Sanctuary for Families, New York, NY.

Waruzi, B.T., Brown, .C.J., Akinsulure-Smith, A.M., Dicker, R. & Agborsangaya. P. (2005, April). *Female child soldiers in the DR of Congo.* Panel Discussion conducted for Citizens for Global Solutions, Woodrow Wilson Center, Washington, DC.

Clauss-Ehlers, C.S., Wong, G., Camacho-Gringerich, A., Javier, R., Smith, H, Akinsulure-Smith, A.M. & Mathur, S.J. (2005, March). *Community Planning to foster resilience in children.* Workshop sponsored by the Division of Culture, Race & Ethnicity of the New York State Psychological Association, conducted at Columbia University, Teachers College, New York, NY.

Akinsulure-Smith, A.M. & Smith, H.E. (2005, March). *Overview of torture and its consequences, secondary trauma, and working with interpreters.* Workshops conducted at the 2005 New Staff Institute, Center for Victims of Torture, Minneapolis, MI.

Akinsulure-Smith, A.M. & Smith, H.E. (2004, December). *Therapeutic work with African survivors of war and trauma.* Brown Bag Workshop conducted at The Institute of African Studies, School of International and Public Affairs, Columbia University, New York, NY.

**Akinsulure-Smith, A.M.** & Smith, H.E. (2004, October). *Human rights advocacy: Stress and renewal*. Workshop conducted for The Human Rights Advocate Program, School of International and Public Affairs, Columbia University, New York, NY.

**Akinsulure-Smith, A.M.** (2004, June). *Speaking the unspeakable: Interpreting for survivors of torture, war, and refugee trauma*. Global Security: Implications for Translation and Interpretation. Presentation at the 2nd International Translation Conference sponsored by NYU School of Continuing and Professional Studies' Center for Foreign Languages and Translation, New York, NY.

**Akinsulure-Smith, A.M.** & Smith, H.E. (2003, November). *Working with survivors of torture and refugee trauma*. International Center, New York, NY.

**Akinsulure-Smith, A.M.** (2003, September). *Assessing the credibility of Sierra Leonean trauma survivors*. Workshop conducted for the New York Asylum Office, the Bureau of Citizenship and Immigration Services of the Department of Homeland Security, Rosedale, NY.

**Akinsulure-Smith, A.M.** (2003, May). *Women and trauma: A global perspective*. Treating Women: Facilitating Cultural Connection. Princeton House Women's Program. Keynote Speech at the Spring Conference 2003, Mt. Laurel, NJ.

**Akinsulure-Smith, A.M.** (2003, April). *Working in the climate of war: Being compassionate in the face of hostility*. All Sides of Working in the Time of HIV and AIDS, Annual Conference of the Terry K., Watanabe Volunteer Center & GMHC Action, New York, NY.

**Akinsulure-Smith, A.M.** & Porterfield, K. (2003, April). *Responding to disasters: Mental health assessment and self-care*. Grand Rounds conducted for the Department of Social Work and Home Care Services, Beth Israel Hospital Center, New York, NY.

**Akinsulure-Smith, A.M.** & Rogers, J. (2002, October). *Operation Fine Girl: The abuse of women in war-torn Sierra Leone*. Discussion conducted for the Barnard Forum on Migration, Barnard College, Columbia University, New York, NY.

**Akinsulure-Smith, A.M.** (2001, May). *What is psychotherapy?* Workshop conducted for African Refugee Women at the International Institute of New Jersey, Cross-Cultural Counseling Center, Jersey City, NJ.

**Akinsulure-Smith, A.M.** (2001 May). *Sierra Leonean women: The scars of war*. Healing the Pain: Multicultural Responses to Violence Against Women, Annual Conference of the International Society of Traumatic Studies, Inc., New York Chapter, Fordham University, New York, NY.

**Akinsulure-Smith, A.M.** (2001, April). *Interviewing survivors of war-related sexual violence*. Workshop conducted for Witness. Lawyers Committee for Human Rights, New York, NY.

**Akinsulure-Smith, A.M.**, Rogers, J. & Smith, H.E. (2001, April). *Impact of wars in Africa: Case of Sierra Leone*. School of Social Work. International Social Welfare Caucus, Columbia University, New York, NY.

Shinn, B., Evans-Tranumn, S., McAshan, J., Fatima, C., **Akinsulure-Smith, A.M.** & Beckman, D. (2000, October). *Poverty Unveiled: A Panel Discussion*. Invited panelist at Women's Missionary Society, African Methodist Episcopal Church: Mobilizing Against Poverty – A Clarion Call – Connect, Act, Respond, Experience – Care. 12th Annual NGO Conference, United Nations Headquarters, New York, NY.

**Akinsulure-Smith, A.M.** (2000, October). *Issues of reproductive health for refugee women*. The Changing Face of Resettlement. Church World Service/Episcopal Migration Ministry Joint National Conference, Austin, TX.

**Akinsulure-Smith, A.M.** & Smith, H. (2000, October). *Challenges of being a caseworker*. The Changing Face of Resettlement. Church World Service/Episcopal Migration Ministry Joint National Conference, Austin, TX.

**Akinsulure-Smith, A.M.** (2000, October). *Adjustment issues in refugee children*. The Changing Face of Resettlement. Church World Service/Episcopal Migration Ministry Joint National Conference, Austin, TX.

**Akinsulure-Smith, A.M.** (2000, September). *Considerations for psychotherapy with war and torture survivors*. Invited lecture given at the Pre-Doctoral Psychology Internship Program, New York Psychiatric Institute, New York, NY.

**Akinsulure-Smith, A.M.** & de Jong, K. (2000, September). *Refugee trauma: From Sierra Leone to New York*. Doctors Without Borders/Médcines Sans Frontières (MSF) Special Event – A Refugee Camp in the Heart of the City, New York, NY.

**Akinsulure-Smith, A.M.** (2000, August). *The Sierra Leonean civil War*. Invited presentation given at the International Institute of New Jersey, Cross-Cultural Counseling Center, Jersey City, NJ.

Adeyinka M. Akinsulure-Smith
Page 11

**Akinsulure-Smith, A.M.** (2000, August). *Physical and mental health consequences of the Sierra Leone civil war on women: Where do we go from eere?* Perspectives of Sierra Leoneans in the New Millennium. First Annual Conference of the National Organization of Sierra Leoneans in North America, Atlanta, GA.

**Akinsulure-Smith, A.M.**, Engo-Tjega, R.B., Taylor, B. & Zemele, P. (2000, August). *Solidarity with Africa: A call for more action.* African Women and HIV/AIDS. Workshop conducted at 53rd Annual DPI/NGO Conference. Global Solidarity: The Way to Peace and International Cooperation. United Nations Headquarters, New York, NY.

**Akinsulure-Smith, A.M.** (2000, June). *Mental health consequences of sexual violence during the nine-year civil war in Sierra Leone.* Invited presentation given at the Annual Conference of the National Organization of Sierra Leoneans in North America, Atlanta, GA.

**Akinsulure-Smith, A.M.** & Eyega, Z. (2000, June). *Reproductive health and rights for African immigrants and refugee women: Strategies for community empowerment.* Workshop conducted at Focus on Women's Health Around the World in Support of the Beijing Platform for Action, Hunter College, New York, NY.

**Akinsulure-Smith, A.M.** & Impalli, E. (2000, March). *Considerations for working with interpreters.* Workshop conducted at Conference on Refugee Resettlement: Therapeutic Factors and Interventions, New York University Medical School, Bellevue Hospital, New York, NY.

**Akinsulure-Smith, A.M.** & Burke, P. (2000, February). *What women bring back from their sojourns in academia in the U.S.: Experiences of international professional women.* Invited presentation given at NAFSA: Association of International Educators, Women's Right to Education: Building Global Leadership for the 21st Century, United Nations, New York, NY.

**Akinsulure-Smith, A.M.** & Smith, H.E. (1999, November). *Sierra Leone: What are the health/human rights concerns in Sierra Leone? Why did the situation in Sierra Leone receive such little attention?* Invited Lecture given for Course STC 398: Health and Human Rights in the World Community, Princeton University, Princeton, NJ.

**Akinsulure-Smith, A.M.**, Rogers, J. & Smith, H.E. (1999, June). *Refugee children traumatized by war.* Children in Limbo. Symposium conducted at the Fifteenth Annual Manhattan Child and Adolescent Services Committee Conference, Fordham University, New York, NY.

**Akinsulure-Smith, A.M.** (1998, May). *Overview of the Wechsler Adult Intelligent Scale III.* Invited lecture given at the Pre-Doctoral Psychology Internship Program, Kings County Hospital Center, Brooklyn, New York.

**Akinsulure-Smith, A.M.** & Smith, H.E. (1998, April). *Recognizing, assessing and responding to suicidal risk factors in sdolescents.* Invited lecture given at ASPIRA of New York, Inc., New York, NY.

**Akinsulure-Smith, A.M.**, Smith, H.E. & Van Harte, E. (1997, April). *Psychotherapy with Africans in America.* Symposium conducted at the Perspectives on Black Psychology: Past, Present, and Future, Pace University, New York, NY.

**Akinsulure-Smith, A.M.** (1996, October). *Clinical issues for consideration in working with African populations.* Invited lecture given at the Pre-Doctoral Psychology Internship Program, Kings County Hospital Center, Brooklyn, NY.

**Akinsulure-Smith, A.M.** & Smith, H.E. (1996, March). *Each child has a gift.* Workshop presented at the Champions Academics & Sports Club, New York Junior Tennis League Parent Workshops, Brooklyn Public Schools, Brooklyn, NY.

**Akinsulure-Smith, A.M.** (1996, January). *Working with African populations.* Invited lecture given at the Pre-Doctoral Psychology Internship Program, Kings County Hospital Center, Brooklyn, NY.

Adeyinka M. Akinsulure-Smith
Page 12

## PROFESSIONAL ACTIVITIES

**3/10- Present**    **EXPERT WITNESS AND LEGAL CONSULTATION**

    *Retained by Trial Chamber III ("the Chamber") to serve as a joint expert on gender crime and Post Traumatic Stress Disorder ("PTSD") for all parties and participants in the case of the *Prosecutor v. Jean-Pierre Bemba Gombo* (case number ICC-01/05-01/08) before the International Criminal Court (ICC).

    *Provided expert testimony on gender crime and Posttraumatic Stress Disorder to plaintiffs and defendants in the case

    *Completed report was submitted to the court for distribution to prosecutor and defendant in the trial

    *Evaluated and documented the psychological trauma suffered by survivors of gender crimes in Central African Republic during the armed conflict from October-November 2002

**8/08-12/10**    **AMERICAN PSYCHOLOGICAL ASSOCIATION TASK FORCE ON THE PSYCHOLOGICAL EFFECT OF WAR ON CHILDREN AND FAMILIES WHO ARE REFUGEES FROM ARMED CONFLICTS RESIDING IN THE UNITED STATES (PEWCF)**

    *Appointed to a task force created to assist psychologist in the U.S. to meet the challenges of working with children and families who are refugees from armed conflicts residing in the U.S.

    *Review the research on the psychosocial effects of war on children and families

    *Identify areas of needed culturally and developmentally appropriate research

    *Develop recommendations for culturally and developmentally appropriate practice and programs

**5/97-7/10**    **NAH WE YONE, (NWY) Inc.,** New York, New York

    **Chairperson of the Board of Directors and Co-Founder:**

    *Co-founded voluntary, non-profit group that assists displaced and traumatized Africans with their adjustment within the New York City metropolitan area

    *Oversee all aspects NWY's programs, including, effective coordination of the board, staff and volunteers; establishment and implementation of programs; and evaluations

    *Provide clinical services to NWYs clients, including psychological evaluations and psychotherapy

    *Evaluate individuals to verify their claim of Sierra Leonean nationality for asylum hearings in New York and New Jersey

    *Conduct information and training sessions on the needs of displaced and traumatized Africans for local and national organizations

    *Develop funding proposals and ensure that funder required controls are carried out

**1/01-2/01**    **PHYSICIANS FOR HUMAN RIGHTS, Boston, Massachusetts & UNITED NATIONS MISSION IN SIERRA LEONE, HUMAN RIGHTS DIVISION, Sierra Leone**

    **Human Rights Investigation in Sierra Leone**

    *Participated in a month long quantitative study of women's health and human rights in Sierra Leone

    *Participated in meetings with local and international Non Governmental Organizations to gather information about available mental health services in Sierra Leone

    *Trained and supervised local research staff, and provided counseling

    *Participated in survey instrument development and translation into Krio

    *Prepared reports of the mission to assist in an advocacy campaign in the United States

**9/99-9/00**    **AFRICAN SERVICES COMMITTEE,** New York, New York

    **African Community Prevention Campaign**

    *Provided HIV/STD/TB education, prevention and care workshops as well as counseling and referrals to African immigrant and refugee communities

    *Promoted HIV/STD/TB prevention and care on African community radio stations

Case 1:13-cv-00189-BMC Document 68, Filed 04/17/23 Page 51 of 133 PageID #: 690

3/00      **PHYSICIANS FOR HUMAN RIGHTS, Boston, Massachusetts**
         **Human Rights Investigation in Sierra Leone**
         *Participated in a two-week humanitarian mission to Sierra Leone
         *Conducted preliminary research on the extent and impact of sexual violence during the war
          by interviewing women, young girls, child soldiers and other casualties of the war
         *Facilitated and participated in meetings with local and international Non Governmental
          Organizations to gather information about the extent and type of the trauma
         *Prepared reports regarding the mission to assist in a public awareness campaign in the United
          States

## PROFESSIONAL MEMBERSHIPS

1998-Present    American Counseling Association
                Division - Association for Multicultural Counseling and Development (AMCD)
                Division - Association for Specialists in Group Work (ASGW)
1998-Present    New York State Psychological Association
1997-Present    International Association for Play Therapy, Inc. & New York Association for Play Therapy
1995-Present    American Psychological Association
                Division 17 - Counseling Psychology
                Division 35 - Psychology of Women
                Division 45 - Society for the Psychological Study of Ethnic Minority Issues
                Division 49 - Group Psychology and Group Psychotherapy

## RESEARCH GRANTS AND CONTRACTS:

2014-2015    *Exploring Factors that Hinder and Help Women's Wellness in Post-Conflict Sierra Leone*
          Fulbright Africa Regional Research Program Award, PI
Spring 2013    *Female Genital Cutting and West African Immigrants: Current Attitudes, Beliefs and Practice*
          Professional Staff Congress – City University of New York (PSC-CUNY) Award #
          66771-00 44, PI
2008-2013    *HIV knowledge, risk and protective factors among West African forced migrants in New York City.*
          National Institute of Mental Health (NIMH) Fellow, Minority Research in HIV Intervention: Skills
          for the Community (RHISC) (NIMH, R25MH083602), PI
Spring 2011    *HIV knowledge, risk and protective factors among West African forced migrants in New York City.*
          Professional Staff Congress – City University of New York (PSC-CUNY) Award #
          64459-0042, PI
Spring 2010    *An Interdisciplinary Approach to Developing and Testing Evidence-based Mental Health*
          *Interventions for War Affected Youth in Sierra Leone.* Harvard Catalyst Pilot Grant, Co-PI
Fall 2010    The Colin Powell Center for Policy Studies Community Based Research Grant, The City
          College of New York, PI
Spring 2008    *Responding to Vicarious Trauma: A Survey of Torture Treatment Programs in the United States*
          Professional Staff Congress – City University of New York (PSC-CUNY) Award #
          61253-0039, PI

Research grants under review:
         *Social Networks and Health Among West African Refugees.* National Institute of Health (NIH),
          Research Project Grant (Parent R01), Co-PI
         *FGC and West African Immigrants: Current Attitudes, Beliefs and Practices.* National Institute of
          Health (NIH),Support of Competitive Research Program (SCORE), PI

## REVIEW PANELS

Ad hoc Reviewer      *Psychological Trauma: Theory, Research, Practice and Policy*
January 2012-2015    *Journal of Multicultural Counseling and Development*
Summer 2006       *Critical Half*

Allenwood-Low
1000
Deer, PA 17887

RETURN RECEIPT
REQUESTED

U.S. POSTAGE PAID
PO BOX & ENV
WHITE DEER, PA
17887
MAR 27, 20
AMOUNT
$0.00
R2305K138972-08

1000    11201

<>82814-053<> *Attn Clerk of Court*
United States District Court
Judge John Gleeson
225 Cadman Plaza East
Brooklyn  NY 11201

Low Security Correctional Institution
Allenwood, PA 17887
Date_____MAR 2 7 2020_____
The enclosed letter was processed through
special mailing procedures for forwarding to
you. The letter has neither been opened nor
inspected. If the writer raises a question or
problem over which this facility
jurisdiction, you may wish to return
material for further information or clarification
If the writer encloses correspondence for
forwarding to another address, please *Legal*
*Mail*

**CLERK OF U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
225 CADMAN PLAZA EAST
BROOKLYN, NY 11201

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300



Attn: Clerk's office
United States Court of Appeal
for the Second Circuit

40 Foley Square

New York, NY 10007



CLOSED

# U.S. District Court
## Eastern District of New York (Brooklyn)
## CRIMINAL DOCKET FOR CASE #: 1:13-cr-00109-JG-1

Case title: USA v. Babafemi

Date Filed: 02/21/2013
Date Terminated: 08/17/2015

Assigned to: Judge John Gleeson

### Defendant (1)

**Lawal Olaniyi Babafemi**
*TERMINATED: 08/17/2015*
*also known as*
Abdullah
*TERMINATED: 08/17/2015*
*also known as*
Ayatollah Mustapha
*TERMINATED: 08/17/2015*

represented by **Lisa Hoyes**
Federal Defenders of New York
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
718-330-1253
Fax: 718-855-0760
Email: lisa_hoyes@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or*
*Community Defender Appointment*

**Chase A. Scolnick**
Federal Defenders of New York, Inc.
One Pierrepont Plaza
16th Floor
Brooklyn, NY 11201
(718)330-1213
Fax: (718)855-0760
Email: chase_scolnick@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or*
*Community Defender Appointment*

### Pending Counts

### Disposition

PROVIDING MATERIAL SUPPORT
OR RESOURCES TO TERRORISTS

Dft to be imprisoned for a term of 15
years on Count One and 7 years on
Count Two to run consecutively on
each count, totaling 22 years of
incarceration. It is the court's
understanding that the dft will be given
credit for time served since August 19,

Case 1:13-cr-00129-BMC Document 166 Filed 04/10/17 Page 55 of 138 PageID #: 694

(1)

2011 in Nigeria. The court recommends to the bureau of prisons for incarceration at an FCI that is at the most minimal level as deemed appropriate by the bureau of prisons. No term of supervised release. Special Assessment of $200.00.

PROVIDING MATERIAL SUPPORT OR RESOURCES TO TERRORISTS (2)

Dft to be imprisoned for a term of 15 years on Count One and 7 years on Count Two to run consecutively on each count, totaling 22 years of incarceration. It is the court's understanding that the dft will be given credit for time served since August 19, 2011 in Nigeria. The court recommends to the bureau of prisons for incarceration at an FCI that is at the most minimal level as deemed appropriate by the bureau of prisons. No term of supervised release. Special Assessment of $200.00.

VIOLENT CRIME/DRUGS/MACHINE GUN (3)

All open counts dismissed on the motion of the U.S.

CONSPIRACY TO USE FIREARMS (4)

All open counts dismissed on the motion of the U.S.

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

---

**Plaintiff**

| **USA** | represented by | **Hilary Ley Jager** |
| --- | --- | --- |
| | | United States Attorneys Office |
| | | 271 Cadman Plaza East |
| | | Brooklyn, NY 11201 |

Case 1:13-cr-00109-BMC  Document 168  Filed 04/20/2032  Page 56 of 133 PageID #: 695

(718)254-6248
Fax: (718)254-6320
Email: hilary.jager@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William M. Narus**
U.S. Department of Justice
Counterterrorism Section
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
202-307-0789
Fax: 202-514-8714
Email: william.narus@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zainab Ahmad**
United States Attorneys Office
for the Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
(718)254-6522
Fax: (718)254-6076
Email: zainab.ahmad@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/21/2013 | 1 | SEALED INDICTMENT as to Lawal Olaniyi Babafemi (1) count(s) 1-2, 3, 4. (Attachments: # 1 SEALED COVER SHEET) (Piper, Francine) (Additional attachment(s) added on 2/21/2013: # 2 Criminal Information Sheet) (Piper, Francine). (Entered: 02/21/2013) |
| 02/21/2013 | 4 | ORDER FOR ISSUANCE OF Arrest WARRANT as to Lawal Olaniyi Babafemi. Ordered by Magistrate Judge Viktor V. Pohorelsky on 2/21/2013. (Marziliano, August) (Entered: 03/14/2013) |
| 02/27/2013 | 2 | NOTICE OF ATTORNEY APPEARANCE Hilary Ley Jager appearing for USA. (Marziliano, August) (Entered: 02/27/2013) |
| 02/27/2013 | 3 | LIMITED Order to Unseal Document as to Lawal Olaniyi Babafemi. 1 Indictment (Sealed). Ordered by Magistrate Judge Viktor V. Pohorelsky on 2/21/2013. (Marziliano, August) (Main Document 3 replaced on 2/27/2013) (Marziliano, August). (Entered: 02/27/2013) |
| 03/12/2013 | 5 | LIMITED UNSEALING ORDER as to Lawal Olaniyi Babafemi, the information previously ordered sealed may be unsealed for the limited purpose of disseminating the information to relevant U.S., foreign, or intergovernmental authorities.. Ordered by Magistrate Judge Lois Bloom on 3/12/2013. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Application, # 2 Sealing Cover Sheet) (Piper, Francine) (Entered: 03/14/2013) |
| 08/28/2013 | 6 | Order to Unseal Indictment and Arrest Warrant as to Lawal Olaniyi Babafemi.. Ordered by Magistrate Judge Vera M. Scanlon on 8/27/2013. (Piper, Francine) (Entered: 08/29/2013) |
| 09/27/2013 | 11 | Minute Entry for proceedings held before Judge John Gleeson:Arraignment as to Lawal Olaniyi Babafemi (1) Count 1-2,3,4 held on 9/27/2013, Initial Appearance as to Lawal Olaniyi Babafemi held on 9/27/2013, Status Conference as to Lawal Olaniyi Babafemi held on 9/27/2013, Plea entered by Lawal Olaniyi Babafemi (1) Count 1-2,3,4. by Lawal Olaniyi Babafemi Not Guilty to all counts. Order of Speedy Trial entered, Code XT, Start 9/27/13 - Stop 10/30/13. Order of Detention pending trial entered. The parties are beginning discover and negotiations. The court has designated this case as complex for speedy trial purposes. ( Status Conference set for 10/30/2013 11:30 AM in Courtroom 6C South before Judge John Gleeson.) AUSA Zainab Ahmad; Defense Counsel, Lisa Hoyes. (Court Reporter Mary Agnes Drury.) (Piper, Francine) (Entered: 10/03/2013) |
| 09/27/2013 | 12 | CJA 23 Financial Affidavit by Lawal Olaniyi Babafemi (Piper, Francine) (Entered: 10/03/2013) |
| 09/27/2013 | 13 | ORDER OF DETENTION PENDING TRIAL as to Lawal Olaniyi Babafemi. Ordered by Judge John Gleeson on 9/27/13. (Piper, Francine) (Entered: 10/07/2013) |
| 09/27/2013 | 15 | Arrest Warrant Returned Executed on 9/27/13. in case as to Lawal Olaniyi Babafemi. (Piper, Francine) (Entered: 10/17/2013) |
| 09/30/2013 | | Order to Unseal the entire case as to Lawal Olaniyi Babafemi. Ordered by Judge John Gleeson on 9/30/2013. (Lee, Ilene) (Entered: 09/30/2013) |
| 09/30/2013 | 7 | Letter *by the government enclosing Rule 16 discovery* as to Lawal Olaniyi Babafemi (Ahmad, Zainab) (Entered: 09/30/2013) |
| 10/01/2013 | 8 | NOTICE OF ATTORNEY APPEARANCE: Lisa Hoyes appearing for Lawal Olaniyi Babafemi (Hoyes, Lisa) (Entered: 10/01/2013) |
| 10/01/2013 | 9 | NOTICE OF ATTORNEY APPEARANCE: Chase A. Scolnick appearing for Lawal Olaniyi Babafemi (Scolnick, Chase) (Entered: 10/01/2013) |
| 10/02/2013 | 10 | STIPULATION AND ORDER, Regarding Protective Order as to Lawal Olaniyi Babafemi. Ordered by Judge John Gleeson on 10/2/2013. (Piper, Francine) (Entered: 10/02/2013) |
| 10/08/2013 | 14 | Letter *by the government enclosing Rule 16 discovery* as to Lawal Olaniyi Babafemi (Ahmad, Zainab) (Entered: 10/08/2013) |
| 10/17/2013 | 16 | NOTICE OF ATTORNEY APPEARANCE William M. Narus appearing for USA. (Narus, William) (Entered: 10/17/2013) |
| 10/25/2013 | 17 | Letter *by the government enclosing Rule 16 discovery* as to Lawal Olaniyi Babafemi (Ahmad, Zainab) (Entered: 10/25/2013) |
| | | |

