Supplemental Affidavit for
Motion pursuant to 28 U.S.C. § 2255

LAWAL BABAFEMI

Background

1. My name is Lawal Babafemi and I am currently incarcerated at Allenwood Low Security Correctional Institution (White Deer, Pennsylvania) with register number 82814-053.

2. I am currently serving a sentence of 22 years pursuant to a judgment rendered on August 17, 2015, by the Hon. John Gleeson in the U.S. District Court for the Eastern District of New York.

3. Judge Gleeson sentenced me after I pleaded guilty to one count each of Conspiracy to Provide Material Support to a Foreign Terrorist Organization and Provision and Attempted Provision of Material Support to a Foreign Terrorist Organization in violation of 18 U.S.C. §§ 2239B(a)(1) and (d).

4. I pleaded guilty on April 29, 2014, pursuant to a plea agreement with the government.

5. On or about April 17, 2020, I submitted a *pro se* motion pursuant to 28 U.S.C. 2255. I submit the instant supplemental affidavit in support of that motion.

6. For the purposes of this motion, I am now represented by Matthew Galluzzo, Esq., who was appointed by this Court pursuant to the Criminal Justice Act.

7. During the proceedings below, I was represented by Lisa Hoyes and Chase Scolnick of the Federal Defenders of New York.

8. There was no direct appeal of the convictions at issue in this motion.

9. There have been no other motions or hearings regarding my instant claims.

10. I now seek vacatur of my conviction and sentence for the reasons set forth in my original *pro se* motion and for the reasons set forth in the supplemental motion accompanying this affidavit.

## Factual Assertions in Support of Motion

11. At the time of my guilty plea, I had very little understanding of my rights as a defendant in the American criminal justice system. I am a native of Nigeria and I have no formal education in the law.

12. Prior to my extradition to the United States, I was held in the custody of Nigerian law enforcement. There, I endured vicious torture over the course of several months by Nigerian officers who sought to make me confess to crimes that I had not committed.

13. My experience in custody in Nigeria made me very fearful of the criminal justice system, and reluctant to oppose the will of the government.

14. I did not knowingly and voluntarily plead guilty to the charges contained in the indictment against me.

15. I have always maintained that I was not guilty of the criminal conduct alleged by the government.

16. I informed my attorneys, the aforementioned Federal Defenders of New York, that I was innocent of these allegations.

17. My attorneys persuaded me to plead guilty against my better judgment and without fully or adequately explaining to me what that meant.

18. When I pleaded guilty, I did not understand that I was admitting to certain criminal conduct described in the indictment and presentence report.

19. When I pleaded guilty, I believed that I would have an opportunity to explain to the judge the true nature, extent, and intent of my actions. My attorneys led me to believe that I would have that opportunity. However, I was not given that opportunity.

20. I did not have sufficient opportunity to review the presentence report prior to it being submitted to the Court. Having since read and reviewed the presentence report, I understand that it contains many errors and factual inaccuracies regarding my alleged criminal conduct.

21. Additionally, my attorneys failed to submit certain objections to the Presentence Report that they should have made based upon the explanation I gave to them about the facts of my case.

22. If I had better understood my rights and the procedures of the criminal justice system, I would not have pleaded guilty. I would have sought to demonstrate my innocence at trial.

23. But for my attorneys' statements that I would have been sentenced to appx. life.

24. I am in fact innocent of these crimes, because I did not knowingly provide material assistance to a foreign terrorist organization or conspire to do so. The true facts are as follows:

25. On or around December 2010, I deported from Sudan in transit with intention to travel to Saudi Arabia and nothing more.

26. During my travels, I layed over in Yemen, on the boader of Saudi Arabia like any other migrant traveling to Saudi Arabia. And I attented the Damaj Institute in Yemen

27. While I was in Yemen, I met a Muslim (Yahya) who encouraged me to travel with him to visit another Institute in Yemen. with no criminal intent whatsoever.

28

28. While I was in Yemen. I was offered money to only send some people from

Page 3 of 9

Nigeria, my native country to Yemen. And I accepted the money and I only agreed to send people from Nigeria to Yemen. I did not have knowledge that these people would be used to engage in any criminal activity whatsoever.

29. I had no knowledge concerning why these people from Yemen were interested in receiving people from Nigeria and I never discussed that purpose with any one before or after I accepted the money.

30. I had no knowledge that the money I received from a man in Yemen, was supplied by a terrorist organization. In fact, I didn't know the man who gave me the money.

31. I did not, at no time, discuss with anyone, in Yemen or otherwise outside of Yemen, any plans to engage in violent jihad against western interest or against any other interest.

Page 4 of 9

32. I only passed through Yemen with intentions of traveling to Saudi Arabia and I neither had intentions to engage in violent jihad against western interest nor did I have knowledge of anyone else engaging in violent jihad against western interest.

33. I did not have knowledge of neither what Inspire magazine was nor what type of information is published

34. When I stayed in Yemen, I did not have knowledge of anyone engaging in or planning to engage in any criminal activity.