| | | |
|---|---|---|
| 10/25/2013 | 18 | Letter *by the government enclosing Rule 16 discovery* as to Lawal Olaniyi Babafemi (Ahmad, Zainab) (Entered: 10/25/2013) |
| 10/30/2013 | | Minute Entry for proceedings held before Judge John Gleeson: Case called. Defendant Lawal Olaniyi Babafemi, in custody, appears with counsel Lisa Hoyes, Esq. AUSA Zainab Ahmad and AUSA William M. Narus appears for the government. Status Conference as to Lawal Olaniyi Babafemi held on 10/30/2013. The parties are still in discovery negotiations. The next Status Conference is set for January 6, 2014 at 10:30 AM in courtroom 6C South before Judge John Gleeson. The speedy trial time is excluded until the next conference date. (Court Reporter Gene Rudolph.) (Lee, Ilene) (Entered: 10/30/2013) |
| 01/03/2014 | 19 | PRETRIAL MEMORANDUM *of Law in Support of Motion for a Pretrial Conference Pursuant to CIPA* as to Lawal Olaniyi Babafemi (Ahmad, Zainab) (Entered: 01/03/2014) |
| 01/06/2014 | | Minute Entry for proceedings held before Judge John Gleeson: Case called. Defendant Lawal Olaniyi Babafemi, in custody, appears with counsel Lisa Hoyes, Esq. AUSA William M. Narus and AUSA Daniel S. Silver appear for the government. Status Conference as to Lawal Olaniyi Babafemi held on 1/6/2014. The parties are still in discovery and negotiations. The government's CIPA section 4 application is to be filed by 2/28/14. The defendant's objection to an ex parte section 4 filing shall be briefed as: Motion due by 1/31/14; Opposition due by 2/14/14; and the Reply is due by 2/21/14. The next Status Conference is set for March 7, 2014 t 12:30 PM in courtroom 6C South before Judge John Gleeson. The speedy trial time is excluded since the case has been designated complex. (Court Reporter Lisa Schmid.) (Lee, Ilene) (Entered: 01/06/2014) |
| 01/06/2014 | | SCHEDULING ORDER as to Lawal Olaniyi Babafemi: It occurs to the Court that we need a trial date we can all plan around. Accordingly, jury selection and trial is scheduled for June 16, 2014, at 9:30 AM. Ordered by Judge John Gleeson on 1/6/2014. (Herling, Adam) (Entered: 01/06/2014) |
| 01/31/2014 | 20 | PRETRIAL MEMORANDUM *Opposing Government's Request to File CIPA Application Ex Parte* as to Lawal Olaniyi Babafemi (Hoyes, Lisa) (Entered: 01/31/2014) |
| 02/07/2014 | | NOTICE OF Change in date for the Status Conference as to Lawal Olaniyi Babafemi due to Court related matters. The new Status Conference date is now rescheduled for Thursday, March 6, 2014 at 10:30 AM in courtroom 6C South before Judge John Gleeson. (Lee, Ilene) (Entered: 02/07/2014) |
| 02/14/2014 | 21 | MOTION in Limine *to permit government to file CIPA Section 4 motion ex parte, responding to defense submission of 1/31/14* by USA as to Lawal Olaniyi Babafemi. (Ahmad, Zainab) (Entered: 02/14/2014) |
| 02/24/2014 | 22 | Letter *to the Court requesting ex parte conference regarding CIPA briefing and classified discovery* as to Lawal Olaniyi Babafemi (Jager, Hilary) (Entered: 02/24/2014) |
| 02/24/2014 | | ORDER: The government's 22 letter request for an *ex parte* conference is |

| | | |
|---|---|---|
| | | granted. The conference will be held on February 25, 2014, at 2:30 PM in chambers, Room 727 South. Ordered by Judge John Gleeson on 2/24/2014. (Herling, Adam) (Entered: 02/24/2014) |
| 02/25/2014 | | ORDER: The government's 21 motion for permission to file its CIPA Section 4 motion *ex parte* for *in camera* review is granted over the defendant's objection. The defendant's requests for alternative relief are denied except the defendant may file an *ex parte* submission regarding how classified material may be helpful and material to the defense. Ordered by Judge John Gleeson on 2/25/2014. (Herling, Adam) (Entered: 02/25/2014) |
| 02/25/2014 | | ORDER: Based on an *ex parte* on the record application, the government's time to file their CIPA Section 4 application is extended until March 21, 2014. In light of this extension, the status conference originally scheduled for March 7, 2014, is adjourned until March 27, 2014, at 3:00 PM in Courtroom 6C South. Because the *ex parte* application relates to matters of national security, the transcript is ordered sealed. Ordered by Judge John Gleeson on 2/25/2014. (Herling, Adam) (Entered: 02/25/2014) |
| 03/25/2014 | | NOTICE OF Change in time for the Status Conference as to Lawal Olaniyi Babafemi. The date remains set for Thursday, March 27, 2014, but the time is now changed to 12:30 PM in courtroom 6C South before Judge John Gleeson. (Lee, Ilene) (Entered: 03/25/2014) |
| 03/27/2014 | 23 | MOTION for Protective Order *pursuant to CIPA* by USA as to Lawal Olaniyi Babafemi. (Attachments: # 1 Exhibit) (Jager, Hilary) (Entered: 03/27/2014) |
| 03/27/2014 | | Minute Entry for proceedings held before Judge John Gleeson: Case called. Defendant Lawal Babafemi, in custody, appears with counsel Lisa Hoyes, Esq. AUSA Zainab Ahmad and AUSA Hilary Jager appear for the government. Status Conference as to Lawal Olaniyi Babafemi held on 3/27/2014. Discovery and CIPA filings are almost completed. The following briefing schedule was given: Defendant's Motion(s) due by 5/9/14; Opposition due by 5/23/14; Reply due by 5/30/14. An evidentiary hearing is scheduled on June 19, 2014 at 9:30 AM in courtroom 6C South before Judge John Gleeson. In light of this motion schedule, the Jury Selection and Trial date is now adjourned to July 14, 2014 at 9:30 AM in courtroom 6C South before Judge John Gleeson. The speedy trial time is excluded until the next hearing date. (Court Reporter Ronald Tolkin.) (Lee, Ilene) (Entered: 03/27/2014) |
| 04/07/2014 | 24 | MOTION for Disclosure *of Grand Jury Transcripts* by Lawal Olaniyi Babafemi. (Scolnick, Chase) (Entered: 04/07/2014) |
| 04/08/2014 | | ORDER: The government shall respond to the defendant's 24 motion for disclosure of grand jury transcripts by April 11, 2014. Defendant's reply, if any, shall be filed by April 15, 2014. Ordered by Judge John Gleeson on 4/8/2014. (Herling, Adam) (Entered: 04/08/2014) |
| 04/09/2014 | 25 | MOTION for Protective Order *pursuant to CIPA Section 3* by USA as to Lawal Olaniyi Babafemi. (Attachments: # 1 Proposed Order, # 2 Exhibit) (Jager, Hilary) (Entered: 04/09/2014) |
| 04/11/2014 | 26 | RESPONSE in Opposition re 24 MOTION for Disclosure *of Grand Jury* |

|  |  |  |
|---|---|---|
|  |  | *Transcripts* (Ahmad, Zainab) (Entered: 04/11/2014) |
| 04/14/2014 | 27 | Protective Order as to Lawal Olaniyi Babafemi (1). Ordered by Judge John Gleeson on 4/10/2014. (Piper, Francine) (Entered: 04/14/2014) |
| 04/14/2014 | 28 | MOTION for Extension of Time to File *Motions* by Lawal Olaniyi Babafemi. (Hoyes, Lisa) (Entered: 04/14/2014) |
| 04/15/2014 | 29 | REPLY TO RESPONSE to Motion re 24 MOTION for Disclosure *of Grand Jury Transcripts* (Scolnick, Chase) (Entered: 04/15/2014) |
| 04/16/2014 | 30 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Lawal Olaniyi Babafemi held on March 27, 2014, before Judge Gleeson. Court Reporter/Transcriber Ronald E. Tolkin, Official Court Reporter, Telephone number 718-613-2647. Email address: ronald_tolkin@nyed.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/7/2014. Redacted Transcript Deadline set for 5/19/2014. Release of Transcript Restriction set for 7/15/2014. (Tolkin, Ronald) (Entered: 04/16/2014) |
| 04/17/2014 |  | ORDER granting 28 Motion for Extension of Time to File: The following briefing schedule will apply for defendant's motions. The motions are due by May 23, 2014; the government's opposition is due by June 6, 2014; defendant's reply, if any, is due by June 13, 2014. An evidentiary hearing will be held on June 20, 2014, at 9:30 AM in courtroom 6C South. Ordered by Judge John Gleeson on 4/17/2014. (Herling, Adam) (Entered: 04/17/2014) |
| 04/18/2014 |  | ORDER: The defendant's 24 motion for an order unsealing the general instructions to the grand jury that indicted him is denied. Ordered by Judge John Gleeson on 4/18/2014. (Herling, Adam) (Entered: 04/18/2014) |
| 04/18/2014 | 31 | ORDER: For the reasons explained in the attached Memorandum and Order, the government's 23 Motion for Protective Order is granted. Ordered by Judge John Gleeson on 4/18/2014. (Herling, Adam) (Entered: 04/18/2014) |
| 04/29/2014 | 32 | Minute Entry for proceedings held before Judge John Gleeson:Change of Plea Hearing as to Lawal Olaniyi Babafemi held on 4/29/2014, Plea entered by Lawal Olaniyi Babafemi (1) Guilty Count 1-2., ( Sentencing set for 8/27/2014 03:30 PM in Courtroom 6C South before Judge John Gleeson.) AUSA Zainab Ahmad, Hilary L. Jager and William Narus. Defense Counsel, Lisa Hoyes and Chase Scolnick. (Court Reporter Allan Sherman.) (Piper, Francine) (Entered: 04/30/2014) |
| 08/14/2014 | 34 | MOTION to Continue Sentencing by Lawal Olaniyi Babafemi. (Hoyes, Lisa) (Entered: 08/14/2014) |
| 08/15/2014 |  | ORDER granting 34 Motion to Continue Sentencing as to Lawal Olaniyi Babafemi (1). The sentencing date is now set for November 14, 2014 at 3:00 PM in Courtroom 6C South before Judge John Gleeson. Ordered by Judge John Gleeson on 8/15/2014. (Lee, Ilene) (Entered: 08/15/2014) |
| 10/20/2014 | 35 | MOTION to Continue Sentencing by Lawal Olaniyi Babafemi. (Hoyes, Lisa) |

| | | (Entered: 10/20/2014) |
|---|---|---|
| 10/21/2014 | | ORDER granting <u>35</u> Motion to Continue Sentencing as to Lawal Olaniyi Babafemi (1). The sentencing date is set for January 9, 2015 at 2:30 PM in Courtroom 6C South before Judge John Gleeson. Ordered by Judge John Gleeson on 10/21/2014. (Lee, Ilene) (Entered: 10/21/2014) |
| 12/18/2014 | <u>36</u> | Final MOTION to Continue Sentencing by Lawal Olaniyi Babafemi. (Hoyes, Lisa) (Entered: 12/18/2014) |
| 12/22/2014 | | ORDER granting <u>36</u> Motion to Continue Sentencing as to Lawal Olaniyi Babafemi (1): The sentencing date is now set for Thursday, January 22, 2015, at 3:00 PM in Courtroom 6C South before Judge John Gleeson. Ordered by Judge John Gleeson on 12/22/2014. (Levin, Sarah) (Entered: 12/22/2014) |
| 01/09/2015 | <u>37</u> | SENTENCING MEMORANDUM by Lawal Olaniyi Babafemi (Attachments: # <u>1</u> Exhibit B: psychological evaluation, # <u>2</u> Exhibit C: letter from Mr. Babafemi, # <u>3</u> Exhibit D: letter from Adenike Toyyibah Lawal, # <u>4</u> Exhibit E: statement of Ahmad Lawal, # <u>5</u> Exhibit F: statement of Bolatito Obakemi, # <u>6</u> Exhibit G: statement of Mrs. Alhaja Modupe Lawal, # <u>7</u> Exhibit H: statement of Tosin Olykoya, # <u>8</u> Exhibit I: statement of Ibrahim Bornidele, # <u>9</u> Exhibit J: statement of Abdul Waheed Iwaloye, # <u>10</u> Exhibit K: letter from Nasrul-Lahi-Il-Fathi Society of Nigeria, # <u>11</u> Exhibit L: Inmate Work Performance Rating, # <u>12</u> Exhibit M: medical records, # <u>13</u> Exhibit N: Nigerian court document, # <u>14</u> Exhibit O: Nigerian court document) (Hoyes, Lisa) (Entered: 01/09/2015) |
| 01/15/2015 | <u>38</u> | MOTION for Extension of Time to File *Sentencing Memorandum* by USA as to Lawal Olaniyi Babafemi. (Jager, Hilary) (Entered: 01/15/2015) |
| 01/16/2015 | | ORDER granting <u>38</u> Motion for Extension of Time to File as to Lawal Olaniyi Babafemi: The government's sentencing memorandum shall now be due on or before Friday, January 23, 2015. The sentencing date is adjourned to January 30, 2015, at 3:30 p.m. in Courtroom 6C South. Ordered by Judge John Gleeson on 1/16/2015. (Levin, Sarah) (Entered: 01/16/2015) |
| 01/22/2015 | <u>39</u> | Second MOTION for Extension of Time to File *Sentencing Memorandum* by USA as to Lawal Olaniyi Babafemi. (Jager, Hilary) (Entered: 01/22/2015) |
| 01/23/2015 | | ORDER granting <u>39</u> Motion for Extension of Time to File as to Lawal Olaniyi Babafemi: The government's sentencing memorandum shall be due on or before Friday, February 27, 2015. The sentencing date is adjourned to Friday, March 6, 2015, at 2:00 p.m. in Courtroom 6C South. Ordered by Judge John Gleeson on 1/23/2015. (Levin, Sarah) (Entered: 01/23/2015) |
| 02/25/2015 | <u>40</u> | Third MOTION for Extension of Time to File Response/Reply *regarding Sentencing* by USA as to Lawal Olaniyi Babafemi. (Jager, Hilary) (Entered: 02/25/2015) |
| 02/26/2015 | | ORDER: The government's motion <u>40</u> is granted. The government shall file its sentencing memorandum on or before April 24, 2015. The sentencing will now take place on April 30, 2015. Ordered by Judge John Gleeson on 2/26/2015. (Ross, Peter) (Entered: 02/26/2015) |
| 04/30/2015 | <u>42</u> | SENTENCING MEMORANDUM by USA as to Lawal Olaniyi Babafemi |

| | | (Attachments: # 1 Exhibit A) (Jager, Hilary) (Entered: 04/30/2015) |
|---|---|---|
| 05/11/2015 | 43 | MOTION to Continue Sentencing by Lawal Olaniyi Babafemi. (Hoyes, Lisa) (Entered: 05/11/2015) |
| 05/12/2015 | | ORDER granting 43 Motion to Continue Sentencing as to Lawal Olaniyi Babafemi. The sentencing date is adjourned to Friday, July 17, 2015, at 2:00 p.m. in Courtroom 6C South. Ordered by Judge John Gleeson on 5/12/2015. (Levin, Sarah) (Entered: 05/12/2015) |
| 05/20/2015 | 44 | Letter as to Lawal Olaniyi Babafemi from Stephanie Clifford (New York Times) to Judge Gleeson, requesting that the court unseal dft's sentencing memorandum. (Piper, Francine) (Entered: 05/21/2015) |
| 05/22/2015 | | ORDER TO SHOW CAUSE as to Lawal Olaniyi Babafemi: The defendant is directed to show cause in writing on or before Friday, June 5, 2015, why the May 20, 2015 application 44 to unseal Babafemi's sentencing memorandum 37 should not be granted. If the defendant believes that part of the memorandum should be redacted, he should indicate the portion(s) to be redacted and the reasons for the proposed redaction(s). Ordered by Judge John Gleeson on 5/22/2015. (Levin, Sarah) (Entered: 05/22/2015) |
| 06/08/2015 | 45 | RESPONSE TO ORDER TO SHOW CAUSE by Lawal Olaniyi Babafemi (Attachments: # 1 proposed redactions part A, # 2 proposed redactions part B) (Hoyes, Lisa) (Entered: 06/08/2015) |
| 06/09/2015 | | ORDER: In a sealed submission dated June 5, 2015, the defendant has agreed to unseal his sentencing memorandum subject to redactions of certain "sensitive portions." The defendant is directed to file a copy of the memorandum with the proposed redactions on the public docket. Ms. Clifford may respond in writing, if she wishes, on or before Friday, June 12, 2015. Whether she responds or not, oral argument on the application 44 will be held on Friday, June 19, 2015, at 4:00 p.m. in Courtroom 6C South. Ordered by Judge John Gleeson on 6/9/2015. (Levin, Sarah) (Entered: 06/09/2015) |
| 06/10/2015 | | ORDER: Oral argument on the application to unseal the defendant's sentencing memorandum 44 is changed to Thursday, June 18, 2015, at 12:30 p.m. in Courtroom 6C South. Ordered by Judge John Gleeson on 6/10/2015. (Levin, Sarah) (Entered: 06/10/2015) |
| 06/11/2015 | 46 | SENTENCING MEMORANDUM by Lawal Olaniyi Babafemi (Attachments: # 1 Exhibit B: psychological evaluation, # 2 Exhibit C: statement from Mr. Babafemi, # 3 Exhibit D: letter from Adenike Toyyibah Lawal, # 4 Exhibit E: statement from Ahmad Lawal, # 5 Exhibit F: statement from Bolatito Obakemi, # 6 Exhibit G: statement from Mrs. Alhaja Modupe Lawal, # 7 Exhibit H: statement from Tosin Olykoya, # 8 Exhibit I: statement from Ibrahim Bornidele, # 9 Exhibit J: statement from Abdul Waheed Iwaloye, # 10 Exhibit K: letter from religious organization, # 11 Exhibit L: MCC work performance evaluation, # 12 Exhibit M: blood test report, # 13 Exhibit N: Nigerian court document, # 14 Exhibit O: Nigerian court document) (Hoyes, Lisa) (Entered: 06/11/2015) |
| 06/12/2015 | 47 | Letter *Opposing Sealing* as to Lawal Olaniyi Babafemi (McCraw, David) |

| | | |
|---|---|---|
| | | (Entered: 06/12/2015) |
| 06/17/2015 | 48 | Letter *submitting affidavit in support of request for redactions* as to Lawal Olaniyi Babafemi (Attachments: # 1 Affidavit) (Hoyes, Lisa) (Entered: 06/17/2015) |
| 06/18/2015 | | Minute Entry for proceedings held before Judge John Gleeson: Case called. Defendant Lawal Olaniyi Babafemi, in custody, appears with counsel Lisa Hoyes, Esq.. AUSA Zainab Ahmad appears for the government. David McCraw and Jeremy Kutner appear on behalf of the New York Times Company. Oral Argument as to Lawal Olaniyi Babafemi held on 6/18/2015 regarding the New York Times Company's motion to unseal the defendant's sentencing submission 44 . The Court's decision is reserved and will be filed via ECF separately. (Court Reporter Anthony Frisolone.) (Lee, Ilene) (Entered: 06/18/2015) |
| 06/18/2015 | | ORDER: The application in the government's letter 49 is granted. Ordered by Judge John Gleeson on 6/18/2015. (Levin, Sarah) (Entered: 06/18/2015) |
| 06/25/2015 | 50 | Letter *in support of New York Times's Unsealing Application* as to Lawal Olaniyi Babafemi (Attachments: # 1 Exhibit 1) (Ahmad, Zainab) (Entered: 06/25/2015) |
| 06/25/2015 | 51 | Letter *containing redacted version of Doc 50, letter in support of New York Times's Unsealing Application* as to Lawal Olaniyi Babafemi (Ahmad, Zainab) (Entered: 06/25/2015) |
| 06/29/2015 | 52 | Letter *regarding briefing schedule* as to Lawal Olaniyi Babafemi (Hoyes, Lisa) (Entered: 06/29/2015) |
| 06/29/2015 | 53 | MOTION to Continue Sentencing by Lawal Olaniyi Babafemi. (Hoyes, Lisa) (Entered: 06/29/2015) |
| 06/30/2015 | | ORDER granting 53 Motion to Continue Sentencing as to Lawal Olaniyi Babafemi. The sentencing is adjourned to Wednesday, August 12, 2015, at 2:00 p.m. in Courtroom 6C South. Ordered by Judge John Gleeson on 6/30/2015. (Levin, Sarah) (Entered: 06/30/2015) |
| 06/30/2015 | | ORDER: The defendant's request in the letter dated June 29, 2015 52 is granted. Ordered by Judge John Gleeson on 6/30/2015. (Levin, Sarah) (Entered: 06/30/2015) |
| 07/02/2015 | 54 | MOTION for Extension of Time to File *Response and Reply* by Lawal Olaniyi Babafemi. (Hoyes, Lisa) (Entered: 07/02/2015) |
| 07/06/2015 | | ORDER granting 54 Motion for Extension of Time to File as to Lawal Olaniyi Babafemi. Ordered by Judge John Gleeson on 7/6/2015. (Levin, Sarah) (Entered: 07/06/2015) |
| 07/13/2015 | 55 | Letter *in reply to government's letter opposing sealing* as to Lawal Olaniyi Babafemi (Hoyes, Lisa) (Entered: 07/13/2015) |
| 07/13/2015 | 56 | Letter *documenting classified filing* as to Lawal Olaniyi Babafemi (Hoyes, Lisa) (Entered: 07/13/2015) |
| | | |

| 07/16/2015 | 57 | Letter *supplementing classified letter filed on July 13, 2015* as to Lawal Olaniyi Babafemi (Hoyes, Lisa) (Entered: 07/16/2015) |
|---|---|---|
| 08/11/2015 | | ORDER as to Lawal Olaniyi Babafemi: Before the Court is the New York Times's application to unseal the defendant's sentencing memorandum 44 . I conclude that the defendant has failed to establish a substantial probability that the unsealing of the redacted portions of his sentencing memorandum will result in prejudice to the compelling interest he advances that does not already exist. *See United States v. Zazi*, No. 09-CR-663 (RJD), 2010 WL 2710605, at *2 (E.D.N.Y. June 30, 2010) (setting forth standard articulated in *United States v. Doe*, 63 F.3d 121, 128 (2d Cir. 1995)). Accordingly, with the exception of the psychological evaluation itself, which may remain under seal pending further order of the Court, the defendant is directed to file an unredacted version of his sentencing memorandum by no later than 11:00 am tomorrow. In addition, the government is directed to file an unredacted version of its own sentencing memorandum immediately after the defendant files his. Ordered by Judge John Gleeson on 8/11/2015. (Levin, Sarah) (Entered: 08/11/2015) |
| 08/11/2015 | 58 | SENTENCING MEMORANDUM by Lawal Olaniyi Babafemi (Attachments: # 1 Exhibit B: psychological evlauation (redacted), # 2 Exhibit C: statement from Mr. Babafemi, # 3 Exhibit D: letter from Adenike Toyyibah Lawal, # 4 Exhibit E: statement from Ahmad Lawal, # 5 Exhibit F: statement from Bolatito Obakemi, # 6 Exhibit G: statement from Mrs. Alhaja Modupe Lawal, # 7 Exhibit H: statement from Tosin Olykoya, # 8 Exhibit I: statement from Ibrahim Bornidele, # 9 Exhibit J: statement from Abdul Waheed Iwaloye, # 10 Exhibit K: letter from religious organization, # 11 Exhibit L: MCC work performance evaluation, # 12 Exhibit M: blood test report, # 13 Exhibit N: Nigerian court document, # 14 Exhibit O: Nigerian court document) (Hoyes, Lisa) (Entered: 08/11/2015) |
| 08/11/2015 | 59 | SENTENCING MEMORANDUM by USA as to Lawal Olaniyi Babafemi (Jager, Hilary) (Entered: 08/11/2015) |
| 08/12/2015 | 60 | Minute Entry for proceedings held before Judge John Gleeson:Sentencing held on 8/12/2015 for Lawal Olaniyi Babafemi (1), Count(s) 1, 2, Dft to be imprisoned for a term of 15 years on Count One and 7 years on Count Two to run consecutively on each count, totaling 22 years of incarceration. It is the court's understanding that the dft will be given credit for time served since August 19, 2011 in Nigeria. The court recommends to the bureau of prisons for incarceration at an FCI that is at the most minimal level as deemed appropriate by the bureau of prisons. No term of supervised release. Special Assessment of $200.00.; Count(s) 3, 4, All open counts dismissed on the motion of the U.S AUSA Zainab Ahmad; Defense Counsel, Lisa Hoyes. (Court Reporter Fred Guerino.) (Piper, Francine) (Entered: 08/17/2015) |
| 08/13/2015 | | ORDER: The court spoke to Adam Johnson today from the MCC regarding the defendant's request for updates on and treatment for his medical condition as discussed at his sentencing proceeding on August 12, 2015. Mr. Johnson reported that he will have the defendant seen by a doctor as soon as possible, and hopefully today. Mr. Johnson will also update the court in writing on or before Wednesday, August 19, 2015, as to the defendant's medical condition and the plan for treatment. Ordered by Judge John Gleeson on 8/13/2015. |

Case 1:13-cr-00109-BMC Document 68 Filed 04/17/2023 Page 65 of 133 PageID #: 704

| | | (Levin, Sarah) (Entered: 08/13/2015) |
|---|---|---|
| 08/17/2015 | 61 | JUDGMENT as to Lawal Olaniyi Babafemi (1), Count(s) 1, 2, Dft to be imprisoned for a term of 15 years on Count One and 7 years on Count Two to run consecutively on each count, totaling 22 years of incarceration. It is the court's understanding that the dft will be given credit for time served since August 19, 2011 in Nigeria. The court recommends to the bureau of prisons for incarceration at an FCI that is at the most minimal level as deemed appropriate by the bureau of prisons. No term of supervised release. Special Assessment of $200.00.; Count(s) 3, 4, All open counts dismissed on the motion of the U.S.Ordered by Judge John Gleeson on 8/14/2015. (Piper, Francine) (Entered: 08/17/2015) |
| 08/20/2015 | | ORDER as to Lawal Olaniyi Babafemi: The Court has received a report from the MCC regarding Babafemi's medical condition and treatment plan, which will be filed under seal. In light of the report, it does not appear that relief from the Court is warranted. If Babafemi feels differently, he should notify the Court accordingly, and he should also notify the MCC. Ordered by Judge John Gleeson on 8/20/2015. (Levin, Sarah) (Entered: 08/20/2015) |

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 17 2020 ★

BROOKLYN OFFICE

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

MOTION FOR AN ORDER AUTHORIZING THE DISTRICT COURT
TO CONSIDER A SUCCESSIVE OR SECOND HABEAS CORPUS APPLICATION
PURSUANT to 28 U.S.C. §§ 2244 (b), 2254
BY A PRISONER IN STATE CUSTODY

| NAME: |
|---|
| Lawal Babafemi |

| PLACE OF CONFINEMENT: | PRISONER NUMBER: |
|---|---|
| Allenwood Low | 82814-053 |

### Instructions–Read Carefully

(1)   This motion must be legibly handwritten or typewritten and signed by the movant under penalty of perjury.  All documents must be on 8½ x 11 inch paper; the Court will not accept other paper sizes.  Any false statements of a material fact may serve as the basis for prosecution and conviction for perjury.