35. When I stayed in Yemen, I had no knowledge that I was staying at a alleged "safe houses"

36. When I agreed to send people from Nigeria to Yemen, I did not have knowledge that those people would be used to engage

Page 5 of 9

in any crime whatsoever.

37. When I accepted the money from the man in Yemen, I did not agree to, or did not intend to engage in any crime[s]. I also did not agree to, or intend to persuade anyone, that I agree to send, to engage in any crime[s].

38. I received an email address from the same man which I did not know that gave me the money in Yemen and I did not have knowledge that the email was associated with criminal activity. And I did not intend to engage in any criminal activity with that email address.

39. When I was in Yemen, I did not hear or witness anyone speak of causing harm or devastation to anyone or anything

40. During my travels in Yemen, I was forced to hold a weapon

Page 6 of 9

41. During my stay in Yemen, I never fired a weapon.

42. During my detention and interrogations in Nigeria, I was subjected to series of torture (eg. beating, chained with multiple chains to a gate for a complete Month and subjected to electric shocks) and forced to make false statements.

43. I informed the U.S. Prosecutor, Zainab Ahmad, when she came to Nigeria with other two F.B.I agents, that the statement I wrote at the State Security Services was not true and she acknowledge that fact.

44. I never knowingly posed in a photograph with "AQAP" members in the desert.

45. And the government never produced any evidence that that alleged photograph was the one that appeared in Inspire Magazine.

Page 7 of 9

46. While being detained in Nigeria, I confronted Babatunde and he admitted to me that he was forced to lie to State Security Services (SSS) after they showed him a photograph depicting how I was severely tortured and beaten by the SSS officials. (See The Psychology Clinical Evaluation presented on my case).

47. I did not either have access to or share the email account that Babatunde used to send an email on my behalf.

48. The money I received from the man in Yemen, I used it to invest into a legitimate business in Nigeria. And that was confirmed by the SSS during the investigations.

49. My lawyer, Lisa Hoyes, presented the documents of the plea agreement to me less than one hour before my change of plea hearing. And she advised me to sign the documents, without the proper time to review the documents thoroughly.

50. I informed my trial attorney about the foregoing facts before the plea.

Page 8 of 9

12/14/2020

I, Babafemi Olanrigi Lawal, declare under penalty of perjury that the foregoing is true and correct on this 17th day of December 2020.

_____
Lawal Babafemi

Page 9 of 9

12/14/2020

_M. Cassel_, Case Manager,
Authorized by the Act of July 7,
1955, as amended, to administer
oaths (18 USC 4004)
              10/30/2020

NOTARY

I swear that the foregoing is true,

_[signature]_
Lawal Babafemi

Page _____ of _____

Supplemental Affidavit for
Motion pursuant to 28 U.S.C. § 2255

LAWAL BABAFEMI

Background

1. My name is Lawal Babafemi and I am currently incarcerated at Allenwood Low Security Correctional Institution (White Deer, Pennsylvania) with register number 82814-053.

2. I am currently serving a sentence of 22 years pursuant to a judgment rendered on August 17, 2015, by the Hon. John Gleeson in the U.S. District Court for the Eastern District of New York.

3. Judge Gleeson sentenced me after I pleaded guilty to one count each of Conspiracy to Provide Material Support to a Foreign Terrorist Organization and Provision and Attempted Provision of Material Support to a Foreign Terrorist Organization in violation of 18 U.S.C. §§ 2239B(a)(1) and (d).

4. I pleaded guilty on April 29, 2014, pursuant to a plea agreement with the government.

5. On or about April 17, 2020, I submitted a *pro se* motion pursuant to 28 U.S.C. 2255. I submit the instant supplemental affidavit in support of that motion.

6. For the purposes of this motion, I am now represented by Matthew Galluzzo, Esq., who was appointed by this Court pursuant to the Criminal Justice Act.

7. During the proceedings below, I was represented by Lisa Hoyes and Chase Scolnick of the Federal Defenders of New York.

8. There was no direct appeal of the convictions at issue in this motion.

9. There have been no other motions or hearings regarding my instant claims.

10. I now seek vacatur of my conviction and sentence for the reasons set forth in my original *pro se* motion and for the reasons set forth in the supplemental motion accompanying this affidavit.

Page _____ of _____

Factual Assertions in Support of Motion

11. At the time of my guilty plea, I had very little understanding of my rights as a defendant in the American criminal justice system. I am a native of Nigeria and I have no formal education in the law.

12. Prior to my extradition to the United States, I was held in the custody of Nigerian law enforcement. There, I endured vicious torture over the course of several months by Nigerian officers who sought to make me confess to crimes that I had not committed.

13. My experience in custody in Nigeria made me very fearful of the criminal justice system, and reluctant to oppose the will of the government.

14. I did not knowingly and voluntarily plead guilty to the charges contained in the indictment against me.

15. I have always maintained that I was not guilty of the criminal conduct alleged by the government.

16. I informed my attorneys, the aforementioned Federal Defenders of New York, that I was innocent of these allegations.

17. My attorneys persuaded me to plead guilty against my better judgment and without fully or adequately explaining to me what that meant.