(2)   All questions must be answered concisely in the proper space on the form.

(3)   Movant seeking leave to file a second or successive petition is required to use this form. In capital cases only, the use of this form is optional.

(4)   Movant may use additional pages only to explain additional grounds for relief and set forth additional facts and documents supporting any alleged grounds.  Separate petitions, motions, briefs, arguments, etc. should not be submitted.

(5)   In capital cases only, the use of this form is optional, and separate petitions, motions, briefs, arguments, may be submitted.

2020 MAY – PM 12: 50
U.S. COURT OF APPEALS
CLERK'S OFFICE

RECEIVED

Rev. 1.24.2018

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

Lawal Babafemi
_____
(Petitioner)

v.

United States of America
_____

**CERTIFICATE OF SERVICE***

Docket Number: 13-CR-109-IJG

Civil Action No.: _____

I, Lawal Babafemi _____, hereby certify under penalty of perjury that
(print name)

on March 27th, 2020, I served a copy of Memorandum Brief and Attachments
(date)

_____
(list all documents)

by (select all applicable)**

___ Personal Delivery

Certified
x United States Mail

___ Federal Express or other
Overnight Courier

___ Commercial Carrier

___ E-Mail (on consent)

on the following parties:

| Clerk of Court/Hon. J. Gleeson/EDNY 225 Cadman Plaza East Brooklyn NY 11201 | | | | |
|---|---|---|---|---|
| Name | Address | City | State | Zip Code |
| AUSA Zainab Ahmad/Office US Atty 271 Cadman Plaza East Brooklyn NY 11201 | | | | |
| Name | Address | City | State | Zip Code |
| | | | | |
| Name | Address | City | State | Zip Code |
| | | | | |
| Name | Address | City | State | Zip Code |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or
proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously
filed.

**If different methods of service have been used on different parties, please complete a separate
certificate of service for each party.

26th March, 2020
_____
Today's Date

_____
Signature

Certificate of Service Form (Last Revised 12/2015)

## MOTION

1.    (a)    Name and location of court which entered the judgment of conviction under attack
    United States District Judge, Eastern District of New York,
    225 Cadman Plaza East, Brooklyn New York 11201
       (b)    Case number   13-CR-109

2.   Date of judgment of conviction   August 12, 2015

3.   Length of sentence   22 years    Sentencing Judge   Hon. John Gleeson

4.   Nature of offense or offenses for which you were convicted:
    Conspiracy to Provide Material Support to a Foreign Terrorist Organ-
    ization 18 USC 2339B (A) (1), 2239b(d) and 3551; and attempted provision
    same as above and (2)

5.   Have you ever filed a post-conviction petition, application, or motion for collateral relief
    in any federal court related to this conviction and sentence?
    Yes [ ]   No [X.]
    If "yes", how many times? _____ (if more than one, complete 6 and 7 below as
    necessary)
    (a) Name of court _____
    (b) Case number _____
    (c) Nature of proceeding _____
    _____
    _____
    (d) Grounds raised (list all grounds; use extra pages if necessary)_____
    _____
    _____
    _____
    _____
    _____
    (e) Did you receive an evidentiary hearing on your petition, application, or motion?
    Yes [ ]   No [X]
    (f) Result _____
    _____
    (g) Date of result _____

6.   As to any second federal petition, application, or motion, give the same information:
    (a) Name of court _____
    (b) Case number _____

     Rev. 1.24.2018

(c)  Nature of proceeding _____

_____

(d) Grounds raised (list all grounds; use extra pages if necessary) _____

_____

_____

_____

_____

(e) Did you receive an evidentiary hearing on your petition, application, or motion?
Yes [  ]  No [X]
(f) Result _____

_____

(g) Date of result _____

7.   As to any third federal petition, application, or motion, give the same information:
(a) Name of court _____
(b) Case number _____
(c)  Nature of proceeding _____

_____

(d) Grounds raised (list all grounds; use extra pages if necessary)_____

_____

_____

_____

(e) Did you receive an evidentiary hearing on your petition, application, or motion?
Yes [  ]  No [X]
(f) Result_____

_____

(g) Date of result _____

8.   Did you appeal the result of any action taken on your federal petition, application, or
motion? (Use extra pages to reflect additional petitions if necessary)
(1) First petition, etc. No [X]  Yes [  ] Appeal No. _____
(2) Second petition, etc. No [X]  Yes [  ] Appeal No. _____
(3) Third petition, etc. No [X]  Yes [  ] Appeal No. _____

Page 4                                    Rev. 1.24.2018

9. If you did not appeal from the adverse action on any petition, application, or motion, explain briefly why you did not: New laws were not available at the time of sentencing.

10. State concisely every ground on which you now claim that you are being held unlawfully. Summarize briefly the facts supporting each ground.

   A. Ground one: Petitioner's sentence was procedurally & substantively unreasonable.

   Supporting FACTS (tell your story briefly without citing cases or law): Petitioner's sentencing transcripts do not appropriately address any actual crime that Petitioner committed pertaining to attempting to provide material support to a foreign terrorist organization.

   Was this claim raised in a prior federal petition, application, or motion?
   Yes [ ]   No [X]

   Does this claim rely on a "new rule of constitutional law?" Yes [ ]   No [X]
   If "yes," state the new rule of constitutional law (give case name and citation):

   Does this claim rely on "newly discovered evidence?" Yes [X]   No [ ]
   If "yes," briefly describe the newly discovered evidence, attach a copy (if available), state when you obtained it, and why it was not previously available to you.
   Recent new case laws and decisions not previously available at the time of sentencing; obtained while incarcerated.

Page 5                                          Rev. 1.24.2018

B.    Ground two:   Change in language pursuant to the statute of
conviction.

Supporting FACTS (tell your story briefly without citing cases or law):
Petitioner was sentenced on an illegal first impression, now
Supreme Court decision that, individuals cannot be charged
or enhanced on actual or relevant conduct; only the statute
of conviction.

Was this claim raised in a prior federal petition, application, or motion?
Yes [ ]   No [X]

Does this claim rely on a "new rule of constitutional law?"   Yes [ ]   No [X]
If "yes," state the new rule of constitutional law (give case name and citation):

Does this claim rely on "newly discovered evidence?" Yes [X]   No [ ]
If "yes," briefly describe the newly discovered evidence, attach a copy (if
available), state when you obtained it, and why it was not previously available to
you
Recent new case laws (Supreme Court Rulings) not previously
available at the time of sentencing and obtained while incarcer-
ated.

**[Additional grounds and facts and documents supporting any alleged grounds
may be set forth on extra pages if necessary]**

11.    Do you have any motion or appeal now pending in any court as to the judgment now
under attack? Yes [ ]   No [X]
If yes, Name of court _____ Case number _____

Page 6                                    Rev. 1.24.2018

C. Ground three: The Court (nor Govt) stated any material support or resources that an actual crime was committed.

Supporting FACTS (tell your story briefly without citing cases or law): The Court allowed erroneous assertions not supported by real facts that were not supported by actual or material resources, thus violated Petitioner's 5th Amendment Rights.

Was this claim raised in a prior federal petition, application, or motion?
Yes ☐  No ☒

Does this claim rely on a "new rule of constitutional law?" Yes ☐  No ☒
If "yes," state the new rule of constitutional law (give case name and citation):

Does this claim rely on "newly discovered evidence?" Yes ☒  No ☐
If "yes," briefly describe the newly discovered evidence, attach a copy (if available), state when you obtained it, and why it was not previously available to you.
Recent new case laws (Supreme Court Rulings) not previously available at the time of sentencing obtained while incarcerated.

Page 6A.

Rev. 1.24.2018

D. Ground four: The Court erred in not sentencing Petitioner based on the national sentencing disparities of others or similar conduct and charges.

Supporting FACTS (tell your story briefly without citing cases or law): The District Court must avoid unwarranted sentencing disparities among defendnats who have been found guilty of similar correct charges.

Was this claim raised in a prior federal petition, application, or motion?
Yes ☐ No ☒

Does this claim rely on a "new rule of constitutional law?"   Yes ☐ No ☒
If "yes," state the new rule of constitutional law (give case name and citation):

Does this claim rely on "newly discovered evidence?" Yes ☒ No ☐
If "yes," briefly describe the newly discovered evidence, attach a copy (if available), state when you obtained it, and why it was not previously available to you
Recent new case laws (Supreme Court Rulings) not previously available at the time of sentencing obtained while incarcerated.

**[Additional grounds and facts and documents supporting any alleged grounds may be set forth on extra pages if necessary]**

Do you have any motion or appeal now pending in any court as to the judgment now under attack? Yes ☐ No ☒
If yes, Name of court _____ Case number _____

Page 6B.

Rev. 1.24.2018

Wherefore, movant prays that the United States Court of Appeals for the Second Circuit grant an Order Authorizing the District Court to Consider Applicant's Second or Successive Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254.

_____
Movant's Signature

I declare under Penalty of Perjury that my answers to all the questions in this motion are true and correct.

Executed on _26th March, 2020_          _____
                [date]                              Movant's Signature

## PROOF OF SERVICE

Movant must send a copy of this motion and all attachments to the attorney general of the state in which applicant was convicted.

I certify that on _March 27th, 2020_, I mailed a copy of this motion*
                        [date]

and all attachments to _AUSA & Clerk of Court_ at the following address:   NY 11201

_AUSA Zainab Ahmad/Office US Atty 271 Cadman Plaza East Brooklyn_

_Clerk of Court/Hon. J. Gleeson/EDNY 225 Cadman Plaza East Brooklyn NY 11201_

_____
Movant's Signature

---

\*      Pursuant to FRAP 25(a), "Papers filed by an inmate confined in an institution are timely filed if deposited in the institution's internal mail system on or before the last day of filing. Timely filing of papers by an inmate confined in an institution may be shown by a notarized statement or declaration (in compliance with 28 U.S.C. § 1746) setting forth the date of deposit and stating that first-class postage has been prepaid."

Rev. 1.24.2018

**Federal Rules of Appellate Procedure Form 7.   Declaration of Inmate Filing**

United States District Court for the District of ___Eastern District of New York___

| | |
|---|---|
| United States of America | ) |
| _Plaintiff,_ | ) |
| v. | )    Case No. ___13-CR-109 (JG)___ |
| | ) |
| Lawal Babafemi | )    Civil Action No. _____ |
| | ) |
| _Defendant._ | ) |

    I am an inmate confined in an institution. Today, _3/26/20_ [_insert date_], I am depositing the _2255(h)(2)_ [_insert title of document; for example, "notice of appeal"_] in this case in the institution's internal mail system. First-class postage is being prepaid either by me or by the institution on my behalf.

    I declare under penalty of perjury that the foregoing is true and correct (see 28 U.S.C. § 1746; 18 U.S.C. § 1621).

Sign your name here _____

Signed on _3/26/20_____ [_insert date_]

[**_Note to inmate filers:_** _If your institution has a system designed for legal mail, you must use that system in order to receive the timing benefit of Fed. R. App. P. 4(c)(1) or Fed. R. App. P. 25(a)(2)(C)._]

UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF NEW YORK

Lawal Babafemi
    (Petitioner)

                                Civil Action No. _____

v                               | Criminal Action No.: 13-CR-109 (JG)

United States of America
    (Respondents)

PETITIONER'S MEMORANDUM OF LAW IN SUPPORT
(AND IN LIGHT OF NEW CASE LAWS)
MOTION TO VACATE, SET ASIDE OR CORRECT
CONVICTION AND SENTENCE PURSUANT
TO PETITIONER'S 28 U.S.C. §2255
(h)(2) PETITION
---------------------------------------------

    NOW COMES the Petitioner, Lawal Babefemi, Pro Se, and moves this Honorable
Court to vacate, set aside or correct his conviction and sentence pursuant
to this 28 U.S.C. §2255(h)(2) petition, and Petitioner states as follows:

I.  BACKGROUND

    On or around February 2013; the Government (by way of a Court Order)
issued an arrest warrant against Petitioner based on an indictment carrying
four (4) counts ranging from Conspiracy to Provide Material Support to a Foreign
Terrorist Organization to multiple 924(c) charges.

    Post facto of an Extradition Order in which Petitioner willingly agreed
to (after being tortured in his own home country's jail of Nigeria, Africa);
Petitioner ultimately plead to the following two counts such as: (1)

COUNT ONE

(Conspiracy to Provide Material Support
to a Foreign Terrorist Organization)

    In or about and between January 2010 and August 2011, both dates being
approximate and inclusive, within the extraterritorial jurisdiction of the
United States, the defendant LAWAL OLANIYI BABAFEMI, also known as "Abdullah"

---

Footnote (1): See Attachment of the Psychology Report (#2)

1

and "Ayatollah Mustapha," together with others, did knowingly and intentionally conspire to provide material support and resources, as defined in Title 18, United States Code, Section 2339A(b), including services and personnel, including himself, to a foreign terrorist organization, to wit: al-Qaeda in the Arabian Peninsula.

(Title 18, United States Code, Sections 2339B(a)(1), 2339B(d) and 3551 et seq.)

## COUNT TWO
### (Provision and Attempted Provision of Material Support to a Foreign Terrorist Organization)

In or about and between January 2010 and August 2011, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendant LAWAL OLANIYI BABAFEMI, also known as "Abdullah" and "Ayatollah Mustapha," together with others, did knowingly and intentionally provide and attempt to provide material support and resources, as defined in Title 18, United States Code, Section 2339(A(b), including services and personnel, including himself, to a foreign terrorist organization, to wit: al-Qaeda in the Arabian Peninsula.

(Title 18, United States Code, Sections 2339B(a)(1), 2339(d), 2 and 3551 et seq.)

Petitioner now appropriately files this timely motion pursuant to a 2255(h)(2); based on the Grounds that new case laws in support not available at the time of Petitioner's sentence had occurred. [2]

Petitioner is now 40 years old at the time of this filing; having served about 8½ years of his 22 year(s) sentence.

## II. PRELIMINARY STATEMENT

Petitioner seeks relief under statute 28 USC 2255 Habeas Petition; pursuant to a second and successive filing under the Rule where it states when an individual could (or should) file pursuant to the 2255 statute. The Rules pursuant 28 USC §2255 does address that an individual can file even past the one (1) year statute of limitations; when or on the grounds that he is "actually innocent"

---

Footnote (2): Petitioner was sentenced on August 12, 2015; yet was taken into custody on or around August 2011 in Nigeria, Africa.

of a particular charge (or enhancement illegally derived) and in the interest
of brevity and judicial economy, when a correction of an illegal sentence
must be further adjudicated such as:

1) To prevent a complete miscarriage of Justice that would
   result from allowing a unconstitutional sentence to stand
   (U.S. v. Cabey) 429 F.3d 93 (2005) (Also see), (U.S. Maybeck)
   23 F.3d 888 (1994), (U.S. v. Mikalajunas) 186 F.3d 490, 495
   (1999)

2) A new claim raised could not have been raised in a prior
   motion; nor presented previously because the issue raised
   was not available at the time of sentencing; ((2255)(h)(2))

3) A change in the law that directly effect the guideline range
   of his sentence or incorrectly created resulting in an im-
   proper classification (U.S. v. Whitley), 737 F.App x 147,
   148-49 (4th Cir. 2018); (Also see) (U.S. v. McCollum),885
   F.3d 300, 307-09 (2018); or

4) Newly discovered evidence that if proven and viewed in the
   light of the evidence as a whole would be suffcient to est-
   ablish by clear and convincing evidence; that no reasonable
   fact finder would have found the movant guilty of the offense.

### III. STATEMENT OF FACTS

Petitioner acknowledges that in his plea (signed) agreement; he agreed
to not file an appeal or otherwise challenge, by petition pursuant to 28 USC
§2255 or any other provision, the conviction or sentence in the event that
the Court imposes a term of imprisonment of 360 months or below. Thus waiving
all his rights to appeal Post Facto of the sentence.

However, Petitioner now understands that he cannot waive his rights
constitutionally (even as a non-U.S. citizen); when challenging his rights
pursuant to any violation of the amendments of the United States. Petitioner
now challenges that his 5th Amendment Rights of Due Process were in fact violated.

Accordingly, Petitioner cites New Supreme Court Ruling that clearly contradicts
any district court's decision that Petitioner waived his rights by signing
and/or agreeing to do so during the sentencing process now decided in (U.S.
v. Class).

As recently as February 21, 2018, Supreme Court decided in <u>favor</u> in the case (<u>Class v. United States</u>), 138 S.Ct. 798, 200 L.Ed. 2d 37; 2018 US Lexis 1378; 86 U.S.L.W 4055; 27 FLA.L.Weekly Fed.5.60 No. 16-424; that a valid guilty plea forgoes not only a fair trial, but also other accompanying constitutional guarantees. While those simultaneously relinquished rights include the privilege against compulsory self-incrimination, the jury trial right, and the right to confront accusers, they do not include a waiver of the privileges which exist beyond the confines of the trial.

By its own terms, Fed.Rule.Crim.P.11(a)(2) itself does not say whether it sets forth the exclusive procedure for a defendant to preserve a constitutional claim following a guilty plea. At the same time, the drafters' notes acknowledge that the United States Supreme Court has held that certain kinds of Constitutional objections may be raised after a plea of guilty. The notes then specifically refer to the Menna-Blackledge doctrine. They add that the Rule should not be interpreted as either broadening or narrowing that doctrine or as establishing procedures for its application. And the notes state that Rule 11(a)(2) has no application to the kinds of constitutional objections that may be raised under that doctrine.

Furthering, the Court found that a guilty plea, by itself does not bar a federal criminal defendant from challenging the constitutionality of his statute of conviction on direct appeal or collateral proceedings.

This holding flows directly from this Court's prior decisions. Fifty years ago, in Haynes v. United States, the Court addressed a similar claim challenging the Constitutionality of a criminal statute. Justice Harlan's opinion for the Court stated that the defendant's "plea of guilty did not, of course, waive his previous [constitutional] claim." 390 US 85, 87, n.2 88 S.Ct. 722, 19 L.Ed.2d 923, 1968-1 C.B. 615. That [200 L.Ed.2d 40] clear statement reflects an understanding of the nature of guilty pleas that stretches, in broad outline, nearly 150 years. Subsequent decisions have elaborated upon it. In Blackledge v. Perry, 417 US 21, 94 S.Ct. 2098, 40 L.Ed.2d 628, the Court recognized that a guilty plea bars some"':anecdotal constitutional violations;'" related to events (such as grand jury proceedings) that "'occu[r] prior to the entry of the guilty plea.'" Id., at 30, 94 S.Ct. 2098, 40 L.ed.2d 628 (quoting Tollett v. Henderson), 411 US 258, 266-67, 93 S.Ct. 1602, 36 L.Ed.2d 235). However, where the claim implicates "the very power of the State" to prosecute the defendant, [138 S.Ct. 801] a guilty plea cannot by itself bar

4

the claim." Id, at 63, n.2d, 96 S.Ct. 241, 46 L.Ed.2d 19. In more recent years,
the Court has reaffirmed the Menna-Blackledge doctrine's basic teaching that"
'a plea of guilt to a charge does not waive a claim that -- judged on its face--
the charge is one which the State may not constitutionally prosecute.' "United
States v. Broce, 488US 563, 575, 109 S.Ct. 757, 102 L.Ed.2d 927 (quoting Menna,
supra, at 63, n.2 96 S.Ct. 241, 46 L.Ed.2d 19). Pp._____-____, 200, L.Ed.2d,
at 42-44.

In this case the Government and Petitioner agreed on a Plea Agreement.
As in (Class v. U.S.), the Government contends that by entering a guilty plea
and the Court (colloquy) explains the waiver conditions on which Petitioner
inherently relinquished his constitutional claims in similar circumstances such
as Petitioner as in (Class)¿

The Supreme Court's most recent ruling in (Class v. U.S.) puts to rest
claims made by the Court that Petitioner waived his rights to appeal per his
plea agreement and sentencing colloquy. This decision is a harmful plain error
and violation of Petitioner's Constitutional Rights.

It is safe to say now; that any claims to be made by the Gov't, that Petitioner
waived all his rights to appeal is legally inconsistent with the Supreme Court's
decision; and such a claim would be harmful error and cannot stand based
specifically on (but not limit to) (U.S. Class)(2018).

## IV. ARGUMENT(S)/GROUNDS

Petitioner's case at bar has been affected tremendously with new changes
in Higher and Lower Court rulings not available at the time of Petitioner's
sentence. Petitioner cites both 5th and 6th Amendment violations (herein),
when given misadvice led to harmful errors made by counsel and allowed the
Court to adopt an incorrect PSR, and such allowing Petitioner to be exposed
illegally to an incorrect Guideline Range and increased sentence unnecessarily.

Counsel's misadvice having Petitioner plead to two (2) counts of (Count 1)
and (Count 2) provision and attempted provision of material support to a foreign
terrorist organization; both carrying 15-year sentences pursuant to 18 USC
§2339B(A)(1); and supervised release of life pursuant to 3583(b) and (e).
Based on the charges applied, Petitioner faced a consecutive imprisonment
term of 30-years. The Court reduced the range downward to 22-years (a difference of 8-years).

5

Petitioner now cites new laws/grounds in favor of his case for relief, and had he not received misadvice, Petitioner was sentenced more harshly than he should have been.

GROUND I: Petitioner's sentence was procedurally and substantively unreasonable.

Recently, in Petitioner's same circuit (2nd), the Court ruled that a Court that failed to sufficiently articulate its reasoning for imposing the statutory maximum sentence; along with failing to provide sufficient opportunity to address the Court, must not be allowed; and shall be remanded back for resentencing. Petitioner cites:

United States v. Pugh, (No. 17-1889) (2nd Cir. August 29, 2019) Pugh was charged with attempting to provide material support to a foreign terrorist organization (count one) and obstruction of justice (count two). At trial, the government admitted into evidence, over Pugh's objection, a draft letter that Pugh had purportedly written to his wife which, inter alia, professed his allegiance to the Islamic State. Pugh was convicted by a jury on both counts and sentenced to 180 months of incarceration on count one, and 240 months of incarceration on count two, the sentences to run consecutively, for a total effective sentence of 420 months of incarceration, the maximum allowable sentence. Pugh argued on appeal, among other things, that his sentence was procedurally and substantively unreasonable because the court (1) failed to sufficiently articulate its reasoning for imposing the statutory maximum sentence, and (2) failed to provide Pugh sufficient opportunity to address the court. The Court agreed that further articulation of the sentence determination was required and vacated the sentence, and remanded for resentencing.

Petitioner's sentencing transcripts do not appropriately address any actual crime that Petitioner committed pertaining to attempting to provide material support to a foreign terrorist organization. In fact, when the Court inquired about Petitioner's involvement, the Govt. made false claims that someone told them Petitioner had some involvement on a publication for Al-Qaida; without providing any physical proof to such claims.

The Record clearly shows that Petitioner had signed onto a group; however, Petitioner's involvement led to nothing against the United States. Accordingly, other individuals arrested by the Government were released from custody when the Govt. finally determined these individuals also had little to no involvement with Al-Qaida.

Petitioner understands that he could have received what amounted to a a 30-year sentence, and received a lesser sentence of 22-years. However, based on no evidence provided by the Govt, Petitioner plead to a Count of Conspiracy (Count 1) that cannot stand based on what the Government claimed to be his involvement. Period! Petitioner will address the false claims of Relevant Conduct in Ground 2.

6

<u>GROUND II</u>: Petitioner qualifies for relief based on the change in language pursuant to the statute of conviction (new evidence not available at sentencing).

Of great legal consequence, in (U.S. v. Maupin) No. 19-6817; speaks to what Supreme Court makes clear, that a covered offense is determined by the Statute of Conviction, not "actual conduct" or "relevant conduct". This ruling the Govt. conceded to in the Fourth Circuit (See United States Motion to Remand, (E.C.F. No. 26).

Therefore, in this case; Petitioner was told of his supposed actions to the Court but nothing ever actually proven to have occurred. Accordingly, when such is the case, then the Courts have decided that relevant conduct not presented to a jury may not be used to enhance a defendant beyond the findings of a jury (See Rosales - Mireles v. U.S. 138 S.Ct. No. 187 (2018); Also, U.S. v. Antonucci, 667 Fed.Appx 121, 2016 US App.Lexis 11396).

Subsequently the Govt. enhancement being illegal would mean that Petitioner was sentenced on a calculation of applicable guideline range used that was in error. Such is the case, that on April 20, 2016 in (Molina - Martinez v. U.S.) 136, S.Ct. 1338, 1344 the Court determined that the district court had errored and should have sentenced the defendant to a lower guideline range because the Court found that a sentencing procedure which begins with an incorrectly calculated guideline range level is infected with "plain" error and requires resentencing even when there has been failure to object (by way of plea) to the Court's guideline calculation. (In further support also see....(Haskell v. Superintendent Green SCI, 2017 BL 266640 3rd Cir. No. 15-3427 (2017); Harris v. U.S. , No. 17-3341 (3rd Cir.)(2018).

The record will show that such relevant conduct cited by the Govt. and adopted by the Court should not have been used at Sentencing, now based on the admitted change in the language pertaining to a subsequent charges.

Even if the Govt. provided written statements of others never cross-examined by Defense Counsel; now also cannot be used against Petitioner at sentencing of suggested relevant (or actual) conduct. Accordingly to the change in the language in (Maupin), Petitioner was illegally sentenced harmfully on first impressions now pursuant to new caselaws, proves that should not have happened!

7

GROUND III:  Petitioner is deserving of relief due to the fact that the Court
(nor the Govt.) stated any material support or resources that an actual crime
was committed.