18. When I pleaded guilty, I did not understand that I was admitting to certain criminal conduct described in the indictment and presentence report.

19. When I pleaded guilty, I believed that I would have an opportunity to explain to the judge the true nature, extent, and intent of my actions. My attorneys led me to believe that I would have that opportunity. However, I was not given that opportunity.

20. I did not have sufficient opportunity to review the presentence report prior to it being submitted to the Court. Having since read and reviewed the presentence report, I understand that it contains many errors and factual inaccuracies regarding my alleged criminal conduct.

21. Additionally, my attorneys failed to submit certain objections to the Presentence Report that they should have made based upon the explanation I gave to them about the facts of my case.

22. If I had better understood my rights and the procedures of the criminal justice system, I would not have pleaded guilty. I would have sought to demonstrate my innocence at trial.

23. But for my attorneys' statements that I would have been sentenced to appx. life.

24. I am in fact innocent of these crimes, because I did not knowingly provide material assistance to a foreign terrorist organization or conspire to do so. The true facts are as follows:

25. On or around December 2010, I departed from Sudan in transit with intention to travel to Saudi Arabia and nothing more.

26. During my travels, I laid (sic) over in Yemen, on the boarder of Saudi Arabia like any other migrant traveling to Saudi Arabia. And I attended the Damaj Institite in Yemen.

27. While I was in Yemen, I met a Muslim (Yahya) who encouraged me to travel with him to visit another institute in Yemen with no criminal intent whatsoever.

28. While I was in Yemen, I was offered money to send some people from Nigeria, my native country to Yemen. And I accepted the money and I only agreed to send people from Nigeria to Yemen. I did not have knowledge that these people would be used to engage in any criminal activity whatsoever.

29. I had no knowledge concerning why these people from Yemen were interested in received people from Nigeria and I never discussed that purpose with any one before or after I accepted the money.

30. I had no knowledge that the money I received from a man in Yemen was supplied by a terrorist organization. In fact, I didn't know the man who gave me the money.

31. I did not, at no time, discuss with anyone, in Yemen or otherwise outside of Yemen, any plans to engage in violent jihad against western interest or against any other interest.

32. I only passed through Yemen with intentions of traveling to Saudi Arabia and I neither had intentions to engage in violent jihad against western interests (sic) nor did I have knowledge of anyone else engaging in violent jihad against western interests (sic).

Page _____ of _____

33. I did not have knowledge of neither what Inspire magazine was nor what type of information it published.

34. When I stayed in Yemen, I did not have knowledge of anyone engaging in or planning to engage in any criminal activity.

35. When I stayed in Yemen, I had no knowledge that I was staying at a (sic) alleged "safe houses."

36. When I agreed to send people from Nigeria to Yemen, I did not have knowledge that these people would be used to engaged in any crime whatsoever.

37. When I accepted the money from the man in Yemen, I did not agree to, or did not intend to engage in any crime[s]. I also did not agree to, or intend to persuade anyone, that I agree to send, to engage in any crime[s].

38. I received an email address from the same man which I did not know that gave me the money in Yemen and I did not have knowledge that the email was associated with criminal activity. And I did not intend to engage in any criminal activity with that email address.

39. When I was in Yemen, I did not hear or witness anyone speak of causing harm or devastation to anyone or anything.

40. During my travels to Yemen, I was forced to hold a weapon.

41. During my stay in Yemen, I never fired a weapon.

42. During my detention and interrogations in Nigeria, I was subjected to series of torture (e.g. beating, chained with multiple chains to a gate for a complete month and subjected to electric shocks) and forced to make false confessions.

43. I informed the U.S. prosecutor, Zainab Ahmad, when she came to Nigeria with other two F.B.I. agents, that the statement I wrote for (sic) the State Security Services was not true and she acknowledge[d] (sic) that fact.

44. I never knowingly posed for a photograph with "AQAP" members in the desert.

45. And the government never produced any evidence that that alleged photograph was the one that appeared in Inspire Magazine.

Page _____ of _____

46. While being detained in Nigeria, I confronted Babatunde and he admitted to me that he was forced to lie to State Security Services (SSS) after they showed him a photograph depicting how I was severely tortured and beaten by the SSS officials (see the Psychology Clinical Evaluation presented on my case).

47. I did not either have access to or share the email account that Babatunde used to send an email on my behalf.

48. The money I received from the man in Yemen I used it to invest into a legitimate business in Nigeria and that was confirmed by the SSS during the investigations.

49. My lawyer, Lisa Hoyes, presented the documents of the plea agreement to me less than one hour before my change of plea hearing. And she advised me to sign the documents without the proper time to review the documents thoroughly.

50. I informed my trial attorney about the foregoing facts before the plea.

I Babafemi Olayiyi Lawal, declare under penalty of perjury that the foregoing is true and correct on this 17th day of December 2020.

SIGNED
Lawal Babafe i

Page _____ of _____