Petitioner was charged (in Count One) with Conspiracy to Provide Material
Support to a Terrorist Organization; however, neither the Govt. nor the Court
provided any factual support materials or resources beyond mere "hearsay speculation"
and "accusations."

Accordingly, the Court in the (1st Dist.) decided that, when a Court
gives (or allows) erroneous assertions not supported by real facts supported
by actual materials or resources during a trial (or at a sentencing; then
the Court violated a defendant's 5th Amendment Rights. (See recent case in
U.S. v. Wright; 1st Cir. - Aug. 28, 2019).

In further support; (similar to Petitioner's claims) in (U.S. v. Harris),
No. 18-1174 (8th Cir. Feb. 21, 2020); that the Court fails when it in the
materials suggested by the Govt. does not speak plainly, then the categorical
approach's (used by the Court) "demand for certainty"; and falling short of
such means the burden on the Govt. has not been met. (See Also, Mathis v.
U.S., 136 S.Ct. 2243 (2016)).

The record provides proof that much of the Govt's claims against Petitioner
was not consistent with other (states) laws pursuant to felony  offenses of
terroristic threatening claims where Petitioner should have been sentenced
to Category History VI; where essentially qualifying Petitioner as a Career
Offender or under an act of crime of violence of any sort had ever occurred
against the United States. Period! (See U.S. v. Myers, also 8th Cir.).

Petitioner claims clearly that he is innocent of Count One of his Indictment;
and thus could not have plead to this charge. What's more, failure by Defense
Counsel led to a violation of Petitioner's 5th Amendment substantive rights
when allowing the Court to adopt an incorrect PSR Report which findings were
not found to support the Court's determination at sentencing).

As of 2019; Courts have vastly agreed as found in (U.S. v. Sterling);
No. 18-2974 (8th Cir.)(Nov 1, 2019); similar to Petitioner's new claims, that
his PSR Report based on information contained in the PSR did not have sufficient
indicia of reliability to support its probable accuracy. The record is clear
that Petitioner's indictment had no material support for such a charge to
be levied.

In conclusion, Petitioner's case is in-line with Sterling where the Court stated, "it is the Govt's burden to prove the quantity of drugs a person is responsible for by a preponderance of the evidence...and the Govt's sole argument that the amount stipulated (by co-defendants) by Informants claiming relevant conduct, without testimony from those informants at sentencing hearings to establish quantity and forseeability, cannot stand and must be viewed as mere speculation by the govt. The Court reversed and remanded (Sterling's) case for resentencing; as should this Court due to the fact that like Sterling, this court adopted a PSR and Plea Agreement not supported by a drug amount given to Petitioner on mere speculation. (See Attachment #1 - the Sterling decision).

<u>GROUND IV.</u>  Petitioner now qualifies to be sentenced in light of new laws affecting the correct sentencing Guideline Range and national sentencing disparities of others of similar conduct and correct charges.


It must not be understated, when imposing a Federal Sentence (or Resentence) disparities; District courts must also consider "the need to avoid unwarranted sentence disparities among defendants who have been found guilty of similar conduct." (18 USC §3553(A)(6). See (<u>Kimbrough v. U.S.</u>) 552 US 85, 108 (2007). Additionally; this statute requires a sentencing court to consider any re-sentencing of co-defendants by also reviewing nationwide sentencing disparities under procedural reasonableness. (See, <u>Titchell v. U.S.</u>), 261 F.3d 348, 2001 Appx. Lexis 18480 (3rd Cir. 2001).

Of great importance; a review of the discrepancies that arose (at sentencing and/or resentencing) when the sentencing courts did not look at the actual participants in the crime in determining the minor role reduction, regardless if co-defendants not having similar records, applies to Petitioner in comparison to others, where in summary is as such:

Some courts "assessed" a defendant against a hypothetical average participant. <u>See</u>, e.g. <u>US v. Teeter</u>, 257 F.3d 14, 30-31 (1st Cir. 2001)(writing that a defendant must demonstrate that he is both less culpable than most other participants in his crime and also less culpable than the majority of those within the universe of persons participating in similar crimes). In the Ninth and Seventh Circuits, however, the "relevant comparison" was between the Defendant and other actual participants in the same crime. <u>See</u> U.S.S.G.App.C.Amend.794: <u>U.S. v. Rojas-Millan</u>, 234 F.3d 464. 473 (9th Cir); US v. Davis 938 F.2d 744, 747 (7th 1991).

9

Finally, at best, defense counsel would have argued similar conduct of other co-defendants by law needing to avoid sentencing disparities; and at best, counsel should have argued and presented a nationwide approach to address the ridiculous sentence imposed on Petitioner of twenty (20) years.

What really establishes Petitioner's counsel's performance as falling below an objective professional standard of reasonableness is counsel's failure to address correctly both sentencing disparity matters. Every circuit court to address the subject of sentencing disparity has concluded that to "base a defendant's sentence on a co-conspirator's sentence is a short-sighted approach, and that the guideline's goal is national sentencing uniformity across the country."

See United States v. Joyner, 924 F.3d 454, 460 (2d Cir. 1991); United States v. Parker, 462 F.3d 273, 277 (3d Cir. 2006); United States v. Whithers, 100 F.3d 1142, 1149 (4th Cir. 1996); United States v. Simmons, 501 F.3d 620, 623 (6th Cir. 2007); United States v. Saeleurn, 504 F.3d 1175, 1181 (9th Cir. 2007); and United States v. Williams, 980 F.3d 1463, 1467 (DC Cir. 1992). All these circuit courts clarify that the goal of the US Sentencing Commission was to eliminate unwarranted sentencing disparities nationwide.

In summation, Petitioner's counsel could have easily consulted the national statistics concerning defendants who were similarly situated as Petitioner. These statistics are readily available on the U.S. Sentencing Commission Website. As the record demonstrates, however, Petitioner's counsel made no attempt whatsoever to investigate what the national average sentence defendants have been receiving for the past five years for the Petitioner's crime. If properly investigated and further advocated at sentencing, Petitioner's counsel could have very well secured a substantially lower sentence for the Petitioner, in conformity with the national average.


## V. CONCLUSION

Petitioner's §2255(h)(2) petition is to correct the sentence imposed wrongfully due to massive and repeated violations of ineffective assistance of counsel. Petitioner never claimed innocence of his actions throughout any and all procedural processes: and in fact sought to cooperate to assist the Govt.'s efforts substantially, yet was prejudiced immeasurably in the negative at no fault of his own. Petitioner's Habeas Corpus filing makes clear that had his legal counsel not given improper (yet curable) advice; along with

10

incorrectly vitally important documentation and alike, the outcome to Petitioner's sentence would have been much different and a downward departure and under .3553(E) must apply when weighing all the facts against the debacle of a shameless attempt by counsel, violated Petitioner's Fifth and Sixth Amendment rights.

Petitioner was given an unproven, mis-charged, non-covered offense violation based on what seems to be relevant "supposed" conduct; that is now considered illegal when <u>not</u> presented to a jury of his peers. Pursuant to new laws (evidence) cited throughout this motion; Petitioner was illegally sentenced. (See U.S. v. Maupin), No. 19-6817, concerning actual or relevant conduct issues.

Based upon the foregoing undisputed factual and legal issues, Petitioner contends that, cumulatively speaking, there can be no doubt that he was denied a fair sentence in violation of the Fifth and Sixth Amendment's mandate that a defendant is entitled to the effective assistance of counsel. Moreover, both U.S. Supreme Court authorities in <u>Strickland v. Washington</u> and <u>Molina-Martinez</u> have been violated because of counsel's deficient performance, causing counsel finally to be removed as defense counsel by the Court as well as the "plain harmful errors" committed by the Court at sentencing.

Under <u>Molina-Martinez</u>, Petitioner is not required to prove any additional facts or provide additional evidence to show that the sentencing errors--where the district court applied the incorrect Guidelines--affected his substantial rights.

Similarly, where defense counsel failed to review and discuss the PSR with Petitioner; while exposing him to enhanced range on misadvice of a plea; there is no excuse for Petitioner to suffer injustice. Therefore, the court retains the power to set aside the restitution order. Restitution ordered by the Court has to relate to the offense charged, and be within the statutory powers of the court, and restitution that is outside the statutory powers of the court will be set aside on appeal as "plain" error even if the amount of restitution was stipulated to at sentencing. See, <u>United States v. Behrman</u>, 235 F.3d 1049, 1052-1053 (7th Cir. 2000). An illegal sentence is an illegal sentence!

## REASONS FOR GRANTING THE PETITION

There exists multiple Supreme Court (case precedent) decisions that address specifically in the Second Circuit, issues similar to Petitioner's case at bar that was overlooked by the District Court. Petitioner provides key claims of Constitutional (5th and 6th Amendment), factual and legal matters that the District Court cannot/would not consider due to any faulty claims that Petitioner waived his rights to appeal based on a colloquy at sentencing would be a plain harmful error if allowed by the Court.

Petitioner seeks to have his claims heard before the Court on new claims raised (presented) previously because issues raised were not available at the time of sentencing to prevent a complete miscarriage of Justice that would result from allowing an unconstitutional sentence to stand; changes in the law (and statutes) that directly effect the Guideline Range of Petitioner's sentence or incorrectly created resulting in an improper classification of sentence; and newly discovered evidence that the District Court errored (harmfully) by ruling on Petitioner's first 2255 petition when not uncovering that Petitioner still had legal representation unbeknownst to Petitioner or the District Court. Accordingly, Petitioner claims his innocence of claims and charges never proven; as well as, due to new laws in support of Petitioner's Motion for Relief.

## VI.   PRAYER FOR RELIEF

The Petitioner, Lawal Babafemi, pro se, prays that this Honorable Court GRANT RELIEF on this Petition for Habeas Relief pursuant to 28 USC (Second and Successive) Section 2255(h)(2) to include:

1) Vacation of both his conviction and sentence; and

2) Resentencing to time-served (based on new case laws that, at worst, Petitioner could have only plead to one of the counts of 15-years pursuant to 18 USC §2339b(A)(1); and utilizing the 8-year downward departure the Court previously applied, would be a correct sentence of 7-years.  NOTE: As of this filing, Petitioner has served 8 years which now puts him 1-year past the correct time the Court could (should) have allowed or to which Petitioner could (should) have plead to.

3) Reduction of Supervised Release to no more than three (3) years

12

4) reduction of restitution and for any other relief deemed necessary and appropriate in the Interest of Justice.

Dated: _March 26_ , 2020

Respectfully Submitted,

_[signature]_

Lawal Babafemi, pro se
Fed. Reg. #82814-053
LSCI Allenwood-LOW
PO Box 1000
White Deer PA 17887.

13

## AFFIDAVIT

I Hereby Certify that the foregoing facts are true and correct to the best of my knowledge and belief under penalty of perjury as per 28 USC Section 1746.

_____
Lawal Babafemi, Pro Se

## CERTIFICATE OF SERVICE

I Hereby Certify that a copy of the foregoing Petition/Motion was mailed on this _27th_ day of _March_, 2020, by First Class Mail, postage prepaid to:

Office of the US Attorney
AUSA Zainab Ahmad/EDNY

271 Cadman Plaza East

Brooklyn NY 11201

_____
Lawal Babafemi  pro se

ATTACHMENTS

FEDERAL PRISON NEWSLETTER FOR NOVEMBER 15, 2019

United States v. Sterling, No. 18-2974 (8th Cir. Nov. 1, 2019)

Sterling pled guilty to two counts of cocaine distribution and one count of conspiracy to distribute 28 grams or more of cocaine, in violation of 21 U.S.C. 841(a)(1), (b)(1)(B), (b)(1)(C), and 846.

The PSR calculated quantities of powdered cocaine and cocaine base involved in controlled buys, and the quantities of drugs and cash seized during a warrant search of a co-defendant's residence. The PSR found Sterling accountable for 168 kilograms of marijuana equivalent based on the controlled buys and seizure, which resulted in a Base Offense Level ("BOL") of 24 (U.S.S.G. 2D1.1(c)(8) calls for a BOL of 24 for 100 to 400 kilograms of marijuana equivalent). However, the PSR noted that Sterling's two co-defendants' plea agreements contained stipulations to being accountable for distributing at least 400 but less than 700 kilograms of marijuana equivalent. Sterling objected to this being included in the PSR, as it raised his BOL from 24 to 26.

At sentencing, the government produced no further evidence regarding the drug quantity. Instead, it called three witnesses who testified to an unrelated offense that occurred during the conspiracy period to underscore Sterling's criminal history. At the end of the hearing, the district court overruled Sterling's objection to the BOL of 26 based on "what was presented in the [PSR]."

On appeal before the Eighth Circuit, Sterling argued that the district court's Guidelines calculations were clearly erroneous. The Eighth Circuit agreed.

The court noted that it is the government's burden to prove the quantity of drugs for which Sterling is responsible for by a preponderance of the evidence. Further, since Sterling was charged in a conspiracy, he was liable for acts of his co-defendants that were in furtherance of the conspiracy and reasonably foreseeable. U.S.S.G. 1B1.3(a)(1)(B). In addition, the court discussed how "[w]hen the amount of narcotics seized by the government does not reflect the scale of the drug trafficking offense 'the court shall approximate the quantity of the controlled substance' and may consider, for example, 'similar transactions in controlled substances by the defendant.' U.S.S.G. 2D1.1, comment. (n.5)."

In Sterling's case, the Eighth Circuit held, "[m]any defendants have appealed estimated drug quantity findings; few have cleared the high bar of clear error review." But here, the PSR combined with the plea agreement conclusively established only a BOL of 24 based on the 168 kilograms of marijuana equivalent. As the court found, the "PSR made no attempt to quantify the 'multiple individually wrapped baggies' the undercover detective observed during five controlled buys, and the detective did not testify.

The government's sole argument on appeal is that the amount Sterling's co-defendants stipulated to was reasonable foreseeable to Sterling as relevant conduct. The Eighth Circuit found that without the co-defendants' testimony at the sentencing hearing to establish quantity and foreseeability, the government's argument was mere speculation.

Because the information contained in the PSR did not have "sufficient indicia of reliability to support its probable accuracy," U.S.S.G. 6A1.3(a), the Eighth Circuit held that the district court clearly erred in relying on the Probation Officer's unsupported opinion. The court reversed and remanded the case for resentencing.

Attachment #1

# ADEYINKA M. AKINSULURE-SMITH, Ph.D.
275 West 96th Street, Suite 8D
New York, New York 10025
(917) 332-8904
NYS License # 013405

## PSYCHOLOGICAL EVALUATION

THIS INFORMATION IS PRIVILEGED AND CONFIDENTIAL

**Name**: Lawal Olaniyi Babafemi
**Date of Birth**: June 4, 1980
**Place of Birth**: Ibadan, Oyo State, Nigeria
**Gender**: Male
**Age**: 34 years
**Date(s) of Examination**: June 23, July 10, July 17, July 24, & September 5, 2014
**Date of Report**: September 23, 2014

## Qualifications of Evaluating Clinician:

My qualifications to render a psychological opinion in this case can be found in the attached curriculum vitae. To summarize, I am a counseling psychologist, licensed to practice in the State of New York (NYS License # 013405). I received my Doctorate of Philosophy in Counseling Psychology from Columbia University in 1997. My clinical, advocacy, research and teaching experiences have focused on the areas of severe psychopathology, trauma, and refugee/immigrant mental health.

Since 1999, I have been on staff at the Bellevue/NYU Program for Survivors of Torture (PSOT) in New York City as a Senior Supervising Psychologist. PSOT continues as the leading torture survivor and refugee trauma treatment and resource center in New York City. The Program is the first and only comprehensive treatment program for survivors of torture and refugee trauma in the New York metropolitan area. This unique program provides interdisciplinary care to victims of torture and other human rights abuses, traumatized refugees, and to their families. As a tri-lingual clinician (English, French, and Krio), my responsibilities include providing intensive treatment for refugees and traumatized asylum seekers who have a history of torture or war-related trauma, sexual violence, and other human rights abuses. This includes conducting forensic evaluations in support of asylum proceedings, providing consultation and training to healthcare, legal, and human rights agencies in the matters of interviewing and managing various posttraumatic psychological dysfunctions in trauma victims. I am also an Assistant Clinical Professor in the Department of Psychiatry at the New York University School of Medicine and, in addition to my clinical

Case 2:14-cr-7   Document 2   05/08/2020, 28925 q   Page 23 of 62

**Name:** Babafemi, Lawal O.                                                                                 2
**DOB:** 06/04/1980

duties, I supervise and train psychology interns and externs and psychiatric residents in the diagnosis and treatment of torture and war trauma survivors.

I am a recipient of a 2014-2015 Fulbright Africa Regional Research Program Award.

## Conditions of Evaluation:

Prior to this psychological evaluation, Mr. Babafemi agreed to the condition that I approach the psychological evaluation with no particular result in mind and that I would exercise independent professional judgment in all aspects of this evaluation. When we first met on June 23, 2014 and during our subsequent meetings, I informed Mr. Babafemi of the limits of confidentiality in a psychological evaluation. In this regard, I advised him that I would share my findings with his attorney and submit a written report which could be used in court at the discretion of his attorney. Mr. Babafemi understood the limits of confidentiality and consented.

## Sources of Information:

The following report is based on 22 hours of detailed inquiry into Mr. Babafemi's life history and background, along with a detailed mental status exam, and four self-report psychological measures.

## Presenting Problem:

Mr. Lawal Olaniyi Babafemi is a Nigerian male, who reports suffering through many traumatic events in his country of origin, while in the custody of the Nigerian Police in Abeokuta, Ogun State and later on while detained in the headquarters of State Security Service of Nigeria in Abuja, the Federal Capital Territory, Nigeria. Mr. Babafemi described extensive physical and psychological torture, including repeated beatings (with wire cables), electric shocks (to his neck), verbal abuse, verbal threats (including death threats to him and threats to his immediate family), forced postures (while held in iron chains with a black hood placed over his head), and sensory deprivation.

## Demographic Information:

Mr. Babafemi is a 34-year-old Yoruba, Muslim, married Nigerian male. Mr. Babafemi married Ms. Lawal Adenike in 2007; the couple have two young children, a 5-year-old son, Abdallah, and a 3-year-old daughter, Fareeda. Mr Babafemi was extradited to the United States (US) on September 27, 2013. He has resided in the Metropolitan Correctional Center in New York, New York since his arrival.

**Education/Employment:**

By his own admission, Mr. Babafemi was "a very poor student." Due to his family's limited resources, he struggled to complete elementary and secondary school repeating several grades along the way. Eventually with the emotional, educational and financial support of an older brother, Mr. Babafemi was able to complete secondary school and go on to attend Lagos State University. Unfortunately, due to several problems at the University (e.g., strikes by faculty and student gang misconduct) which forced students to have to repeat the academic year, Mr. Babafemi became discouraged and dropped out of university. In an effort to support himself and his family, Mr. Babafemi unsuccessfully tried several business ventures (including fish farming and transportation).

**Mental Status and Clinical Impressions:**

Our sessions were conducted in a visiting room of the Metropolitan Corrections Center, New York, New York during June, July and September of 2014 over a total of 22 hours. Mr. Babafemi arrived to each session wearing his brown detainee jump suit and sneakers. He presented as a well-groomed man who wore a tidy goatee and had a dark spot in the middle of his forehead. He informed me that he speaks English and Yoruba. English was the language of communication throughout the duration of our session.

Initially, Mr. Babafemi appeared guarded, and pulled on his left ear nervously. However, as our sessions progressed and he became comfortable, he offered spontaneous, detailed information. Early on, Mr. Babafemi informed this clinician, "My story is a very long story, so bear with me. I want you to get it straight." It was not until our second session after this clinician conveyed full permission to Mr. Babafemi from his attorney to talk to me, that he really opened up. Despite this initial hesitation, Mr. Babafemi carefully reflected on all questions asked of him and provided detailed information. He made good eye contact, smiled gently and was very polite, often pausing to make sure that his responses were fully understood, "Do you get me?" Mr. Babafemi did become visibly upset when discussing his torture experiences, particularly when describing being told that his mother, wife and young children had been imprisoned because of his actions.

Once trust was established and he felt comfortable, Mr. Babafemi spoke fluidly and without hesitation and his speech was normal in rhythm and rate. His affect (emotional presentation) was calm. He spoke politely and deferentially to this clinician. Mr. Babafemi's judgment and insight were good. He was oriented to person, place, time, and situation. He demonstrated no apparent difficulty understanding questions asked of him. His thought processes and content were clear, coherent, logical, and goal directed. No psychotic processes were noted. Mr. Babafemi's overall remote and recent memory was intact and he appeared to be within the average range of intellectual functioning. Mr. Babafemi adamantly denied all aggressive impulses including any

Name: Babafemi, Lawal O.                                                    4
DOB: 06/04/1980

suicidal or homicidal ideation. He also denied any substance use or abuse and any
previous psychiatric history.

**Trauma History**

According to Mr. Babafemi during the Holy Month of Ramadan, early on the
morning of August 19, 2011, four men in black uniforms carrying "heavy guns" burst into
his compound, beat him up and dragged from his home in Ijebu-Ode, Ogun State into a
waiting car. Initially Mr. Babafemi thought he had been kidnapped, it was not until they
arrived at the State Capital of Abeokuta, that he realized he was in the custody of the
Nigerian Authorities. He was taken straight to the Command Office of the State Security
Service (SSS) branch in Abeokuta, Ogun State. Mr. Babafemi recalled that as soon as
he was taken out of the vehicle, he was handcuffed and forced to sit on the ground.
Later he was held in a separate room where his captors informed him, "We heard you
went to Pakistan." Eventually, Mr. Babafemi was taken to a larger room where his
photograph was taken and he was told to write a statement. Mr. Babafemi reported that
he was so shocked by the events and the accusations that he began to cry. He was
later interrogated for approximately three hours. Afterwards, he was thrown into a small,
filthy holding cell filled with mosquitos. At that time, Mr. Babafemi was informed that his
wife would also be arrested. The next morning, when he was given a djellaba to wear
(he had been wearing his night singlet and shorts the morning of his arrest the previous
day) and he saw a bag with some of his possessions, Mr. Babafemi realized that the
SSS had gone back to his home and searched it.

Mr. Babafemi recalled that the next morning the armed guards drove him to the
SSS Headquarters in Abuja, the Federal Capital Territory. During the 11-12 hour drive,
he was kept in handcuffs. Upon his arrival at the SSS Headquarters that night, Mr.
Babafemi was given a fresh set of handcuffs and his legs were now also chained with
iron cuffs. He was then forced to sit on the ground and wait. Eventually, he was taken
into the "Interrogators Office" (the office of the "Chairman of SSS," who was also the
"Chairman of Interrogations"). According to Mr. Babafemi, in the beginning, he was
interrogated about his friends, contacts, and his recent travels. Later on, he was given
forms to complete and told to write a statement. Shortly after, "the Chairman" (the man
who later on would direct much of his torture) came to Mr. Babafemi's cell to interrogate
and threaten him. Mr. Babafemi was questioned until about midnight and then taken to
a "segregation cell" where his handcuffs and leg chains were removed and left there.
For the first 28 days, Mr. Babafemi was interrogated twice a day for several hours.
Whenever he was moved from the "Segregation Cell" to the "Interrogation Office" (or
vice versa), Mr. Babafemi was placed in handcuffs and leg chains (the chains around
his ankles were so tight that they began to peel the skin, creating painful sores. Later he
would tear material from his clothes to wrap around his ankles to protect the skin) and a
black hood (made out of "rough khaki material" with a drawstring to pull it closed around
his neck) was placed over his head. The first time the hood was placed over his head;
Mr. Babafemi thought he was going to be executed. During his interrogation sessions,
the hood was only removed when he was asked to write something or when he was

returned in his isolation cell and later when he was with other prisoners in the underground cell.

It was not until approximately the third day of his captivity that the "real" torture started. Mr. Babafemi recalled that he was tortured primarily by three men (the Chairman and two of his "caseworkers"). From then on, Mr. Babafemi described being beaten repeatedly with wire cables (three cables woven together), kicked, slapped, threatened, and receiving relentless verbal abuse. His torturers also gave him electric shock to various parts of his anatomy, but seemed to enjoy applying electric shock most of all to his neck. The first time he experienced both the electric shock and beating together, the pain was such that Mr. Babafemi passed out. He recalled, "My heart was beating like it wanted to burst out of my chest..I'd never experienced something like that in my life." He woke up with the foot of the Chairman kicking him in the face and calling him "coward!" The beatings and the electric shocks continued.

According to Mr. Babafemi, over the next month, he was tortured twice a day, every day. Mr. Babafemi recalled that no matter what his responses were to the questions, the torture continued. Often during the more severe beatings, paper was stuffed into his mouth to muffle his cries of pain. Often the paper was left in his mouth, even after he was returned to his cell. To make matter worse, Mr. Babafemi was informed that his mother, wife and children had been arrested and imprisoned. His captors gave such intimate details about his family members, that Mr. Babafemi believed them.

Approximately 28 days later, Mr. Babfemi was moved from his isolation cell, to an underground location (in the same building) and placed in a small cell with approximately 17-25 other prisoners. Although he was no longer in isolation, Mr. Babafemi realized that he was now placed with Boko Haram suspects. For Mr. Babafemi, this placement created further distress. These men were all from Northern Nigeria and spoke neither Yoruba nor English, so he could not communicate with them. His torture (beatings and electric shock) continued in a cell next door and he was able to hear the screams and cries of other prisoners as they were being tortured. It was during this time, that Mr. Babafemi heard one of his interrogators calling for his friend, Luqman to be brought in. Mr. Babafemi could hear his friend crying. Later on, Mr. Babafemi learned from Luqman that his torturers had shown him pictures of Mr. Babafemi with his injuries, in an effort to intimidate him.

After approximately a week of being held in the underground cell, and not admitting to anything, Mr. Babafemi was abruptly moved. This time, he was hooded, handcuffed, his legs placed in iron chains, with several chains around his body, and then he was shackled to the iron bars of an unused office in the hallway. Mr. Babafemi described being "chained all over my body." He was bound by his chains so tightly he could not sit up and he could only lie down awkwardly on his back, creating intense physical discomfort (because of the chains, his arms and feet were suspended in the air). Mr. Babafemi was kept shackled to the iron bars with the hood over his head for nearly an entire month. He was only removed from the chains when was fed or the

times when he was allowed to go to the bathroom. Mr. Babafemi was not allowed to wash his body and was kept in the same soiled clothes. When he needed to urinate, the guards gave him a bottle to use. On some occasions, he was ushered into a bathroom, where depending on the whims of guard one of his chains might be removed to allow him to move with minimal discomfort.

During this time, Mr. Babafemi also struggled with extensive sleep deprivation. He could not sleep (in large part because of the way he was shackled). Whenever he heard the doctor come by, Mr. Babafemi would call out to him, pleading for a sleep aid. Initially, the doctor gave him something, but the medication did not help and Mr. Babafemi asked for more. However, the doctor told him, "The problem is within you, I can't give you any more. In fact I am stopping the medicine." In addition to the sleep deprivation, Mr. Babafemi also experienced sensory deprivation. Cold air from an air conditioner in the unused office was blasted at him. He shivered constantly from the cold. At one point the Chairman had one of the nurses give him an injection to stop the shivering. Mr. Babafemi firmly believes that his current Hypertensive diagnosis is due to the sleep deprivation and the extreme physical and emotional distress that he encountered during that period. Mr. Babafemi described that month as "the most difficult time I have ever spent since I have been in incarceration."

At various points during that month, the "case officers" (the authorities) informed Mr. Babafemi that his mother, wife and young children had been arrested and detained (later he learned that this was a lie and all part of the psychological torture). Often his torturers would say things like "I referred your greetings to your mum" or "When I went to your wife, I delivered your greetings to her"). The thought of his elderly mother, his wife and their young children being held under similar circumstances was too much for him to bear. On many occasions, Mr. Babafemi recalled, "I was thinking I was going mad, it was too difficult for me, I trembled from head to toe all the time…"

After a month of being shackled in this manner, the relentless torture sessions (being kicked in the face and chests, relentless insults, electric prods placed on his neck and repeated shocks, being hooded, interrogations that lasted for hours, along with numerous death threats), his fears for his family wore Mr. Babafemi down. Ultimately, his fears for the wellbeing of his family compounded by a warning from the Chairman, "You refuse to cooperate, I will force you to cooperate…by all means…I give you three days…" overwhelmed Mr. Babafemi, and he told his interrogators "anything you want me to say, I'll agree with it." After he made the next set of statements, the torture stopped completely. A few days later, he was informed by his captors that his mother had been released from prison, and then told, "Congratulations, your wife has been freed with your baby, she's gone back home." About a week later, he was released from his chains and hood and taken back to the underground cell with the other men. Mr. Babafemi would be held in this underground cell for another 10 months.

## Current Symptoms and Diagnostic Profile

Mr. Babafemi is currently struggling with symptoms consistent with a diagnosis of Posttraumatic Stress Disorder (PTSD) and Major Depressive Disorder (MDD), conditions most likely associated with the traumatic events he reports experiencing while incarcerated in his country. During this psychological evaluation, he manifested and articulated classic symptoms of PTSD. He described intrusive PTSD symptoms, including distressing recollections of his physical and psychological torture, along with frequent trauma-related nightmares. Mr. Babafemi reported flashback episodes and intense psychological distress when exposed to internal and external cues that remind him of these draumatic events. He also demonstrated avoidance symptoms such as trying to avoid thoughts, feelings, and conversations associated with the trauma, emotional numbing, and feelings of detachment and isolation from others. Furthermore, he experiences the increased arousal and related physical sensations that often correlate with PTSD, such as difficulty breathing, increased heart rate and nervousness.

In terms of depressive symptoms, Mr. Babafemi exhibited typical symptoms of this condition. He continues to report depressed mood, feelings of loneliness, loss of interest in daily activities, decreased appetite and insomnia. At one point during our session, we had to pause so Mr. Babafemi could go to the bathroom to recompose himself. He stated, "I don't like to remember all this, I feel depressed, I don't feel comfortable, the memory is flashing back, I don't want to remember it, my heart is beating..."

At the end of the clinical interview, four psychological instruments, the Posttraumatic Stress Diagnostic Scale[1] (PDS), the Harvard Trauma Questionnaire[2] (HTQ), the Patient Health Questionnaire[3] (PHQ-9) and the Beck Depression Inventory-II[4] (BDI-II) were administered to Mr. Babafemi. The PDS and the HTQ are both measures of Posttraumatic Stress Disorder and the PHQ-9 and the BDI-II are measures of depressive symptoms. All of these instruments have been used widely in research and clinical settings, with a variety of populations and have been shown to have strong psychometric properties.

For the purposes of this assessment, these instruments offered collateral, objective support to the findings of the clinical interview. They are especially valuable for evaluating symptoms in trauma victims. Mr. Babafemi willingly agreed to have the psychological instruments administered to him. On the PDS, Mr. Babafemi consistently endorsed items in a manner that indicated difficulty in areas (i.e., symptoms of re-experiencing, hyperarousal, avoidance, and avoidance) relevant to Posttraumatic Stress

[1] McCarthy, S. (2008). Post-traumatic diagnostic scale (PDS). *Occupational Medicine, 58,* 379.
[2] Kroenke K, Spitzer R, Williams W. (2001) The PHQ-9: Validity of a brief depression severity measure. *Journal of General Internal Medicine, 16(9),* 606-616.
[3] *Oruc, L., Kapetanovic, A., Pojskic, N.,* Miley, K., Forstbauer, S., Mollica, R., & Henderson, D.C. (2008). Screening for PTSD and depression in Bosnia and Herzegovina: Validating the Harvard Trauma Questionnaire and the Hopkins Symptom Checklist. *International Journal of Culture and Mental Health,* 1(2), 105-116.
[4] Beck, A.T., Steer, R.A. & Brown, G.K. (1996). *Manual for the Beck Depression Inventory-II.* San Antonio, TX: Psychological Corporation.

Name: Babafemi, Lawal O.                                                    8
DOB: 06/04/1980

Disorder. Concordant with the DSM-5, he satisfied all criteria to be considered PTSD positive. On this measure, he endorsed 11 out of the 17 PTSD related items and received a symptom severity rating of "Moderate to Severe." Mr. Babafemi scored 2.63 which is above the clinical cut-off of 2.50 on the HTQ, and is indicative of significant post traumatic symptomatology. He endorsed items related to feeling distressed quite a bit by reminders of distressing events and having sudden emotional and physical reactions when reminded of the events. He reported being extremely upset by feeling jumpy or easily startled and feeling irritable at times. He described feeling quite a bit distressed by feeling as though the event is happening again, feeling detached or withdrawn from people, and feeling on guard.

On the PHQ-9, Mr. Babafemi earned an 11, indicating moderate depression. He endorsed having little interest or pleasure in doing things or feeling down, depressed, or hopeless "several days over the past 2 weeks." On this measure, he reported having little energy and feeling bad about himself nearly every day. Mr. Babafemi's score on the BDI-II where he earned a total score of 24 out of a possible 63 echoed this finding, placing him in the "Moderate" depression range. With the deep feelings of depression and sadness, along with tearfulness, insomnia, and loss of pleasure that he reported, Mr. Babafemi clearly suffers from MDD.

Mr. Babafemi's scores on all four measures along with the findings in the clinical interview are consistent with the DSM-5 diagnoses for Posttraumatic Stress Disorder, Chronic and Major Depressive Disorder, Initial Onset, Moderate.

**Medical and Medication History:**

Mr. Babafemi reports his childhood health and development was normal, but stated that he developed severe headaches, insomnia, along with Hypertension during the torture he experienced while incarcerated in Nigeria. Mr. Babafemi reports that at the time he was placed on medication to alleviate his insomnia, but that the medication did not help him. He currently takes Hydrochlorothiazide, 15mg/day and Lisipril 5mg/day to manage his Hypertension. Since his incarceration in the US, he has been told that he has problems with his kidneys. Approximately 3 months ago, Mr. Babafemi reports that he was taken to "an outside hospital in Brooklyn," for tests on his kidneys. To date he has not been given the results of any testing that was conducted.

**Summary Assessment:**

Mr. Lawal Babafemi is a 34-year-old Nigerian male who reports extensive torture during his detention by Nigerian Authorities. He was extradited to the US in September 2013 and has been incarcerated since his arrival. He was oriented x4 throughout our sessions and displayed a range of affect. Mr. Babafemi currently meets diagnostic criterion for Posttraumatic Stress Disorder, Chronic, and Major Depressive Disorder, according to the *Diagnostic and Statistical Manual of Mental Health Disorders, Fifth Edition (DSM-5)*. Furthermore, those past stressors continue to impact his current daily psychosocial functioning in significant ways.

In my professional opinion, Mr. Babafemi's traumatic experiences during his imprisonment and interrogation by the State Security Service of Nigeria meet criteria for torture as outlined by the United Nations Convention Against Torture. During the time I met with Mr. Babafemi his presentation and narrative were consistent. I found him to be believable. Mr. Babafemi's account of torture while in the custody of the Nigerian authorities is consistent with my knowledge of other individuals held under similar circumstances.

**Diagnostic Impression:**

309.81  Posttraumatic Stress Disorder, Chronic
296.22  Major Depressive Disorder, Initial onset, Moderate
V62,5   Imprisonment or other Incarceration
V62.89  Victim of Torture
401.9   Hypertension



Adeyinka M. Akinsulure-Smith, Ph.D.
Psychologist, New York State License #013405

# ADEYINKA M. AKINSULURE-SMITH, PH.D.

The Department of Psychology
The City College of New York, CUNY
160 Convent Avenue, NAC 7/120
New York, NY 10031
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
aakinsulure-smith@ccny.cuny.edu

## ACADEMIC DEGREES

| | | |
|---|---|---|
| 1997 | Ph.D. | Counseling Psychology, Columbia University |
| 1995 | M.Phil. | Counseling Psychology, Columbia University |
| 1992 | Ed.M. | Psychological Counseling, Teachers College, Columbia University |
| 1991 | M.A. | Psychological Counseling, Teachers College, Columbia University |
| 1989 | B.A. | Honors Psychology, University of Western Ontario |

## LICENSURE AND CERTIFICATIONS

| | |
|---|---|
| 2000 | Eye Movement Desensitization and Reprocessing Level II |
| 1999 | Eye Movement Desensitization and Reprocessing Level I |
| 1999 | Registered Play Therapist – Supervisor, International Association for Play Therapy, Inc. |
| 1998 | Psychologist, Licensed in the State of New York |

## HONORS AND AWARDS

| | |
|---|---|
| 2014-2015 | Fulbright Scholar, Africa Regional Research Program Award |
| 2008-2012 | Fellow, Minority Research in HIV Intervention: Skills for the Community (RHISC), National Institute of Mental Health (NIMH, R25MH083602) |
| 2010 | Community-Based Research Fellow, Colin L. Powell Center for Leadership and Service, the City College on New York |
| 2005 | Early Career Award, Teachers College, Columbia University |
| 2003 | Union Square Award for Community Organizing, Fund for the City of New York |
| 1989 | Honors degree in Psychology, University of Western Ontario |

## ACADEMIC APPOINTMENTS

| | |
|---|---|
| 8/06-Present | **DEPARTMENT OF PSYCHOLOGY**, City College of the City of New York, New York, New York<br>**Associate Professor of Psychology**<br>*Teach and develop curriculum for undergraduate and graduate psychology courses:<br>    Adolescent & Youth (PSY 25600)<br>    Women & Violence (PSY 31823E)<br>    Contemporary Issues in Human Rights and Social Justice (PSY 41000)<br>    Theories and Techniques of Counseling (PSY B9732)<br>    Multicultural Issues in Counseling (PSY B 9760)<br>*Provide student mentorship and advisement<br>*Conduct research related to human rights abuses and refugee trauma<br>*Submit manuscripts for publication in these areas<br>*Write grant proposals |

Adeyinka M. Akinsulure-Smith
Page 2

| | |
|---|---|
| 7/09-Present | **DEPARTMENT OF PSYCHIATRY,** New York School, Langone Medical Center, New York, New York<br>**Assistant Professor of Psychology, part-time**<br>*Provide weekly individual and group supervision to graduate students who conducted psychotherapy to a diverse population at a university based medical and mental health clinic |
| 9/98-5/00 | **DEPARTMENT OF COUNSELING AND CLINICAL PSYCHOLOGY**<br>Teachers College, Columbia University, New York, New York<br>**Adjunct Assistant Professor of Psychology and Education:**<br>Course: Racial-Cultural Counseling Laboratory, CCPJ5165<br>*Lectured on multicultural theory and clinical applications to masters and doctoral students<br>*Taught masters and doctoral students multicultural awareness and competence using a didactic, experiential and skill-building model<br>*Assessed students multicultural development through their written and experiential contributions<br>*Supervise teaching associates using an individual and small group format |
| 9/97-12/98 | **DEPARTMENT OF COUNSELING AND CLINICAL PSYCHOLOGY**<br>Teachers College, Columbia University, New York, New York<br>**Adjunct Assistant Professor of Psychology and Education, Clinical Supervisor:**<br>Course: Practicum in Individual Counseling, TJ 5360<br>*Provided weekly individual and group supervision to masters students who conducted psychotherapy and vocational counseling to a diverse population at a university based mental health clinic |

## CLINICAL EXPERIENCE

| | |
|---|---|
| 10/99-Present | **BELLEVUE/NYU PROGRAM FOR SURVIVORS OF TORTURE,** Bellevue Hospital Center, New York, New York<br>**Trilingual Psychologist** (English, French and Krio):<br>*Provide a range of psychological services to survivors of torture, traumatized refugees, and their families within the framework of a multidisciplinary team<br>*Provide supportive individual, family and group therapy to help patients cope with their post-traumatic stress symptoms and immigration adjustment<br>*Evaluate and document the psychological trauma suffered by survivors of torture and civil war for asylum hearings in New York and New Jersey<br>*Evaluate individuals to verify their claim of Sierra Leonean nationality for asylum hearings in New York and New Jersey<br>*Supervise psychology externs and interns |
| 12/96-12/01 | **THE LUCY A. WICKS HIV/AIDS MENTAL HEALTH CLINIC, DEPARTMENT OF PSYCHIATRY,** New York Presbyterian Hospital Center and Columbia University College of Physicians and Surgeons, New York, New York<br>**Psychologist and Assistant Professor in Clinical Psychology:**<br>*Provided a broad range of individual, family, couples, and group outpatient psychological services to a diverse adult urban population diagnosed with chronic terminal illness<br>*Supervised psychology externs and interns |

| | |
|---|---|
| 6/96-9/99 | **DEPARTMENT OF PSYCHOLOGICAL SERVICES,** Seamen's Society for Children and Families, Staten Island, New York |

6/96-9/99    **DEPARTMENT OF PSYCHOLOGICAL SERVICES,** Seamen's Society for Children and
Families, Staten Island, New York
**Psychologist:**
*Provided outpatient individual, family, and group psychotherapy to diverse children,
  adolescents, adults and collateral others involved with foster care
*Performed a broad range of psychological services to diverse families with member(s)
  diagnosed with chronic terminal illness
*Performed psychological evaluations
*Conducted training to staff, clients, and collateral others
*Supervised psychology externs and social work interns
*Contributed to program development by serving on multiple departmental committees

8/96-12/96    **FOSTER BOARDING HOME PROGRAM AND ADOPTION SERVICES,** Central
Brooklyn Coordinating Council, Brooklyn, New York
**Psychotherapist:**
*Performed a variety of outpatient psychological services including psychological
  evaluations, individual, family and group psychotherapy to a diverse children,
  adolescents, adults and collateral others involved with foster care

7/95-6/96    **PSYCHOLOGY DEPARTMENT,** Kings County Hospital Center, Brooklyn, New York
**Psychology Intern:**
*Provided psychological services to a multi problem, high risk, chronic, diverse
  urban population with a broad range of psychological issues and diagnoses, at
  different levels of functioning, using multiple assessment and treatment
  approaches.  Services ranged from admission through discharge and diagnostic
  evaluations.  Treatment modalities utilized included dynamically oriented
  individual psychotherapy, cognitive-behavioral therapy, group therapy, family
  therapy, brief therapy, and play therapy

## PUBLICATIONS

**Refereed articles:**

Akinsulure-Smith, A.M. (in press). Displaced African female survivors of conflict-related sexual violence: Challenges for service providers. *Violence Against Women.*

**Akinsulure-Smith, A.M.** & Keatley, E. (2014). Secondary Trauma and Local Mental Health Professionals in Post-Conflict Sierra Leone. *International Journal for the Advancement of Counseling. 36*(2), 125-135.

**Akinsulure-Smith, A.M.,** Jones, W. L. & Dachos, N. (2013). Nah We Yone's De Fambul Camp: Facilitating resilience in displaced African children. *Journal of Immigrant and Refugee Studies, 11*(3), 221-240.

Rasmussen, A., Chu, T., **Akinsulure-Smith, A.M.,** & Keatley, E. (2013). The social ecology of resolving family conflict among West African immigrants in New York: A grounded theory approach. *American Journal of Community Psychology 52*(1), 185-196. DOI 10.1007/s10464-013-9588-0.

**Akinsulure-Smith, A.M.** (2013, April). Exploring HIV knowledge, risk and protective factors among West African forced migrants in New York City. *Journal of Immigrant and Minority Health.* Advance online publication. DOI 10.1007/s10903-013-9829-1.

**Akinsulure-Smith, A.M.,** Chu, T., Keatley, E. & Rasmussen, A. (2013). Intimate partner violence among West African immigrants. *Journal of Aggression, Maltreatment & Trauma, 22,* 109-126.

Muzacz, A. & **Akinsulure-Smith, A.M.** (2013). Older adult sexuality: Implications for counseling ethnic and sexual minorities. *Journal of Mental Health Counseling, 35,* 1-14.

**Akinsulure-Smith, A.M.** (2012, Dec). Exploring female genital cutting among West African immigrants. *Journal of Immigrant and Minority Health,* 14(6). Advance online publication. DOI 10.1007/s10903-012-9763-7.

**Akinsulure-Smith, A.M.** (2012). Responding to the trauma of sexual violence in asylum seekers: A clinical case study. *Clinical Case Studies, 11*(4), 285-298.

**Akinsulure-Smith, A.M.** (2012). Using group work to rebuild family and community ties among displaced African men, *Journal for Specialists in Group Work, 37*(2), 95-112.

Rasmussen, A., **Akinsulure-Smith, A.M.**, Chu, T. & Keatley, E. (2012, May 15). "911" among West African immigrants in New York City: A qualitative study of disciplinary practices and perceptions of child welfare authorities. *Social Science & Medicine*, Advance online publication. doi: 10.1016/j.socscmed.2012.03.042.

**Akinsulure-Smith, A.M.**, Keatley, E. & Rasmussen, A. (2012). Responding to secondary traumatic stress: A pilot study of torture treatment programs in the United States. *Journal of Traumatic Stress, 25*, 232-235.

**Akinsulure-Smith, A.M.** & Smith, H. (2012). Evolution of family policies in post-conflict Sierra Leone. *Journal of Child and Family Studies, 21*, 4-13.

**Akinsulure-Smith, A.M.** & O'Hara, M. (2012). Working with forced migrants: Therapeutic issues and considerations for mental health counselors. *Journal of Mental Health Counseling, 34*, 38-55.

Smith, H.E. & **Akinsulure-Smith, A.M.** (2011). Needed – Not Just Needy: Empowerment as a Therapeutic Tool in the Treatment of Survivors of Torture and Refugee Trauma. *African Journal of Traumatic Stress, 2, 17-31.*

O'Hara, M. & **Akinsulure-Smith, A.M.** (2011). Working with interpreters: Tools for clinicians conducting psychotherapy with forced immigrants, *International Journal of Migration, Health, and Social Care, 7*, 33-43.

**Akinsulure-Smith, A.M.** & Jones, W. L. (2011). Nah We Yone – A grassroots community based organization in New York City: Successes, challenges, and lessons learned, *International Journal of Migration, Health, and Social Care, 7*, 44-57.

**Akinsulure-Smith, A.M.** (2010). Torture. In Clauss-Ehlers, C.S. (Ed.). *Encyclopedia of Cross-Cultural School Psychology (Vol. 2, pp. 27-29)*. New York, NY: Springer.

**Akinsulure-Smith, A.M.**, Ghiglione, J. & Wollmershauser, C. (2009). Healing in the midst of chaos: Nah We Yone's African women's wellness group, *Women & Therapy, 32*, 105-120.

**Akinsulure-Smith, A.M.**, (2009). Brief psychoeducational group treatment with re-traumatized refugees and asylum seekers. *Journal for Specialists in Group Work, 34(2)*, 137-150.

Amowitz, L.L., Reis, C., Lyons, K.H., Vann, B., Mansaray, B., **Akinsulure-Smith, A.M.**, Taylor, L. & Iacopino, V. (2002). Prevalence of war-related sexual violence and other human rights abuses among internally displaced persons in Sierra Leone. *Journal of the American Medical Association, 287*, 513-521.

Carter, R.T., **Akinsulure-Smith, A.M.**, Smailes, E.M. & Clauss, C.S. (1998). The Status of Racial/Ethnic Research in Counseling Psychology: Committed or Complacent? *Journal of Black Psychology, 24*, 322-334.

Carter, R.T. & **Akinsulure-Smith, A.M.** (1996). White racial identity and expectations about counseling. *Journal of Multicultural Counseling and Development, 24*, 218-228.

**Manuscripts under review:**

Jeswani, S., **Akinsulure-Smith, A.M.**, Chu, T., Keatley, E. & Rasmussen, A. (under review). Coping strategies among West African youth. *Cultural Diversity and Ethnic Minority Psychology*.

Betancourt, T.S., McBain, R.K., Newnham, E.A., Hann, K., **Akinsulure-Smith, A.M.**, Brennan, R.T., Weisz, J.R., & Hansen, N.B. (under review). A randomized trial of a mental health intervention for war-affected youth. *New England Journal of Medicine*.

Newnham, E.A., **Akinsulure-Smith, A.M.**, Hansen, N. & Betancourt, T.S. (in progress). A Collaborative Model for Building Capacity in Mental Healthcare: Training and Supervision for the Youth Readiness Intervention in Sierra Leone. *American Journal of Community Psychology*.

Betancourt, T.S., Newnham, E.A., Hann, K., McBain, R.K., **Akinsulure-Smith, A.M.**, Weisz, J.R., & Hansen, N.B. (under review). Developing a group mental health intervention for war-affected youth: A mixed methods approach. *Health Services Research*.

**Manuscripts in progress:**

**Akinsulure-Smith, A.M.**, Chu, T., & Rasmussen, A. (in progress). *Recruitment, Retention and Research with African Immigrants*. Manuscript in preparation.

**Akinsulure-Smith, A.M.**, Chu, T., Keatley, E. & Rasmussen, A. (in progress). *Exploring Female Genital Cutting among Survivors of Torture*. Manuscript in preparation.

**Akinsulure-Smith, A.M.**, Chu, T., & Diallo, A. (in progress). *Female Genital Cutting and West African Immigrants: Current Attitudes, Beliefs and Practices*. Manuscript in preparation.

**Akinsulure-Smith, A.M.**, Chu, T., Keatley, E. & Rasmussen, A. (in progress). *Exploring Female Genital Cutting among Survivors of Torture*. Manuscript in preparation.

**Akinsulure-Smith, A.M.**, Chu, T., Keatley, E. & Rasmussen, A. (in progress). *Friends: Perceived challenges facing West African immigrant parents*. Manuscript in preparation.

**Akinsulure-Smith, A.M.** & Sicalides, E. (in progress). *Female Genital Cutting in the United States: Implications for mental health services*. Manuscript in preparation.

**Akinsulure-Smith, A.M.** (in progress). *Emotional wellbeing and African immigrants*. Manuscript in preparation.

**Akinsulure-Smith, A.M.**, Chu, T., Keatley, E. & Rasmussen, A. (in progress). *Friends: Perceived challenges facing West African immigrant parents*. Manuscript in preparation.

Lanfranchi, M. & **Akinsulure-Smith, A.M.** (in progress). Global immigration: Opportunities and challenges for human rights, social justice and culturally competent counseling. (Manuscript in preparation).

Betancourt, T.S., Bearman, S.K., Newnham, E.A., **Akinsulure-Smith, A.M.**, Hann, K., Granetz, R.,...Hansen, N. (in progress). *Sierra Leone Youth Readiness Intervention Facilitator's Manual*. Manuscript in preparation.

Porterfield, K., Kia-Keating, M., **Akinsulure-Smith, A.M.**, Benson, M.A., Betancourt, T., Ellis, B.H. & Miller, K. (in progress). A socio-ecological understanding of refugee resilience and recovery after war: Implications for science and practice. Manuscript in preparation.

Chu, T., **Akinsulure-Smith, A.M.**, Keatley, E. & Rasmussen, A. (in progress). Cultural community support among forced and voluntary West African Migrants in New York City.

Gonzalez, S., Reid, K., Follins, L., **Akinsulure-Smith, A.M.** & Tiburcio, N. (in progress). *Insider-outsider experiences of HIV prevention researchers of color*. Manuscript in preparation.

Perez, C. & **Akinsulure-Smith, A.M.** (in progress). *Modern Day Slavery*. Manuscript in preparation.

**Book chapters:**

Berthold, S.M. & **Akinsulure-Smith, A.M.** (in press). Survivors and victims of terrorism. In A. Glitterman (Ed.). *Handbook of Social Work with Vulnerable and Resilient Populations*, 3rd Ed., New York, NY. Columbia University Press.

**Akinsulure-Smith, A.M.** & Smith, H. (2014). Emerging family policies in Sierra Leone. In M. Robila (Ed.), *Family Policies across the Globe* (pp15-29). New York, NY: Springer.

Clauss-Ehlers, C.S. & **Akinsulure-Smith, A.M.** (2013). Working with Forced Migrant Children and their Families: Mental Health, Developmental, Legal, and Linguistic Considerations in the Context of School-Based Mental Health Services. In C. Clauss-Ehlers, Z. Serpell & M. Weist (Eds.), *Handbook of Culturally Responsive School Mental Health: Advancing Research, Training, Practice, and Policy* (pp.135-146). New York, NY: Springer.

Robila, M. & **Akinsulure-Smith, A.M.** (2012). Psychological ethics and immigration. In M.M. Leach, M.J. Stevens, A. Ferrero, Y. Korkut, & G. Lindsay (Eds.). The *Oxford Handbook of International Psychological Ethics*. New York, NY Oxford University Press (pp 191-200).

**Akinsulure-Smith, A.M.** (2007). Use of Interpreters with Survivors of Torture, War, and Refugee Trauma. In Smith, H.E., Keller, A.S., & Lhewa, D.W. (Eds.). *"...Like a Refugee camp on First Avenue." Insights and Experiences from the Bellevue/NYU Program for Survivors of Torture*. The Bellevue/NYU Program for Survivors of Torture, New York (pp 82-105).

Porterfield, K. & **Akinsulure-Smith, A.M.** (2007). Therapeutic Work with Children and Families. In Smith, H.E., Keller, A.S., & Lhewa, D.W. (Eds.). "...Like a Refugee camp on First Avenue." Insights and Experiences from the Bellevue/NYU Program for Survivors of Torture. The Bellevue/NYU Program for Survivors of Torture, New York (pp 299-336).

Smith, H.E. & **Akinsulure-Smith, A.M.** (2004). A global perspective on youth outreach. In C.S. Clauss-Ehlers & M.D. Weist (Eds.), *Community Planning to Foster Resiliency in Children*. New York: Kluwer Academic/Plenum publishers.

**Akinsulure-Smith, A.M.** (2003). The black-eye peas group game. In Kaduson, H.G. & Schaefer, C.E. (Eds.), *101 Favorite Play Therapy Techniques, Volume III*, Northvale, NJ: Jason Aronson Inc.

## ADDITIONAL PUBLICATIONS

American Psychological Association (2010). *Resilience and recovery after war: Refugee children and families in the United States. Report of the APA Task Force on the Psychosocial Effects of War on Children and Families who are Refugees from Armed Conflict Residing in the United States* Washington, DC: American Psychological Association. Retrieved from: http://www.apa.org/pi/families/refugees.aspx (Member of the APA Task Force).

**Akinsulure-Smith, A.M.** (2004). Giving voice to the voiceless: Providing interpretation for survivors of torture, war, and refugee trauma. *The Gotham Translator*, 6-7.

**Akinsulure-Smith, A.M.** (January 1, 2002). African women don't get the blues. *Mu Yepe, 1*, 4-5.

**Akinsulure-Smith, A.M.** & Smith, H. (2002). Mission to Freetown. *Mano Vision*, 26/27, 12-13.

**Akinsulure-Smith, A.M.** (May 10, 2000). Perspective on Sierra Leone; rape and trauma arise from a deal made in hell; peacekeeping won't do. International peacemaking must show it viability in Africa. *Los Angeles Times*, Part B; Page 9.

**Akinsulure-Smith, A.M.** (1997). *The Effects of HIV/AIDS Knowledge, Sexual Self-Efficacy, and Susceptibility on Sexual Risk-Taking Behavior in Sierra Leonean Students of Higher Education*. Unpublished doctoral dissertation, Columbia University.

**Akinsulure, A.M.** (1989). *Processing Ethnic Stereotypes*. Unpublished Senior Honors Thesis, University of Western Ontario, Canada.


## PRESENTATIONS

**Peer reviewed presentations:**

**Akinsulure-Smith, A.M.**, Chu, T., Rasmussen, A., & Roubeni, S. (2013, June). *Population Movement Cultural Identity, and Public Health: The Case of West African Immigrants in New York City*. Paper presentation at the Global Health and Well-Being the Social Work Response Conference, New York, NY.

Jeswani, S., Rasmussen, A., **Akinsulure-Smith, A.M.**, & Chu, T. (2013, June). *Stressors and Coping Strategies among West African Immigrant Youth*. Paper presentation at the 25th Annual Ethnographic and Qualitative Research Conference, Cedarville, OH.

Betancourt, T.S., Hann, K, Newnham, E.A., **Akinsulure-Smith, A.M.**, & Hansen, N. (2012, November). *Design and Evaluation of a Group Mental Health Intervention for Multi-Symptomatic War-Affected Youth in Sierra Leone*. Paper presentation at the 28th Annual Meeting of the International Society for Traumatic Stress Studies, Los Angeles, CA.

Newnham, E.A., **Akinsulure-Smith, A.M.**, Hansen, N. & Betancourt, T.S. (2012, November). *A Collaborative Model for Building Capacity in Mental Healthcare: Training and Supervision for the Youth Readiness Intervention in Sierra Leone*. Paper presentation at the 28th Annual Meeting of the International Society for Traumatic Stress Studies, Los Angeles, CA.

**Akinsulure-Smith, A.M.**, Chu, T., Keatley, E., & Rasmussen, A., (2012, November). *Family Conflict and Community Support Among West African Refugee Families in New York*. Paper presentation at the 28th Annual Meeting of the International Society for Traumatic Stress Studies, Los Angeles, CA.

Newnham, E.A., **Akinsulure-Smith, A.M.**, Hansen, N. & Betancourt, T.S. (2012, July). *A Collaborative Model for Building Capacity in Mental Healthcare: Training and Supervision for the Youth Readiness Intervention in Sierra Leone*. Poster presentation at the McGill University Advanced Study Institute in Cultural Psychiatry, Montreal, Canada.

Rasmussen, A., **Akinsulure-Smith, A.M.**, Chu, T., & Keatley, E. (2012, May). *The place of public health institutions within problem-solving strategies of West African families in New York City*. Paper presentation at the 2012 Annual Meeting of the Society for the Study of Psychiatry and Culture, New York, NY.

Rasmussen, A., Chu, T., Keatley, E. & **Akinsulure-Smith, A.M.** (2011, Jun.). *Community resilience and conflict among West African migrants to New York City*. Paper presented at the 13th Biennial Conference of the Society for Community Research and Action, Chicago, IL.

Rasmussen, A., Chu, T., **Akinsulure-Smith, A.M.** & Keatley, E. (2010, Oct.). *The social ecology of solving family conflict in West African communities in New York.* Paper presented at the 9th international Conference on Urban Health, New York, NY.

**Akinsulure-Smith, A.M.** (2010, July). *Female Genital Cutting.* Workshop conducted at MAN UP, Young Leaders Summit 2010, Johannesburg, South Africa.

**Akinsulure-Smith, A.M.** & Smith, H.E. (2010, July). *Violence against women around the world.* Seminar conducted at MAN UP, Young Leaders Summit 2010, Johannesburg, South Africa.

Rasmussen, A., **Akinsulure-Smith, A.M.**, Chu, T. & Keatley, E. (2010, May). *Assessing family conflict in West African immigrant families.* In D. Hinton (Chair), Culturally Sensitive Assessment of Psychologically Distressed Ethnic and Non-English Speaking Populations. Symposium presented at the 2010 meeting of the American Psychiatric Association, New Orleans, LA.

**Akinsulure-Smith, A.M.** & Smith, H.E. (2010, April) *Rebuilding Community & Family Ties: The use of group treatment for Africans Survivors of torture & trauma.* Panel Presentation conducted for the 1st United States Conference on African Immigrant Health (USCIAH 2010), Atlanta, GA.

**Akinsulure-Smith, A.M.** & Smith, H.E. (2010, April). *Nah We Yone – Rebuilding and empowering shattered African communities.* Panel Presentation conducted for the 1st United States Conference on African Immigrant Health (USCIAH 2010), Atlanta, GA.

Pfister, J., Aubry, T., **Akinsulure-Smith, A.M.**, Bost, S.M., McGee, M. & Travis, T. (2009, November). *Re-thinking "Therapeutic Culture."* Roundtable conducted at American Studies Association Annual Convention, Washington, DC.

Muzacz, A., & **Akinsulure-Smith, A. M.** (2008, October). *Counseling healthy sexuality with ethnic minority and LGBT older adults.* Workshop presentation at the State Society on Aging of New York's 36th Annual Meeting, Saratoga Springs, NY.

Porterfield, K., **Akinsulure-Smith, A.M.**, Betancourt, T.S. & Kia-Keating, M. (2009, August). *War-affected refugee youth in America – Challenges and new directions.* Symposium conducted at the 117[rd] Annual American Psychological Association Annual Convention, Toronto, Ontario, Canada.

Muzacz, A. & **Akinsulure-Smith, A.M.** (2009, April). *Sexuality and Aging: Practice and Research with Ethnic Minority and LGB Adults.* Paper presented at the Southeastern Regional Counseling Psychology Conference, Athens, GA.

Muzacz, A. & **Akinsulure-Smith, A.M.** (2008, October). *Counseling Healthy Sexuality with Ethnic Minority and LGBT Older Adults.* Workshop presented at the State Society on Aging of New York's 36th Annual Meeting, Saratoga Springs, NY.

Muzacz, A., & **Akinsulure-Smith, A.M.** (2008, May). *Counseling Older Adults: Implications for Sexual Health.* Poster presented at Pace University's 16th Annual Psychology Conference, New York, NY.

Annan, J, Betancourt, T, Rasmussen, A, Borisova, I. & **Akinsulure-Smith, A.M.** (2007, November). *War-affected women and girls in three African conflicts – Wives, mothers, soldiers.* Symposium conducted at the 23rd Annual Meeting of the International Society for Traumatic Stress Studies, Baltimore, MD.

**Akinsulure-Smith, A.M.** & Smith, H.E. (2006, October). *Making therapy culturally relevant: Group therapy with African survivors of torture and refugee trauma.* Workshop conducted at the Institute for the Study and Promotion of Race and Culture, Boston College, Chestnut Hill, MA.

**Akinsulure-Smith, A.M.** & Smith, H.E. (2006, October). *Nah We Yone – It belongs to us.* Structured Discussion conducted at the Institute for the Study and Promotion of Race and Culture, Boston College, Chestnut Hill, MA.

**Akinsulure-Smith, A.M.**, Rogers, J. & Smith, H.E. (2004, November). *Nah We Yone, Inc.: Creating hope, support and safety out of chaos.* Workshop conducted at the 20th Annual Meeting of the International Society for Traumatic Stress Studies, New Orleans, LA.

**Akinsulure-Smith, A.M.** & Porterfield, K. (2004, November). *Two short-term group treatment models for war trauma survivors.* Workshop conducted at the 20th Annual Meeting of the International Society for Traumatic Stress Studies, New Orleans, LA.

**Akinsulure-Smith, A.M.**, Smith, H.E. & Nguyen, L. (2003, October). *Identity and meaning: Psychotherapy with survivors of torture.* Workshop conducted at the 19th Annual Meeting of the International Society for Traumatic Stress Studies, Chicago, Il.

**Akinsulure-Smith, A.M.,** Smith, H.E., Sesay, S. & Moore, M. (2003, May). *Working with African survivors of torture and refugee trauma.* African Refugees: The Enduring Search for Durable Solutions. Ethiopian Community Development Council, Inc. Ninth National Conference, Washington, DC.

**Akinsulure-Smith, A.M.,** Rogers, J. & Smith, H. E. (2000, February). *A challenge to cross-cultural psychology: Considerations for psychotherapy with war traumatized African refugees – Is there a place at the table?* Symposium conducted at the 17th Annual Teachers College Winter Roundtable on Cross-Cultural Psychology and Education, Teachers College, Columbia University, New York, NY.

**Akinsulure-Smith, A.M.** & Smith, H. E. (1997, February). *Africans in America: Cultural and environmental considerations for psychotherapy.* Families and Environmental Influences in Cross-Cultural Psychology and Education. Symposium conducted at the 14th Annual Teachers College Winter Roundtable on Cross-Cultural Psychology and Education, Teachers College, Columbia University, New York, NY.

Carter, R.T., Sicalides, E.I., Lee, D.Y., Ota Wang, V., **Akinsulure-Smith,** A.M. & Smith, H.E. (1996, February). *A process model for cultural competence.* Workshop conducted at the 13th Annual Teachers College Winter Roundtable on Cross-Cultural Psychology and Education, New York, NY.

Carter, R.T., **Akinsulure,** A.M., Lee, D.Y., Ota Wang, V., Sicalides, E.I. & Smith, H.E. (1995, August). The *Evolution of a training model for racial-cultural competencies.* Symposium conducted at the 103rd Annual American Psychological Association Annual Convention, New York, NY.

Carter, R.T., Clauss, C.S., **Akinsulure,** A.M. & Smailes, E.M. (1995, August). *The status of cross-cultural research in Psychology: Committed or complacent?* Poster presented at the 103rd Annual American Psychological Association Annual Convention, New York, NY.

Carter, R.T., **Akinsulure,** A.M., Lee, D.Y., Ota Wang, V., Sicalides, E.I. & Smith, H.E. (1995, February). *A model for training racial-cultural competencies.* Workshop conducted at the 12th Annual Winter Roundtable on Cross-Cultural Psychology and Education, Teachers College, Columbia University, New York, NY.

**Invited Presentations**

**Akinsulure-Smith, A.M.** (2014, March). *International Human Rights, International House, and Me.* The Women's International Leadership Program and The Davis Peace and Diplomacy Initiative at International House, New York, NY.

Betancourt, T. & **Akinsulure-Smith, A.M.** (2013, July). *Mental Health Issues among Former Child Soldiers in Sierra Leone: A Longitudinal Perspective.* Paper presentation at the 6th Pan Africa PCAF Psychotrauma Conference, Kampala, Uganda.

Figley, K.R., Brancu, M., **Akinsulure-Smith, A.M.,** & Figeley, C. (2013, July). *Developing Resilience in Trauma Workers,* Webinar. APA Division 56 (Trauma) and Early Career Psychologists (ECP) Committee.

Betancourt, T. & **Akinsulure-Smith, A.M.** (2013, March). *Child Development and Mental Health: Using Longitudinal Data to Develop a Youth Readiness Intervention.* Paper presentation at the 2nd Annual Mental Health Conference, Freetown, Sierra Leone.

O'Hara, G., **Akinsulure-Smith, A.M.** & Porterfield, K. (2012, April). Refugees and Psychosocial Wellbeing. Panel discussion conducted for 5th Annual Psychology Day at the United Nations. *Human Rights for Vulnerable People: Psychological Contributions and the United Nations Perspective,* New York, NY.

**Akinsulure-Smith, A.M.** (2012, March). *Building on community strengths: Using group work to facilitate healing in refugee communities.* First Annual "It Takes a Community: Optimizing Refugee Resettlement" Conference. Franklin & Marshall College, Lancaster, PA.

**Akinsulure-Smith, A.M.,** Abdi, S. & Miller, C. (2011, July). *Refugee health in FY2011 and 2012 challenges and innovative strategies.* Panel Presentation conducted for Church World Service/The Immigration and Refugee Program National Conference, New York, NY.

**Akinsulure-Smith, A.M.** (2011, March). *Sexual Violence as a Tool of Torture and Weapon during Conflict,* Webinar - http://gulfcoastjewishfamilyandcommunityservices.org/refugee/2011/04/15/sexual-violence-by-dr-akinsulure-smith-webinar/

**Akinsulure-Smith, A.M.,** Constantino, G, Javier, R., Suzuki, L. & Wilkinson, L. & Clauss-Ehlers, C.S. (2010, April). *Promoting social justice and positive mental health in educational settings.* Panel Presentation Sponsored by NYSPA's Division of Culture, Race, and Ethnicity, New York, NY.

Soysa, C., Saunders, A. & Akinsulure-Smith, A.M. (2010, March). *Women's health and mental health in times of crisis: War, natural disasters, epidemics.* Panel Discussion conducted for The 54[rd]Session of the Commission on the Status of Women Parallel Event, Sponsored by the American Psychological Association (APA); the NGO Committee on HIV/AIDS; the NGO Committee on the Family, New York, NY.

Akinsulure-Smith, A.M. (2009, April). *The war on women: Gender based violence in armed conflict,* 2009 Women's Resource Center and Women's Studies Guest Lecture, College of Staten Island, the City University of New York, NY.

Akinsulure-Smith, A.M. (2008, April). *Caught in the crossfire –Violence against women during armed conflict,* 2008 Women and Gender Guest Lecture, University of Maine at Farmington, Farmington, ME.

Akinsulure-Smith, A.M. (2008, April). *Responding to the tragedy of war: The Nah We Yone Story.* Invited guest lecture, 2008 Culture and Diversity Program, University of Maine at Farmington, Farmington, ME.

Akinsulure-Smith, A.M. (2008, March). *Women and genocide: The use of sexual violence against women as a tool of genocide during armed conflict.* Invited guest lecture, 2008 Women and Genocide Lecture, Center for Holocaust/Gender Study & Women's Studies Program, Drew University, Madison, N.J.

Mattis, J.S., Akinsulure-Smith, A.M., Mahoney, A.M. & Fullilove, R. (2008, February). *Demographic profiles.* Panel Discussion conducted for The 3rd Annual Conference on the Health of the African Diaspora: Mental Health, New York University School of Medicine and Bellevue Hospital Center, New York, NY.

Akinsulure-Smith, A.M. (2007, December). *Refugee women and violence.* Workshop conducted at Episcopal Migration Ministries/ Program for Survivors of Torture Refugee Mental Health Training Atlanta, GA.

Akinsulure-Smith, A.M. (2007, December). *Responding to refugee children and their families.* Workshop conducted at Episcopal Migration Ministries/ Program for Survivors of Torture Refugee Mental Health Training Atlanta, GA.

Kodindo, G., Akinsulure-Smith, A.M., Hein, K. & Askew, G. (2007, December). *Promoting health and human rights of women and children.* Panel Discussion conducted for Profiles in Courage: Health and Human Rights in Action. Center for Health and Human Rights: New York University School of Medicine, New York, NY.

Akinsulure-Smith, A.M. (2007, June). *Therapeutic responses to displaced African female survivors of sexual violence.* Workshop conducted at War, Torture and Terror: The Role of Psychology. Ferkauf Graduate School of Psyhcology. Yeshiva University, New York, NY.

Myerfeld, J., Green, J. & Akinsulure-Smith, A.M. (2007, April). *Torture and the body.* Panel Discussion conducted for Rutgers University's Human Rights Panel Series, New Brunswick, NJ.

Otto, J., Rone, J., & Akinsulure-Smith, A.M. (2006, March). *Between two fires: Torture and displacement in Northern Unganda.* Panel Discussion conducted for WITNESS, United Nations Plaza, New York, NY.

Akinsulure-Smith, A.M., Kante, A., Traore, T. & Gogo, M. (2005, August). *A discussion on social relationships and (X)ual politics for the African woman.* A Day of A.W.E. African Women's Empowerment. Panel Discussion conducted for Sanctuary for Families, New York, NY.

Waruzi, B.T., Brown, .C.J., Akinsulure-Smith, A.M., Dicker, R. & Agborsangaya. P. (2005, April). *Female child soldiers in the DR of Congo.* Panel Discussion conducted for Citizens for Global Solutions, Woodrow Wilson Center, Washington, DC.

Clauss-Ehlers, C.S., Wong, G., Camacho-Gringerich, A., Javier, R., Smith, H, Akinsulure-Smith, A.M. & Mathur, S.J. (2005, March). *Community Planning to foster resilience in children.* Workshop sponsored by the Division of Culture, Race & Ethnicity of the New York State Psychological Association, conducted at Columbia University, Teachers College, New York, NY.

Akinsulure-Smith, A.M. & Smith, H.E. (2005, March). *Overview of torture and its consequences, secondary trauma, and working with interpreters.* Workshops conducted at the 2005 New Staff Institute, Center for Victims of Torture, Minneapolis, MI.

Akinsulure-Smith, A.M. & Smith, H.E. (2004, December). *Therapeutic work with African survivors of war and trauma.* Brown Bag Workshop conducted at The Institute of African Studies, School of International and Public Affairs, Columbia University, New York, NY.

Case 1:13-cr-00409-BMC-7, Document 66, Filed 04/07/2023, Page 110 of 133 PageID #: 749

**Akinsulure-Smith, A.M.** & Smith, H.E. (2004, October). *Human rights advocacy: Stress and renewal.* Workshop conducted for The Human Rights Advocate Program, School of International and Public Affairs, Columbia University, New York, NY.

**Akinsulure-Smith, A.M.** (2004, June). *Speaking the unspeakable: Interpreting for survivors of torture, war, and refugee trauma.* Global Security: Implications for Translation and Interpretation. Presentation at the 2nd International Translation Conference sponsored by NYU School of Continuing and Professional Studies' Center for Foreign Languages and Translation, New York, NY.

**Akinsulure-Smith, A.M.** & Smith, H.E. (2003, November). *Working with survivors of torture and refugee trauma.* International Center, New York, NY.

**Akinsulure-Smith, A.M.** (2003, September). *Assessing the credibility of Sierra Leonean trauma survivors.* Workshop conducted for the New York Asylum Office, the Bureau of Citizenship and Immigration Services of the Department of Homeland Security, Rosedale, NY.

**Akinsulure-Smith, A.M.** (2003, May). *Women and trauma: A global perspective.* Treating Women: Facilitating Cultural Connection. Princeton House Women's Program. Keynote Speech at the Spring Conference 2003, Mt. Laurel, NJ.

**Akinsulure-Smith, A.M.** (2003, April). *Working in the climate of war: Being compassionate in the face of hostility.* All Sides of Working in the Time of HIV and AIDS, Annual Conference of the Terry K., Watanabe Volunteer Center & GMHC Action, New York, NY.

**Akinsulure-Smith, A.M.** & Porterfield, K. (2003, April). *Responding to disasters: Mental health assessment and self-care.* Grand Rounds conducted for the Department of Social Work and Home Care Services, Beth Israel Hospital Center, New York, NY.

**Akinsulure-Smith, A.M.** & Rogers, J. (2002, October). *Operation Fine Girl: The abuse of women in war-torn Sierra Leone.* Discussion conducted for the Barnard Forum on Migration, Barnard College, Columbia University, New York, NY.

**Akinsulure-Smith, A.M.** (2001, May). *What is psychotherapy?* Workshop conducted for African Refugee Women at the International Institute of New Jersey, Cross-Cultural Counseling Center, Jersey City, NJ.

**Akinsulure-Smith, A.M.** (2001 May). *Sierra Leonean women: The scars of war.* Healing the Pain: Multicultural Responses to Violence Against Women, Annual Conference of the International Society of Traumatic Studies, Inc., New York Chapter, Fordham University, New York, NY.

**Akinsulure-Smith, A.M.** (2001, April). *Interviewing survivors of war-related sexual violence.* Workshop conducted for Witness. Lawyers Committee for Human Rights, New York, NY.

**Akinsulure-Smith, A.M.**, Rogers, J. & Smith, H.E. (2001, April). *Impact of wars in Africa: Case of Sierra Leone.* School of Social Work. International Social Welfare Caucus, Columbia University, New York, NY.

Shinn, B., Evans-Tranumn, S., McAshan, J., Fatima, C., **Akinsulure-Smith, A.M.** & Beckman, D. (2000, October). *Poverty Unveiled: A Panel Discussion.* Invited panelist at Women's Missionary Society, African Methodist Episcopal Church: Mobilizing Against Poverty – A Clarion Call – Connect, Act, Respond, Experience – Care. 12th Annual NGO Conference, United Nations Headquarters, New York, NY.

**Akinsulure-Smith, A.M.** (2000, October). *Issues of reproductive health for refugee women.* The Changing Face of Resettlement. Church World Service/Episcopal Migration Ministry Joint National Conference, Austin, TX.

**Akinsulure-Smith, A.M.** & Smith, H. (2000, October). *Challenges of being a caseworker.* The Changing Face of Resettlement. Church World Service/Episcopal Migration Ministry Joint National Conference, Austin, TX.

**Akinsulure-Smith, A.M.** (2000, October). *Adjustment issues in refugee children.* The Changing Face of Resettlement. Church World Service/Episcopal Migration Ministry Joint National Conference, Austin, TX.

**Akinsulure-Smith, A.M.** (2000, September). *Considerations for psychotherapy with war and torture survivors.* Invited lecture given at the Pre-Doctoral Psychology Internship Program, New York Psychiatric Institute, New York, NY.

**Akinsulure-Smith, A.M.** & de Jong, K. (2000, September). *Refugee trauma: From Sierra Leone to New York.* Doctors Without Borders/Médcines Sans Frontières (MSF) Special Event – A Refugee Camp in the Heart of the City, New York, NY.

**Akinsulure-Smith, A.M.** (2000, August). *The Sierra Leonean civil War.* Invited presentation given at the International Institute of New Jersey, Cross-Cultural Counseling Center, Jersey City, NJ.

Akinsulure-Smith, A.M. (2000, August). *Physical and mental health consequences of the Sierra Leone civil war on women: Where do we go from eere?* Perspectives of Sierra Leoneans in the New Millennium. First Annual Conference of the National Organization of Sierra Leoneans in North America, Atlanta, GA.

Akinsulure-Smith, A.M., Engo-Tjega, R.B., Taylor, B. & Zemele, P. (2000, August). *Solidarity with Africa: A call for more action.* African Women and HIV/AIDS. Workshop conducted at 53rd Annual DPI/NGO Conference. Global Solidarity: The Way to Peace and International Cooperation. United Nations Headquarters, New York, NY.

Akinsulure-Smith, A.M. (2000, June). *Mental health consequences of sexual violence during the nine-year civil war in Sierra Leone.* Invited presentation given at the Annual Conference of the National Organization of Sierra Leoneans in North America, Atlanta, GA.

Akinsulure-Smith, A.M. & Eyega, Z. (2000, June). *Reproductive health and rights for African immigrants and refugee women: Strategies for community empowerment.* Workshop conducted at Focus on Women's Health Around the World in Support of the Beijing Platform for Action, Hunter College, New York, NY.

Akinsulure-Smith, A.M. & Impalli, E. (2000, March). *Considerations for working with interpreters.* Workshop conducted at Conference on Refugee Resettlement: Therapeutic Factors and Interventions, New York University Medical School, Bellevue Hospital, New York, NY.

Akinsulure-Smith, A.M. & Burke, P. (2000, February). *What women bring back from their sojourns in academia in the U.S.: Experiences of international professional women.* Invited presentation given at NAFSA: Association of International Educators, Women's Right to Education: Building Global Leadership for the 21st Century, United Nations, New York, NY.

Akinsulure-Smith, A.M. & Smith, H.E. (1999, November). *Sierra Leone: What are the health/human rights concerns in Sierra Leone? Why did the situation in Sierra Leone receive such little attention?* Invited Lecture given for Course STC 398: Health and Human Rights in the World Community, Princeton University, Princeton, NJ.

Akinsulure-Smith, A.M., Rogers, J. & Smith, H.E. (1999, June). *Refugee children traumatized by war.* Children in Limbo. Symposium conducted at the Fifteenth Annual Manhattan Child and Adolescent Services Committee Conference, Fordham University, New York, NY.

Akinsulure-Smith, A.M. (1998, May). *Overview of the Wechsler Adult Intelligent Scale III.* Invited lecture given at the Pre-Doctoral Psychology Internship Program, Kings County Hospital Center, Brooklyn, New York.

Akinsulure-Smith, A.M. & Smith, H.E. (1998, April). *Recognizing, assessing and responding to suicidal risk factors in sdolescents.* Invited lecture given at ASPIRA of New York, Inc., New York, NY.

Akinsulure-Smith, A.M., Smith, H.E. & Van Harte, E. (1997, April). *Psychotherapy with Africans in America.* Symposium conducted at the Perspectives on Black Psychology: Past, Present, and Future, Pace University, New York, NY.

Akinsulure-Smith, A.M. (1996, October). *Clinical issues for consideration in working with African populations.* Invited lecture given at the Pre-Doctoral Psychology Internship Program, Kings County Hospital Center, Brooklyn, NY.

Akinsulure-Smith, A.M. & Smith, H.E. (1996, March). *Each child has a gift.* Workshop presented at the Champions Academics & Sports Club, New York Junior Tennis League Parent Workshops, Brooklyn Public Schools, Brooklyn, NY.

Akinsulure-Smith, A.M. (1996, January). *Working with African populations.* Invited lecture given at the Pre-Doctoral Psychology Internship Program, Kings County Hospital Center, Brooklyn, NY.

Adeyinka M. Akinsulure-Smith
Page 12

## PROFESSIONAL ACTIVITIES

**3/10- Present**   **EXPERT WITNESS AND LEGAL CONSULTATION**
*Retained by Trial Chamber III ("the Chamber") to serve as a joint expert on gender
crime and Post Traumatic Stress Disorder ("PTSD") for all parties and participants in
the case of the *Prosecutor v. Jean-Pierre Bemba Gombo* (case number ICC-01/05-
01/08) before the International Criminal Court (ICC).
*Provided expert testimony on gender crime and Posttraumatic Stress Disorder to plaintiffs
and defendants in the case
*Completed report was submitted to the court for distribution to prosecutor and defendant in
the trial
*Evaluated and documented the psychological trauma suffered by survivors of gender crimes
in Central African Republic during the armed conflict from October-November 2002

**8/08-12/10**   **AMERICAN PSYCHOLOGICAL ASSOCIATION TASK FORCE ON THE
PSYCHOLOGICAL EFFECT OF WAR ON CHILDREN AND FAMILIES WHO ARE
REFUGEES FROM ARMED CONFLICTS RESIDING IN THE UNITED STATES
(PEWCF)**
*Appointed to a task force created to assist psychologist in the U.S. to meet the challenges of
working with children and families who are refugees from armed conflicts residing in the U.S.
*Review the research on the psychosocial effects of war on children and families
*Identify areas of needed culturally and developmentally appropriate research
*Develop recommendations for culturally and developmentally appropriate practice and programs

**5/97-7/10**   **NAH WE YONE, (NWY) Inc.,** New York, New York
**Chairperson of the Board of Directors and Co-Founder:**
*Co-founded voluntary, non-profit group that assists displaced and traumatized Africans with their
adjustment within the New York City metropolitan area
*Oversee all aspects NWY's programs, including, effective coordination of the board, staff and
volunteers; establishment and implementation of programs; and evaluations
*Provide clinical services to NWYs clients, including psychological evaluations and psychotherapy
*Evaluate individuals to verify their claim of Sierra Leonean nationality for asylum
hearings in New York and New Jersey
*Conduct information and training sessions on the needs of displaced and traumatized Africans for
local and national organizations
*Develop funding proposals and ensure that funder required controls are carried out

**1/01-2/01**   **PHYSICIANS FOR HUMAN RIGHTS, Boston, Massachusetts & UNITED NATIONS
MISSION IN SIERRA LEONE, HUMAN RIGHTS DIVISION, Sierra Leone
Human Rights Investigation in Sierra Leone**
*Participated in a month long quantitative study of women's health and human rights in Sierra Leone
*Participated in meetings with local and international Non Governmental Organizations to gather
information about available mental health services in Sierra Leone
*Trained and supervised local research staff, and provided counseling
*Participated in survey instrument development and translation into Krio
*Prepared reports of the mission to assist in an advocacy campaign in the United States

**9/99-9/00**   **AFRICAN SERVICES COMMITTEE, New York, New York
African Community Prevention Campaign**
*Provided HIV/STD/TB education, prevention and care workshops as well as counseling and
referrals to African immigrant and refugee communities
*Promoted HIV/STD/TB prevention and care on African community radio stations

Case 1:13-cr-00409-BMC-7 Document 65 Filed 04/07/2032 Page 113 of 133 PageID #: 752

3/00          **PHYSICIANS FOR HUMAN RIGHTS, Boston, Massachusetts**
           **Human Rights Investigation in Sierra Leone**
           *Participated in a two-week humanitarian mission to Sierra Leone
           *Conducted preliminary research on the extent and impact of sexual violence during the war
            by interviewing women, young girls, child soldiers and other casualties of the war
           *Facilitated and participated in meetings with local and international Non Governmental
            Organizations to gather information about the extent and type of the trauma
           *Prepared reports regarding the mission to assist in a public awareness campaign in the United
            States

## PROFESSIONAL MEMBERSHIPS
1998-Present     American Counseling Association
                       Division - Association for Multicultural Counseling and Development (AMCD)
                       Division - Association for Specialists in Group Work (ASGW)
1998-Present     New York State Psychological Association
1997-Present     International Association for Play Therapy, Inc. & New York Association for Play Therapy
1995-Present     American Psychological Association
                       Division 17 - Counseling Psychology
                       Division 35 - Psychology of Women
                       Division 45 - Society for the Psychological Study of Ethnic Minority Issues
                       Division 49 - Group Psychology and Group Psychotherapy

## RESEARCH GRANTS AND CONTRACTS:

2014-2015     *Exploring Factors that Hinder and Help Women's Wellness in Post-Conflict Sierra Leone*
           Fulbright Africa Regional Research Program Award, PI
Spring 2013    *Female Genital Cutting and West African Immigrants: Current Attitudes, Beliefs and Practice*
           Professional Staff Congress – City University of New York (PSC-CUNY) Award #
           66771-00 44, PI
2008-2013     *HIV knowledge, risk and protective factors among West African forced migrants in New York City.*
           National Institute of Mental Health (NIMH) Fellow, Minority Research in HIV Intervention: Skills
           for the Community (RHISC) (NIMH, R25MH083602), PI
Spring 2011    *HIV knowledge, risk and protective factors among West African forced migrants in New York City.*
           Professional Staff Congress – City University of New York (PSC-CUNY) Award #
           64459-0042, PI
Spring 2010    *An Interdisciplinary Approach to Developing and Testing Evidence-based Mental Health*
           *Interventions for War Affected Youth in Sierra Leone.* Harvard Catalyst Pilot Grant, Co-PI
Fall 2010      The Colin Powell Center for Policy Studies Community Based Research Grant, The City
           College of New York, PI
Spring 2008    *Responding to Vicarious Trauma: A Survey of Torture Treatment Programs in the United States*
           Professional Staff Congress – City University of New York (PSC-CUNY) Award #
           61253-0039, PI

Research grants under review:
           *Social Networks and Health Among West African Refugees.* National Institute of Health (NIH),
            Research Project Grant (Parent R01), Co-PI
           *FGC and West African Immigrants: Current Attitudes, Beliefs and Practices.* National Institute of
            Health (NIH),Support of Competitive Research Program (SCORE), PI

## REVIEW PANELS
Ad hoc Reviewer       *Psychological Trauma: Theory, Research, Practice and Policy*
January 2012-2015    *Journal of Multicultural Counseling and Development*
Summer 2006          *Critical Half*



Allenwood-Low
1000
Deer, PA 17887

RETURN RECEIPT REQUESTED

U.S. POSTAGE PAID
POSTAGE ENV
WHITE DEER, PA
17887
MAR 27 20
AMOUNT
**$0.00**
R2305K138972-08

1000          11201

<>82814-053<> Attn: Clerk of Court
United States District Court
Judge John Gleeson
225 Cadman Plaza East
Brooklyn NY 11201

Low Security Correctional Institution
Allenwood, PA 17887
Date ___ MAR 2 7 2020 ___
The enclosed letter was processed through
special mailing procedures for forwarding to
you. The letter has neither been opened nor
inspected. If the writer raises a question or
problem over which this facility
jurisdiction, you may wish to return the
material for further information or clarification
If the writer encloses correspondence for
forwarding to another address, please Legal
mail

**CLERK OF U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
225 CADMAN PLAZA EAST
BROOKLYN, NY 11201

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300



Attn: clerk's office
United States Court of Appeal
for the Second Circuit

40 Foley Square

New York, NY 10007



Case 1:13-cr-00109-BMC-7, Document 66, Filed 04/07/2832 Page 1 of 13 PageID #: 755

# U.S. District Court
## Eastern District of New York (Brooklyn)
## CRIMINAL DOCKET FOR CASE #: 1:13-cr-00109-JG-1

Case title: USA v. Babafemi

Date Filed: 02/21/2013
Date Terminated: 08/17/2015

Assigned to: Judge John Gleeson

**Defendant (1)**

| | |
|---|---|
| **Lawal Olaniyi Babafemi** | represented by **Lisa Hoyes** |
| *TERMINATED: 08/17/2015* | Federal Defenders of New York |
| *also known as* | One Pierrepont Plaza, 16th Floor |
| Abdullah | Brooklyn, NY 11201 |
| *TERMINATED: 08/17/2015* | 718-330-1253 |
| *also known as* | Fax: 718-855-0760 |
| Ayatollah Mustapha | Email: lisa_hoyes@fd.org |
| *TERMINATED: 08/17/2015* | *LEAD ATTORNEY* |
| | *ATTORNEY TO BE NOTICED* |
| | *Designation: Public Defender or* |
| | *Community Defender Appointment* |

**Chase A. Scolnick**
Federal Defenders of New York, Inc.
One Pierrepont Plaza
16th Floor
Brooklyn, NY 11201
(718)330-1213
Fax: (718)855-0760
Email: chase_scolnick@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or*
*Community Defender Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| PROVIDING MATERIAL SUPPORT OR RESOURCES TO TERRORISTS | Dft to be imprisoned for a term of 15 years on Count One and 7 years on Count Two to run consecutively on each count, totaling 22 years of incarceration. It is the court's understanding that the dft will be given credit for time served since August 19, |

Case 1:13-cr-00109-BMC, Document 66, Filed 04/07/2020, Page 117 of 133 PageID #: 756

| | |
|---|---|
| (1) | 2011 in Nigeria. The court recommends to the bureau of prisons for incarceration at an FCI that is at the most minimal level as deemed appropriate by the bureau of prisons. No term of supervised release. Special Assessment of $200.00. |
| | Dft to be imprisoned for a term of 15 years on Count One and 7 years on Count Two to run consecutively on each count, totaling 22 years of incarceration. It is the court's understanding that the dft will be given credit for time served since August 19, 2011 in Nigeria. The court recommends to the bureau of prisons for incarceration at an FCI that is at the most minimal level as deemed appropriate by the bureau of prisons. No term of supervised release. Special Assessment of $200.00. |
| PROVIDING MATERIAL SUPPORT OR RESOURCES TO TERRORISTS (2) | |
| VIOLENT CRIME/DRUGS/MACHINE GUN (3) | All open counts dismissed on the motion of the U.S. |
| CONSPIRACY TO USE FIREARMS (4) | All open counts dismissed on the motion of the U.S. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

| **Plaintiff** | | |
|---|---|---|
| USA | represented by | **Hilary Ley Jager** United States Attorneys Office 271 Cadman Plaza East Brooklyn, NY 11201 |

(718)254-6248
Fax: (718)254-6320
Email: hilary.jager@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William M. Narus**
U.S. Department of Justice
Counterterrorism Section
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
202-307-0789
Fax: 202-514-8714
Email: william.narus@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zainab Ahmad**
United States Attorneys Office
for the Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
(718)254-6522
Fax: (718)254-6076
Email: zainab.ahmad@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/21/2013 | 1 | SEALED INDICTMENT as to Lawal Olaniyi Babafemi (1) count(s) 1-2, 3, 4. (Attachments: # 1 SEALED COVER SHEET) (Piper, Francine) (Additional attachment(s) added on 2/21/2013: # 2 Criminal Information Sheet) (Piper, Francine). (Entered: 02/21/2013) |
| 02/21/2013 | 4 | ORDER FOR ISSUANCE OF Arrest WARRANT as to Lawal Olaniyi Babafemi. Ordered by Magistrate Judge Viktor V. Pohorelsky on 2/21/2013. (Marziliano, August) (Entered: 03/14/2013) |
| 02/27/2013 | 2 | NOTICE OF ATTORNEY APPEARANCE Hilary Ley Jager appearing for USA. (Marziliano, August) (Entered: 02/27/2013) |
| 02/27/2013 | 3 | LIMITED Order to Unseal Document as to Lawal Olaniyi Babafemi. 1 Indictment (Sealed). Ordered by Magistrate Judge Viktor V. Pohorelsky on 2/21/2013. (Marziliano, August) (Main Document 3 replaced on 2/27/2013) (Marziliano, August). (Entered: 02/27/2013) |
| 03/12/2013 | 5 | LIMITED UNSEALING ORDER as to Lawal Olaniyi Babafemi, the information previously ordered sealed may be unsealed for the limited purpose of disseminating the information to relevant U.S., foreign, or intergovernmental authorities.. Ordered by Magistrate Judge Lois Bloom on 3/12/2013. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Application, # 2 Sealing Cover Sheet) (Piper, Francine) (Entered: 03/14/2013) |
| 08/28/2013 | 6 | Order to Unseal Indictment and Arrest Warrant as to Lawal Olaniyi Babafemi.. Ordered by Magistrate Judge Vera M. Scanlon on 8/27/2013. (Piper, Francine) (Entered: 08/29/2013) |
| 09/27/2013 | 11 | Minute Entry for proceedings held before Judge John Gleeson:Arraignment as to Lawal Olaniyi Babafemi (1) Count 1-2,3,4 held on 9/27/2013, Initial Appearance as to Lawal Olaniyi Babafemi held on 9/27/2013, Status Conference as to Lawal Olaniyi Babafemi held on 9/27/2013, Plea entered by Lawal Olaniyi Babafemi (1) Count 1-2,3,4. by Lawal Olaniyi Babafemi Not Guilty to all counts. Order of Speedy Trial entered, Code XT, Start 9/27/13 - Stop 10/30/13. Order of Detention pending trial entered. The parties are beginning discover and negotiations. The court has designated this case as complex for speedy trial purposes. ( Status Conference set for 10/30/2013 11:30 AM in Courtroom 6C South before Judge John Gleeson.) AUSA Zainab Ahmad; Defense Counsel, Lisa Hoyes. (Court Reporter Mary Agnes Drury.) (Piper, Francine) (Entered: 10/03/2013) |
| 09/27/2013 | 12 | CJA 23 Financial Affidavit by Lawal Olaniyi Babafemi (Piper, Francine) (Entered: 10/03/2013) |
| 09/27/2013 | 13 | ORDER OF DETENTION PENDING TRIAL as to Lawal Olaniyi Babafemi. Ordered by Judge John Gleeson on 9/27/13. (Piper, Francine) (Entered: 10/07/2013) |
| 09/27/2013 | 15 | Arrest Warrant Returned Executed on 9/27/13. in case as to Lawal Olaniyi Babafemi. (Piper, Francine) (Entered: 10/17/2013) |
| 09/30/2013 | | Order to Unseal the entire case as to Lawal Olaniyi Babafemi. Ordered by Judge John Gleeson on 9/30/2013. (Lee, Ilene) (Entered: 09/30/2013) |
| 09/30/2013 | 7 | Letter *by the government enclosing Rule 16 discovery* as to Lawal Olaniyi Babafemi (Ahmad, Zainab) (Entered: 09/30/2013) |
| 10/01/2013 | 8 | NOTICE OF ATTORNEY APPEARANCE: Lisa Hoyes appearing for Lawal Olaniyi Babafemi (Hoyes, Lisa) (Entered: 10/01/2013) |
| 10/01/2013 | 9 | NOTICE OF ATTORNEY APPEARANCE: Chase A. Scolnick appearing for Lawal Olaniyi Babafemi (Scolnick, Chase) (Entered: 10/01/2013) |
| 10/02/2013 | 10 | STIPULATION AND ORDER, Regarding Protective Order as to Lawal Olaniyi Babafemi. Ordered by Judge John Gleeson on 10/2/2013. (Piper, Francine) (Entered: 10/02/2013) |
| 10/08/2013 | 14 | Letter *by the government enclosing Rule 16 discovery* as to Lawal Olaniyi Babafemi (Ahmad, Zainab) (Entered: 10/08/2013) |
| 10/17/2013 | 16 | NOTICE OF ATTORNEY APPEARANCE William M. Narus appearing for USA. (Narus, William) (Entered: 10/17/2013) |
| 10/25/2013 | 17 | Letter *by the government enclosing Rule 16 discovery* as to Lawal Olaniyi Babafemi (Ahmad, Zainab) (Entered: 10/25/2013) |
| | | |

| 10/25/2013 | 18 | Letter *by the government enclosing Rule 16 discovery* as to Lawal Olaniyi Babafemi (Ahmad, Zainab) (Entered: 10/25/2013) |
|---|---|---|
| 10/30/2013 | | Minute Entry for proceedings held before Judge John Gleeson: Case called. Defendant Lawal Olaniyi Babafemi, in custody, appears with counsel Lisa Hoyes, Esq. AUSA Zainab Ahmad and AUSA William M. Narus appears for the government. Status Conference as to Lawal Olaniyi Babafemi held on 10/30/2013. The parties are still in discovery negotiations. The next Status Conference is set for January 6, 2014 at 10:30 AM in courtroom 6C South before Judge John Gleeson. The speedy trial time is excluded until the next conference date. (Court Reporter Gene Rudolph.) (Lee, Ilene) (Entered: 10/30/2013) |
| 01/03/2014 | 19 | PRETRIAL MEMORANDUM *of Law in Support of Motion for a Pretrial Conference Pursuant to CIPA* as to Lawal Olaniyi Babafemi (Ahmad, Zainab) (Entered: 01/03/2014) |
| 01/06/2014 | | Minute Entry for proceedings held before Judge John Gleeson: Case called. Defendant Lawal Olaniyi Babafemi, in custody, appears with counsel Lisa Hoyes, Esq. AUSA William M. Narus and AUSA Daniel S. Silver appear for the government. Status Conference as to Lawal Olaniyi Babafemi held on 1/6/2014. The parties are still in discovery and negotiations. The government's CIPA section 4 application is to be filed by 2/28/2014. The defendant's objection to an ex parte section 4 filing shall be briefed as: Motion due by 1/31/14; Opposition due by 2/14/14; and the Reply is due by 2/21/14. The next Status Conference is set for March 7, 2014 t 12:30 PM in courtroom 6C South before Judge John Gleeson. The speedy trial time is excluded since the case has been designated complex. (Court Reporter Lisa Schmid.) (Lee, Ilene) (Entered: 01/06/2014) |
| 01/06/2014 | | SCHEDULING ORDER as to Lawal Olaniyi Babafemi: It occurs to the Court that we need a trial date we can all plan around. Accordingly, jury selection and trial is scheduled for June 16, 2014, at 9:30 AM. Ordered by Judge John Gleeson on 1/6/2014. (Herling, Adam) (Entered: 01/06/2014) |
| 01/31/2014 | 20 | PRETRIAL MEMORANDUM *Opposing Government's Request to File CIPA Application Ex Parte* as to Lawal Olaniyi Babafemi (Hoyes, Lisa) (Entered: 01/31/2014) |
| 02/07/2014 | | NOTICE OF Change in date for the Status Conference as to Lawal Olaniyi Babafemi due to Court related matters. The new Status Conference date is now rescheduled for Thursday, March 6, 2014 at 10:30 AM in courtroom 6C South before Judge John Gleeson. (Lee, Ilene) (Entered: 02/07/2014) |
| 02/14/2014 | 21 | MOTION in Limine *to permit government to file CIPA Section 4 motion ex parte, responding to defense submission of 1/31/14* by USA as to Lawal Olaniyi Babafemi. (Ahmad, Zainab) (Entered: 02/14/2014) |
| 02/24/2014 | 22 | Letter *to the Court requesting ex parte conference regarding CIPA briefing and classified discovery* as to Lawal Olaniyi Babafemi (Jager, Hilary) (Entered: 02/24/2014) |
| 02/24/2014 | | ORDER: The government's 22 letter request for an *ex parte* conference is |

| | | |
|---|---|---|
| | | granted. The conference will be held on February 25, 2014, at 2:30 PM in chambers, Room 727 South. Ordered by Judge John Gleeson on 2/24/2014. (Herling, Adam) (Entered: 02/24/2014) |
| 02/25/2014 | | ORDER: The government's 21 motion for permission to file its CIPA Section 4 motion *ex parte* for *in camera* review is granted over the defendant's objection. The defendant's requests for alternative relief are denied except the defendant may file an *ex parte* submission regarding how classified material may be helpful and material to the defense. Ordered by Judge John Gleeson on 2/25/2014. (Herling, Adam) (Entered: 02/25/2014) |
| 02/25/2014 | | ORDER: Based on an *ex parte* on the record application, the government's time to file their CIPA Section 4 application is extended until March 21, 2014. In light of this extension, the status conference originally scheduled for March 7, 2014, is adjourned until March 27, 2014, at 3:00 PM in Courtroom 6C South. Because the *ex parte* application relates to matters of national security, the transcript is ordered sealed. Ordered by Judge John Gleeson on 2/25/2014. (Herling, Adam) (Entered: 02/25/2014) |
| 03/25/2014 | | NOTICE OF Change in time for the Status Conference as to Lawal Olaniyi Babafemi. The date remains set for Thursday, March 27, 2014, but the time is now changed to 12:30 PM in courtroom 6C South before Judge John Gleeson. (Lee, Ilene) (Entered: 03/25/2014) |
| 03/27/2014 | 23 | MOTION for Protective Order *pursuant to CIPA* by USA as to Lawal Olaniyi Babafemi. (Attachments: # 1 Exhibit) (Jager, Hilary) (Entered: 03/27/2014) |
| 03/27/2014 | | Minute Entry for proceedings held before Judge John Gleeson: Case called. Defendant Lawal Babafemi, in custody, appears with counsel Lisa Hoyes, Esq. AUSA Zainab Ahmad and AUSA Hilary Jager appear for the government. Status Conference as to Lawal Olaniyi Babafemi held on 3/27/2014. Discovery and CIPA filings are almost completed. The following briefing schedule was given: Defendant's Motion(s) due by 5/9/14; Opposition due by 5/23/14; Reply due by 5/30/14. An evidentiary hearing is scheduled on June 19, 2014 at 9:30 AM in courtroom 6C South before Judge John Gleeson. In light of this motion schedule, the Jury Selection and Trial date is now adjourned to July 14, 2014 at 9:30 AM in courtroom 6C South before Judge John Gleeson. The speedy trial time is excluded until the next hearing date. (Court Reporter Ronald Tolkin.) (Lee, Ilene) (Entered: 03/27/2014) |
| 04/07/2014 | 24 | MOTION for Disclosure *of Grand Jury Transcripts* by Lawal Olaniyi Babafemi. (Scolnick, Chase) (Entered: 04/07/2014) |
| 04/08/2014 | | ORDER: The government shall respond to the defendant's 24 motion for disclosure of grand jury transcripts by April 11, 2014. Defendant's reply, if any, shall be filed by April 15, 2014. Ordered by Judge John Gleeson on 4/8/2014. (Herling, Adam) (Entered: 04/08/2014) |
| 04/09/2014 | 25 | MOTION for Protective Order *pursuant to CIPA Section 3* by USA as to Lawal Olaniyi Babafemi. (Attachments: # 1 Proposed Order, # 2 Exhibit) (Jager, Hilary) (Entered: 04/09/2014) |
| 04/11/2014 | 26 | RESPONSE in Opposition re 24 MOTION for Disclosure *of Grand Jury* |

| | | |
|---|---|---|
| | | *Transcripts* (Ahmad, Zainab) (Entered: 04/11/2014) |
| 04/14/2014 | 27 | Protective Order as to Lawal Olaniyi Babafemi (1). Ordered by Judge John Gleeson on 4/10/2014. (Piper, Francine) (Entered: 04/14/2014) |
| 04/14/2014 | 28 | MOTION for Extension of Time to File *Motions* by Lawal Olaniyi Babafemi. (Hoyes, Lisa) (Entered: 04/14/2014) |
| 04/15/2014 | 29 | REPLY TO RESPONSE to Motion re 24 MOTION for Disclosure *of Grand Jury Transcripts* (Scolnick, Chase) (Entered: 04/15/2014) |
| 04/16/2014 | 30 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Lawal Olaniyi Babafemi held on March 27, 2014, before Judge Gleeson. Court Reporter/Transcriber Ronald E. Tolkin, Official Court Reporter, Telephone number 718-613-2647. Email address: ronald_tolkin@nyed.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/7/2014. Redacted Transcript Deadline set for 5/19/2014. Release of Transcript Restriction set for 7/15/2014. (Tolkin, Ronald) (Entered: 04/16/2014) |
| 04/17/2014 | | ORDER granting 28 Motion for Extension of Time to File: The following briefing schedule will apply for defendant's motions. The motions are due by May 23, 2014; the government's opposition is due by June 6, 2014; defendant's reply, if any, is due by June 13, 2014. An evidentiary hearing will be held on June 20, 2014, at 9:30 AM in courtroom 6C South. Ordered by Judge John Gleeson on 4/17/2014. (Herling, Adam) (Entered: 04/17/2014) |
| 04/18/2014 | | ORDER: The defendant's 24 motion for an order unsealing the general instructions to the grand jury that indicted him is denied. Ordered by Judge John Gleeson on 4/18/2014. (Herling, Adam) (Entered: 04/18/2014) |
| 04/18/2014 | 31 | ORDER: For the reasons explained in the attached Memorandum and Order, the government's 23 Motion for Protective Order is granted. Ordered by Judge John Gleeson on 4/18/2014. (Herling, Adam) (Entered: 04/18/2014) |
| 04/29/2014 | 32 | Minute Entry for proceedings held before Judge John Gleeson:Change of Plea Hearing as to Lawal Olaniyi Babafemi held on 4/29/2014, Plea entered by Lawal Olaniyi Babafemi (1) Guilty Count 1-2., ( Sentencing set for 8/27/2014 03:30 PM in Courtroom 6C South before Judge John Gleeson.) AUSA Zainab Ahmad, Hilary L. Jager and William Narus. Defense Counsel, Lisa Hoyes and Chase Scolnick. (Court Reporter Allan Sherman.) (Piper, Francine) (Entered: 04/30/2014) |
| 08/14/2014 | 34 | MOTION to Continue Sentencing by Lawal Olaniyi Babafemi. (Hoyes, Lisa) (Entered: 08/14/2014) |
| 08/15/2014 | | ORDER granting 34 Motion to Continue Sentencing as to Lawal Olaniyi Babafemi (1). The sentencing date is now set for November 14, 2014 at 3:00 PM in Courtroom 6C South before Judge John Gleeson. Ordered by Judge John Gleeson on 8/15/2014. (Lee, Ilene) (Entered: 08/15/2014) |
| 10/20/2014 | 35 | MOTION to Continue Sentencing by Lawal Olaniyi Babafemi. (Hoyes, Lisa) |

| | | |
|---|---|---|
| | | (Entered: 10/20/2014) |
| 10/21/2014 | | ORDER granting <u>35</u> Motion to Continue Sentencing as to Lawal Olaniyi Babafemi (1). The sentencing date is set for January 9, 2015 at 2:30 PM in Courtroom 6C South before Judge John Gleeson. Ordered by Judge John Gleeson on 10/21/2014. (Lee, Ilene) (Entered: 10/21/2014) |
| 12/18/2014 | <u>36</u> | Final MOTION to Continue Sentencing by Lawal Olaniyi Babafemi. (Hoyes, Lisa) (Entered: 12/18/2014) |
| 12/22/2014 | | ORDER granting <u>36</u> Motion to Continue Sentencing as to Lawal Olaniyi Babafemi (1): The sentencing date is now set for Thursday, January 22, 2015, at 3:00 PM in Courtroom 6C South before Judge John Gleeson. Ordered by Judge John Gleeson on 12/22/2014. (Levin, Sarah) (Entered: 12/22/2014) |
| 01/09/2015 | <u>37</u> | SENTENCING MEMORANDUM by Lawal Olaniyi Babafemi (Attachments: # <u>1</u> Exhibit B: psychological evaluation, # <u>2</u> Exhibit C: letter from Mr. Babafemi, # <u>3</u> Exhibit D: letter from Adenike Toyyibah Lawal, # <u>4</u> Exhibit E: statement of Ahmad Lawal, # <u>5</u> Exhibit F: statement of Bolatito Obakemi, # <u>6</u> Exhibit G: statement of Mrs. Alhaja Modupe Lawal, # <u>7</u> Exhibit H: statement of Tosin Olykoya, # <u>8</u> Exhibit I: statement of Ibrahim Bornidele, # <u>9</u> Exhibit J: statement of Abdul Waheed Iwaloye, # <u>10</u> Exhibit K: letter from Nasrul-Lahi-Il-Fathi Society of Nigeria, # <u>11</u> Exhibit L: Inmate Work Performance Rating, # <u>12</u> Exhibit M: medical records, # <u>13</u> Exhibit N: Nigerian court document, # <u>14</u> Exhibit O: Nigerian court document) (Hoyes, Lisa) (Entered: 01/09/2015) |
| 01/15/2015 | <u>38</u> | MOTION for Extension of Time to File *Sentencing Memorandum* by USA as to Lawal Olaniyi Babafemi. (Jager, Hilary) (Entered: 01/15/2015) |
| 01/16/2015 | | ORDER granting <u>38</u> Motion for Extension of Time to File as to Lawal Olaniyi Babafemi: The government's sentencing memorandum shall now be due on or before Friday, January 23, 2015. The sentencing date is adjourned to January 30, 2015, at 3:30 p.m. in Courtroom 6C South. Ordered by Judge John Gleeson on 1/16/2015. (Levin, Sarah) (Entered: 01/16/2015) |
| 01/22/2015 | <u>39</u> | Second MOTION for Extension of Time to File *Sentencing Memorandum* by USA as to Lawal Olaniyi Babafemi. (Jager, Hilary) (Entered: 01/22/2015) |
| 01/23/2015 | | ORDER granting <u>39</u> Motion for Extension of Time to File as to Lawal Olaniyi Babafemi: The government's sentencing memorandum shall be due on or before Friday, February 27, 2015. The sentencing date is adjourned to Friday, March 6, 2015, at 2:00 p.m. in Courtroom 6C South. Ordered by Judge John Gleeson on 1/23/2015. (Levin, Sarah) (Entered: 01/23/2015) |
| 02/25/2015 | <u>40</u> | Third MOTION for Extension of Time to File Response/Reply *regarding Sentencing* by USA as to Lawal Olaniyi Babafemi. (Jager, Hilary) (Entered: 02/25/2015) |
| 02/26/2015 | | ORDER: The government's motion <u>40</u> is granted. The government shall file its sentencing memorandum on or before April 24, 2015. The sentencing will now take place on April 30, 2015. Ordered by Judge John Gleeson on 2/26/2015. (Ross, Peter) (Entered: 02/26/2015) |
| 04/30/2015 | <u>42</u> | SENTENCING MEMORANDUM by USA as to Lawal Olaniyi Babafemi |

| | | (Attachments: # 1 Exhibit A) (Jager, Hilary) (Entered: 04/30/2015) |
|---|---|---|
| 05/11/2015 | 43 | MOTION to Continue Sentencing by Lawal Olaniyi Babafemi. (Hoyes, Lisa) (Entered: 05/11/2015) |
| 05/12/2015 | | ORDER granting 43 Motion to Continue Sentencing as to Lawal Olaniyi Babafemi. The sentencing date is adjourned to Friday, July 17, 2015, at 2:00 p.m. in Courtroom 6C South. Ordered by Judge John Gleeson on 5/12/2015. (Levin, Sarah) (Entered: 05/12/2015) |
| 05/20/2015 | 44 | Letter as to Lawal Olaniyi Babafemi from Stephanie Clifford (New York Times) to Judge Gleeson, requesting that the court unseal dft's sentencing memorandum. (Piper, Francine) (Entered: 05/21/2015) |
| 05/22/2015 | | ORDER TO SHOW CAUSE as to Lawal Olaniyi Babafemi: The defendant is directed to show cause in writing on or before Friday, June 5, 2015, why the May 20, 2015 application 44 to unseal Babafemi's sentencing memorandum 37 should not be granted. If the defendant believes that part of the memorandum should be redacted, he should indicate the portion(s) to be redacted and the reasons for the proposed redaction(s). Ordered by Judge John Gleeson on 5/22/2015. (Levin, Sarah) (Entered: 05/22/2015) |
| 06/08/2015 | 45 | RESPONSE TO ORDER TO SHOW CAUSE by Lawal Olaniyi Babafemi (Attachments: # 1 proposed redactions part A, # 2 proposed redactions part B) (Hoyes, Lisa) (Entered: 06/08/2015) |
| 06/09/2015 | | ORDER: In a sealed submission dated June 5, 2015, the defendant has agreed to unseal his sentencing memorandum subject to redactions of certain "sensitive portions." The defendant is directed to file a copy of the memorandum with the proposed redactions on the public docket. Ms. Clifford may respond in writing, if she wishes, on or before Friday, June 12, 2015. Whether she responds or not, oral argument on the application 44 will be held on Friday, June 19, 2015, at 4:00 p.m. in Courtroom 6C South. Ordered by Judge John Gleeson on 6/9/2015. (Levin, Sarah) (Entered: 06/09/2015) |
| 06/10/2015 | | ORDER: Oral argument on the application to unseal the defendant's sentencing memorandum 44 is changed to Thursday, June 18, 2015, at 12:30 p.m. in Courtroom 6C South. Ordered by Judge John Gleeson on 6/10/2015. (Levin, Sarah) (Entered: 06/10/2015) |
| 06/11/2015 | 46 | SENTENCING MEMORANDUM by Lawal Olaniyi Babafemi (Attachments: # 1 Exhibit B: psychological evaluation, # 2 Exhibit C: statement from Mr. Babafemi, # 3 Exhibit D: letter from Adenike Toyyibah Lawal, # 4 Exhibit E: statement from Ahmad Lawal, # 5 Exhibit F: statement from Bolatito Obakemi, # 6 Exhibit G: statement from Mrs. Alhaja Modupe Lawal, # 7 Exhibit H: statement from Tosin Olykoya, # 8 Exhibit I: statement from Ibrahim Bornidele, # 9 Exhibit J: statement from Abdul Waheed Iwaloye, # 10 Exhibit K: letter from religious organization, # 11 Exhibit L: MCC work performance evaluation, # 12 Exhibit M: blood test report, # 13 Exhibit N: Nigerian court document, # 14 Exhibit O: Nigerian court document) (Hoyes, Lisa) (Entered: 06/11/2015) |
| 06/12/2015 | 47 | Letter *Opposing Sealing* as to Lawal Olaniyi Babafemi (McCraw, David) |

| | | |
|---|---|---|
| | | (Entered: 06/12/2015) |
| 06/17/2015 | 48 | Letter *submitting affidavit in support of request for redactions* as to Lawal Olaniyi Babafemi (Attachments: # 1 Affidavit) (Hoyes, Lisa) (Entered: 06/17/2015) |
| 06/18/2015 | | Minute Entry for proceedings held before Judge John Gleeson: Case called. Defendant Lawal Olaniyi Babafemi, in custody, appears with counsel Lisa Hoyes, Esq.. AUSA Zainab Ahmad appears for the government. David McCraw and Jeremy Kutner appear on behalf of the New York Times Company. Oral Argument as to Lawal Olaniyi Babafemi held on 6/18/2015 regarding the New York Times Company's motion to unseal the defendant's sentencing submission 44 . The Court's decision is reserved and will be filed via ECF separately. (Court Reporter Anthony Frisolone.) (Lee, Ilene) (Entered: 06/18/2015) |
| 06/18/2015 | | ORDER: The application in the government's letter 49 is granted. Ordered by Judge John Gleeson on 6/18/2015. (Levin, Sarah) (Entered: 06/18/2015) |
| 06/25/2015 | 50 | Letter *in support of New York Times's Unsealing Application* as to Lawal Olaniyi Babafemi (Attachments: # 1 Exhibit 1) (Ahmad, Zainab) (Entered: 06/25/2015) |
| 06/25/2015 | 51 | Letter *containing redacted version of Doc 50, letter in support of New York Times's Unsealing Application* as to Lawal Olaniyi Babafemi (Ahmad, Zainab) (Entered: 06/25/2015) |
| 06/29/2015 | 52 | Letter *regarding briefing schedule* as to Lawal Olaniyi Babafemi (Hoyes, Lisa) (Entered: 06/29/2015) |
| 06/29/2015 | 53 | MOTION to Continue Sentencing by Lawal Olaniyi Babafemi. (Hoyes, Lisa) (Entered: 06/29/2015) |
| 06/30/2015 | | ORDER granting 53 Motion to Continue Sentencing as to Lawal Olaniyi Babafemi. The sentencing is adjourned to Wednesday, August 12, 2015, at 2:00 p.m. in Courtroom 6C South. Ordered by Judge John Gleeson on 6/30/2015. (Levin, Sarah) (Entered: 06/30/2015) |
| 06/30/2015 | | ORDER: The defendant's request in the letter dated June 29, 2015 52 is granted. Ordered by Judge John Gleeson on 6/30/2015. (Levin, Sarah) (Entered: 06/30/2015) |
| 07/02/2015 | 54 | MOTION for Extension of Time to File *Response and Reply* by Lawal Olaniyi Babafemi. (Hoyes, Lisa) (Entered: 07/02/2015) |
| 07/06/2015 | | ORDER granting 54 Motion for Extension of Time to File as to Lawal Olaniyi Babafemi. Ordered by Judge John Gleeson on 7/6/2015. (Levin, Sarah) (Entered: 07/06/2015) |
| 07/13/2015 | 55 | Letter *in reply to government's letter opposing sealing* as to Lawal Olaniyi Babafemi (Hoyes, Lisa) (Entered: 07/13/2015) |
| 07/13/2015 | 56 | Letter *documenting classified filing* as to Lawal Olaniyi Babafemi (Hoyes, Lisa) (Entered: 07/13/2015) |

Case 1:13-cr-00109-BMC7,Document 66, 05/04/2017, 2632972, Page 126 of 133 PageID #: 765

| 07/16/2015 | 57 | Letter *supplementing classified letter filed on July 13, 2015* as to Lawal Olaniyi Babafemi (Hoyes, Lisa) (Entered: 07/16/2015) |
|---|---|---|
| 08/11/2015 | | ORDER as to Lawal Olaniyi Babafemi: Before the Court is the New York Times's application to unseal the defendant's sentencing memorandum 44 . I conclude that the defendant has failed to establish a substantial probability that the unsealing of the redacted portions of his sentencing memorandum will result in prejudice to the compelling interest he advances that does not already exist. *See United States v. Zazi*, No. 09-CR-663 (RJD), 2010 WL 2710605, at *2 (E.D.N.Y. June 30, 2010) (setting forth standard articulated in *United States v. Doe*, 63 F.3d 121, 128 (2d Cir. 1995)). Accordingly, with the exception of the psychological evaluation itself, which may remain under seal pending further order of the Court, the defendant is directed to file an unredacted version of his sentencing memorandum by no later than 11:00 am tomorrow. In addition, the government is directed to file an unredacted version of its own sentencing memorandum immediately after the defendant files his. Ordered by Judge John Gleeson on 8/11/2015. (Levin, Sarah) (Entered: 08/11/2015) |
| 08/11/2015 | 58 | SENTENCING MEMORANDUM by Lawal Olaniyi Babafemi (Attachments: # 1 Exhibit B: psychological evlauation (redacted), # 2 Exhibit C: statement from Mr. Babafemi, # 3 Exhibit D: letter from Adenike Toyyibah Lawal, # 4 Exhibit E: statement from Ahmad Lawal, # 5 Exhibit F: statement from Bolatito Obakemi, # 6 Exhibit G: statement from Mrs. Alhaja Modupe Lawal, # 7 Exhibit H: statement from Tosin Olykoya, # 8 Exhibit I: statement from Ibrahim Bornidele, # 9 Exhibit J: statement from Abdul Waheed Iwaloye, # 10 Exhibit K: letter from religious organization, # 11 Exhibit L: MCC work performance evaluation, # 12 Exhibit M: blood test report, # 13 Exhibit N: Nigerian court document, # 14 Exhibit O: Nigerian court document) (Hoyes, Lisa) (Entered: 08/11/2015) |
| 08/11/2015 | 59 | SENTENCING MEMORANDUM by USA as to Lawal Olaniyi Babafemi (Jager, Hilary) (Entered: 08/11/2015) |
| 08/12/2015 | 60 | Minute Entry for proceedings held before Judge John Gleeson:Sentencing held on 8/12/2015 for Lawal Olaniyi Babafemi (1), Count(s) 1, 2, Dft to be imprisoned for a term of 15 years on Count One and 7 years on Count Two to run consecutively on each count, totaling 22 years of incarceration. It is the court's understanding that the dft will be given credit for time served since August 19, 2011 in Nigeria. The court recommends to the bureau of prisons for incarceration at an FCI that is at the most minimal level as deemed appropriate by the bureau of prisons. No term of supervised release. Special Assessment of $200.00.; Count(s) 3, 4, All open counts dismissed on the motion of the U.S AUSA Zainab Ahmad; Defense Counsel, Lisa Hoyes. (Court Reporter Fred Guerino.) (Piper, Francine) (Entered: 08/17/2015) |
| 08/13/2015 | | ORDER: The court spoke to Adam Johnson today from the MCC regarding the defendant's request for updates on and treatment for his medical condition as discussed at his sentencing proceeding on August 12, 2015. Mr. Johnson reported that he will have the defendant seen by a doctor as soon as possible, and hopefully today. Mr. Johnson will also update the court in writing on or before Wednesday, August 19, 2015, as to the defendant's medical condition and the plan for treatment. Ordered by Judge John Gleeson on 8/13/2015. |

Case 1:13-cr-00109-BMC, Document 66, Filed 04/07/2032, Page 127 of 133 PageID #: 766

| | | |
|---|---|---|
| | | (Levin, Sarah) (Entered: 08/13/2015) |
| 08/17/2015 | 61 | JUDGMENT as to Lawal Olaniyi Babafemi (1), Count(s) 1, 2, Dft to be imprisoned for a term of 15 years on Count One and 7 years on Count Two to run consecutively on each count, totaling 22 years of incarceration. It is the court's understanding that the dft will be given credit for time served since August 19, 2011 in Nigeria. The court recommends to the bureau of prisons for incarceration at an FCI that is at the most minimal level as deemed appropriate by the bureau of prisons. No term of supervised release. Special Assessment of $200.00.; Count(s) 3, 4, All open counts dismissed on the motion of the U.S.Ordered by Judge John Gleeson on 8/14/2015. (Piper, Francine) (Entered: 08/17/2015) |
| 08/20/2015 | | ORDER as to Lawal Olaniyi Babafemi: The Court has received a report from the MCC regarding Babafemi's medical condition and treatment plan, which will be filed under seal. In light of the report, it does not appear that relief from the Court is warranted. If Babafemi feels differently, he should notify the Court accordingly, and he should also notify the MCC. Ordered by Judge John Gleeson on 8/20/2015. (Levin, Sarah) (Entered: 08/20/2015) |

**United States Court of Appeals for the Second Circuit**
**Thurgood Marshall U.S. Courthouse**
**40 Foley Square**
**New York, NY 10007**

**ROBERT A. KATZMANN**
CHIEF JUDGE

**CATHERINE O'HAGAN WOLFE**
CLERK OF COURT

**Distribution of Instructions & Forms for Pro Se / Prisoner Parties**

**Second/Successive Petition Filed**

_X__ Acknowledgment and Notice of Appearance

_X__ Docketing Notice

_X__ Docket Report

_X__ T-1080 Form

_X__ How to Appeal as a Pro Se Party

_X__ How to file a Habeas Corpus Petition

_X__ Appropriate Application:(2254 or 2255)

_X__ Certificate of Service

_X__ Form 6 Certificate of compliance

_X__ Form 7 Declaration of Inmate Filing

NOTICE OF APPEARANCE FOR SUBSTITUTE, ADDITIONAL, OR AMICUS COUNSEL

Short Title: _____ BABAFEMI v. USA _____ Docket No.: __ 20-1477 __

SUBSTITUTE, Additional, or Amicus Counsel's Contact Information is as follows:

Name: ___ MARK E. MISOREK, Assistant United States Attorney ___

Firm: ___ United States Attorney's Office, Eastern District of New York ___

Address: ___ 610 Federal Plaza, Central Islip, New York 11722 ___

Telephone: ___ 631-715-7874 ___ Fax: _____

E-mail: ___ Mark.Misorek@usdoj.gov ___

Appearance for: ___ Respondent ___
_____(party/designation)

Select One:

[✓] Substitute counsel (replacing lead counsel: __ DAVID C. JAMES, United States Attorney's Office, Eastern District of New York __)
_____(name/firm)

[ ] Substitute counsel (replacing other counsel: _____)
_____(name/firm)

[ ] Additional counsel (co-counsel with: _____)
_____(name/firm)

[ ] Amicus (in support of : _____)
_____(party/designation)

## CERTIFICATION

I certify that:

[✓] I am admitted to practice in this Court and, if required by Interim Local Rule 46.1(a)(2), have renewed

my admission on _____ OR

[ ] I applied for admission on _____ .

Signature of Counsel: ___ /s/ ___

Type or Print Name: ___ MARK E. MISOREK ___

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

_Lawal Olaniyi Babafemi_ v.

_United States of America_

**CERTIFICATE OF SERVICE**
Docket Number: _____20-1477_____

I, _____Mark E. Misorek_____, hereby certify under penalty of perjury that on
(name)
_____May 11, 2020_____, I served a copy of _____
(date)
_____a Notice of Appearance for Substitute Counsel Form_____
(list all documents)

by (select all applicable)*

- [✓] United States Mail
- [ ] Federal Express
- [ ] Overnight Mail
- [ ] Facsimile
- [ ] E-mail
- [ ] Hand delivery

on the following parties (complete all information and add additional pages as necessary):

Lawal Olaniyi Babafemi (Reg. No. 82814-053), FCI Allenwood (Low), P.O. Box 1000, White Deer, PA 17887

| Name | Address | City | State | Zip Code |
|------|---------|------|-------|----------|
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |

_____05/11/20_____            _____/s/_____
Today's Date                              Signature

*If different methods of service have been used on different parties, please indicate on a separate
page, the type of service used for each respective party.

Certificate of Service Form

E.D.N.Y. – Bklyn
13-cr-109
Gleeson, J.

# United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

_____

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of June, two thousand twenty.

Present:
> Richard J. Sullivan,
> Michael H. Park,
> William J. Nardini,
> _Circuit Judges_.

_____

Lawal Olaniyi Babafemi, AKA Abdullah, AKA Ayatollah Mustapha,

> _Petitioner_,

v.                                                                                        20-1477

United States of America,

> _Respondent_.

_____

Petitioner moves for leave to file a successive 28 U.S.C. § 2255 motion.   Upon due consideration, it is hereby ORDERED that the motion is DENIED as unnecessary.   The proposed § 2255 motion would not be successive because Petitioner has not filed a prior § 2255 motion.   _See Hom Sui Ching v. United States_, 298 F.3d 174, 177 (2d Cir. 2002) ("[F]or a petition to be second or successive within the meaning of [AEDPA], it must at a minimum be filed subsequent to the conclusion of a proceeding that counts as the first." (internal quotation marks omitted)).

It is further ORDERED that the case is TRANSFERRED to the district court for "whatever further action the district court finds appropriate."   _Whab v. United States_, 408 F.3d 116, 119 (2d Cir. 2005); 28 U.S.C. § 1631.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court



E.D.N.Y. – Bklyn
13-cr-109
Gleeson, J.

# United States Court of Appeals

FOR THE
SECOND CIRCUIT

————————

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of June, two thousand twenty.

Present:

      Richard J. Sullivan,
      Michael H. Park,
      William J. Nardini,
         *Circuit Judges.*

_____

Lawal Olaniyi Babafemi, AKA Abdullah, AKA Ayatollah Mustapha,

         *Petitioner*,

      v.                                  20-1477

United States of America,

         *Respondent*.

_____

Petitioner moves for leave to file a successive 28 U.S.C. § 2255 motion. Upon due consideration, it is hereby ORDERED that the motion is DENIED as unnecessary. The proposed § 2255 motion would not be successive because Petitioner has not filed a prior § 2255 motion. *See Hom Sui Ching v. United States*, 298 F.3d 174, 177 (2d Cir. 2002) ("[F]or a petition to be second or successive within the meaning of [AEDPA], it must at a minimum be filed subsequent to the conclusion of a proceeding that counts as the first." (internal quotation marks omitted)).

It is further ORDERED that the case is TRANSFERRED to the district court for "whatever further action the district court finds appropriate." *Whab v. United States*, 408 F.3d 116, 119 (2d Cir. 2005); 28 U.S.C. § 1631.

A True Copy

Catherine O'Hagan Wolfe, Clerk

United States Court of Appeals, Second Circuit

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

CERTIFIED COPY ISSUED ON 06/04/2020

# MANDATE

## United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of June, two thousand twenty.

Present:

> Richard J. Sullivan,
> Michael H. Park,
> William J. Nardini,
> *Circuit Judges.*

Lawal Olaniyi Babafemi, AKA Abdullah, AKA Ayatollah Mustapha,

> *Petitioner*,

> v.

> 20-1477

United States of America,

> *Respondent*.

Petitioner moves for leave to file a successive 28 U.S.C. § 2255 motion. Upon due consideration, it is hereby ORDERED that the motion is DENIED as unnecessary. The proposed § 2255 motion would not be successive because Petitioner has not filed a prior § 2255 motion. *See Hom Sui Ching v. United States*, 298 F.3d 174, 177 (2d Cir. 2002) ("[F]or a petition to be second or successive within the meaning of [AEDPA], it must at a minimum be filed subsequent to the conclusion of a proceeding that counts as the first." (internal quotation marks omitted)).

It is further ORDERED that the case is TRANSFERRED to the district court for "whatever further action the district court finds appropriate." *Whab v. United States*, 408 F.3d 116, 119 (2d Cir. 2005); 28 U.S.C. § 1631.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

*Catherine O'Hagan Wolfe*

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

*Catherine O'Hagan Wolfe*

## MANDATE ISSUED ON 07/27/2020