UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------x
UNITED STATES OF AMERICA,

          Plaintiff,

                          13 CR 109


      versus        United States Courthouse
                    225 Cadman Plaza East
                    Brooklyn, N.Y.  11201
LAWAL OKANIYI BABAFEMI,

          DEFENDANT.

------------------------------------------x

                    April 29,  2014
                    2:50 p.m.
       TRANSCRIPT OF PLEA
Before:  HON. JOHN GLEESON,

              DISTRICT COURT JUDGE


          APPEARANCES


LORETTA LYNCH
United States Attorney – Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York  11201
BY: HILARY JAGER, ESQ.
   ZAINAB AHMAD, ESQ.
   WILLIAM M. NARUS, ESQ.
Assistant United States Attorneys


ATTORNEY FOR DEFENDANT:

Federal Defender's Office
16 Court Street  Third floor
Brooklyn, New York 11241
BY: CHASE SCOLNICK, ESQ.
   LISA HOYES, ESQ.

Reporter:  ALLAN R. SHERMAN, CSR, RPR
           225 Cadman Plaza East Rm 374
           Brooklyn, New York  11201
        Tel: (718) 613-2529  Fax: (718) 613-2630

Proceedings recorded by mechanical stenography, transcription by CAT.

    ALLAN R. SHERMAN, CSR, RPR  Official Court Reporter
  United States District Court  Eastern District of New York

THE CLERK:  Criminal cause for pleading, United States of America versus Lawal Babafemi, docket number 13 CR 109.

Counsel, please state your appearances for the record.

MS. JAGER:  For the United States, Hilary Jager.

MS. HARRIS:  For the defendant, Federal Defenders by Chase Scolnick and Lisa Hoyes.

MS. JAGER:  Hilly Jager for the United States.  With me is Zainab Ahmad and also Bill Narus from the counter-terrorism section.

MS. HARRIS:  Federal Defenders by Lisa Hoyes.  Also present is Chase Scolnick.

THE COURT:  Good afternoon.

What is up?

MS. HARRIS:  Your Honor, we're here for a change of plea hearing pursuant to a plea agreement.

THE COURT:  Is there a written agreement?

MS. JAGER:  There is, your Honor.

THE COURT:  Can I see it.

MS. JAGER:  Your Honor, I'm also going to pass up paperwork regarding defendant's consent to removal and in it is an order for your Honor to sign as marked.

THE COURT:  Okay.

MS. JAGER:  Thank you.

THE COURT:  I can't let you plead guilty, Mr. Babafemi, unless I'm sure you understand the rights you would be giving up by pleading guilty and the punishments I can impose upon you if you plead guilty.

If I say anything that you don't understand, please tell me so I can rephrase it.

THE DEFENDANT:  Yes.

THE COURT:  Do you understand?

THE DEFENDANT:  Yes, sir.

THE COURT:  You will do that, you will tell me if I say something that you don't understand?

THE DEFENDANT:  Yes.

THE COURT:  You'll be placed under oath in a moment which means you have to tell the truth, otherwise if you knowingly make a false statement, you could be prosecuted for perjury.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  Ilene, please swear Mr. Babafemi.

(Defendant sworn.)

THE COURT:  Yes, you can just say yes if you mean it.

THE DEFENDANT:  Yes.

THE COURT:  You will tell the truth?

THE DEFENDANT:  Yes.

ALLAN R. SHERMAN, CSR, RPR  Official Court Reporter
United States District Court  Eastern District of New York

THE COURT:  How old are you?

THE DEFENDANT:  24.

THE COURT:  How far did you go in school?

THE DEFENDANT:  Higher institution but I dropped out eventually.

THE COURT:  How old were you when you dropped out?

THE DEFENDANT:  26.

THE COURT:  You can read and write in English?

THE DEFENDANT:  Yes, sir.

THE COURT:  Have you been able to communicate effectively with your lawyers?

THE DEFENDANT:  Yes, sir.

THE COURT:  Are you satisfied so far with the representation that they have given you?

THE DEFENDANT:  Perfectly.

THE COURT:  Is your mind clear right now?

THE DEFENDANT:  I'm okay, sir.

THE COURT:  I'm glad your okay but I really want to know if your mind is clear.

THE DEFENDANT:  Yes.

THE COURT:  Don't be offended by these questions.  I ask them of everybody who pleads guilty.

Understood?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand why you are here and

what this proceeding is all about?

THE DEFENDANT:  Yes, sir.

THE COURT:  Have you had any alcohol or medication or drugs in the last 24 hours?

THE DEFENDANT:  No, except the drug for my high blood pressure.

THE COURT:  And you took that medication, I hope?

THE DEFENDANT:  Yes, sir.

THE COURT:  Does that get in the way of you thinking clearly?  Does it affect your ability?

THE DEFENDANT:  Not at all.

THE COURT:  Have you ever been treated by a psychiatrist?

THE DEFENDANT:  No.

THE COURT:  Ms. Hoyes, do you have any reason to doubt your client's competence to plead guilty?

MS. HARRIS:  I do not, your Honor.

THE COURT:  Mr. Babafemi, I'm sure you know this but you have a right to stick with your pleas of not guilty.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If you do that, we already have a trial date.  Understood?

THE DEFENDANT:  Yes.

THE COURT:  That means you'll have a speedy public

ALLAN R. SHERMAN, CSR, RPR  Official Court Reporter
United States District Court  Eastern District of New York

trial to a jury of the charges against you in this indictment.

Do you understand?

THE DEFENDANT:  Yes, sir.

THE COURT:  If you went down that road to trial instead of pleading guilty, the purpose of the trial would not be for you to prove that you are innocent.  You wouldn't have to prove anything.  The burden would be on them, the government, to prove you guilty beyond a reasonable doubt.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  In fact, you would be presumed innocent. Very important principle, protection.  You would be presumed innocent by the jury throughout the trial and in fact throughout the jury's deliberations and that presumption of innocence itself standing alone would be enough to require the jury to find you not guilty of the particular charge it was considering unless the government proved you guilty beyond a reasonable doubt to the satisfaction of all 12 jurors unanimously?

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  If you went to trial, you wouldn't go alone.  You would be accompanied by Ms. Hoyes and Mr. Scolnick.  They are very able trial lawyers.  The three of you would see and hear the government witnesses against you.

You would be seated at that table over there.  The witnesses would testify from right here.  Your lawyers could cross-examine the government's witnesses, object to the government's evidence, offer evidence in defense of the charges if you wished.

Your lawyers would have access to the subpoena power of the Court, meaning they could force witnesses to come to court to testify in your defense.

You would have all those rights if you went to trial on these charges.

Do you understand?

THE DEFENDANT:  Yes, sir.

THE COURT:  In addition, you'd have the right to testify if you wanted to.  And that means you could not testify if that's what your decision was and, because you have a right to remain silent, and you also have a right to a jury that would respect your right to remain silent, a jury that wouldn't hold it against you in any way, draw any inference against you.

For example, it wouldn't hold it against you in any way, shape or form if you decided to sit at the table and not to testify.

Do you understand?

THE DEFENDANT:  Yes, sir.

THE COURT:  From the moment we began picking a jury,

I would have that in mind, a jury that would not hold your silence against you in any way, shape or form.

If I wasn't comfortable with a particular juror in that regard, I would kick the person off the jury panel.  They wouldn't sit.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  If you plead guilty and I accept your plea, your pleas, what will happen today is I'll accept your pleas of guilty on count one and two.  We'll come back in a few months for sentencing.

Once you are sentenced on counts one and two, then counts three and four will be dismissed.

Understood?

THE DEFENDANT:  Yes, sir.

THE COURT:  And that means there will be no trial.  We'll skip that whole trial part and by giving up your right to a trial, obviously you would be giving up the right to have the jury in the trial that I've been going over?

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  Also, pleading guilty includes me asking you what you did that makes you guilty.  You are going to have to answer.  We'll get to that in a few minutes.  I bring it up now to highlight for you, emphasize for you that just offering

ALLAN R. SHERMAN, CSR, RPR  Official Court Reporter
United States District Court  Eastern District of New York

up a plead of guilty like you want to do today requires you to give up your right to remain silent and in a few minutes you are going to become a witness against yourself by telling me why you are guilty, the only witness against yourself on whose words I'm going to find you guilty of two very serious crimes.

Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you want to give up your right to a trial and all the rights you would have at trial by pleading guilty, is that what you want?

THE DEFENDANT:  Yes.

THE COURT:  I have marked as Court Exhibit 1 this plea agreement.  It appears to bear your signature on page 6, quite an exotic signature.  I'll ask Ilene to show it to you and ask you to confirm if that is in fact your signature.

Is it?

THE DEFENDANT:  Yes.

THE COURT:  Have you read the entire agreement?

THE DEFENDANT:  Yes, I did.

THE COURT:  Have you had enough time to go over it with your lawyers?

THE DEFENDANT:  Yes.

THE COURT:  Ms. Hoyes, do you feel the same way?

MS. HARRIS:  Yes.

THE COURT:  I'm not going to go over every provision

ALLAN R. SHERMAN, CSR, RPR  Official Court Reporter
United States District Court  Eastern District of New York

in this agreement with you because you are well counseled.  I am going to reference the parts of it that bear directly on today's business which is the entry of a plea of guilty, pleas of guilty.

I do want you to know, Mr. Babafemi, however, that if you have any questions about your agreement, no matter what part of the agreement your question is about, now would be the best time to raise it, your question, and I'll do my best to answer it.

Do you understand?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you promise me that if you have a question about your agreement, you'll raise it?

THE DEFENDANT:  Yes.  I do.

THE COURT:  Just so I'm clear, counsel, there are two counts, an estimated range of 292 to 360 estimated on the part of the government.  He gets that third level.

MS. JAGER:  That is correct, judge.

THE COURT:  An appeal waiver if it's 360 or below.

What is the understanding in here about the defendant stipulates to the guideline calculation, except, there is a couple of adjustments.

What is --

MS. HARRIS:  We have the right to argue for two particular adjustments.

ALLAN R. SHERMAN, CSR, RPR  Official Court Reporter
United States District Court  Eastern District of New York

THE COURT:  What is 2D1.1, the reduction of levels under that conspiracy?

MS. HARRIS:  Yes.

MS. JAGER:  Yes.

THE COURT:  3B1.2B, minor role.

MS. HARRIS:  Yes.

THE COURT:  You face on each of the two counts a maximum term of imprisonment of 15 years.  Understood?

THE DEFENDANT:  Yes.

THE COURT:  You face a supervised release term again on each of the two counts.  It could be as long as the rest of your life.

Understood?

THE DEFENDANT:  Yes.

THE COURT:  The two components of your sentence apart from a possible fine, apart from financial punishments, two components of your sentence are you face a possible jail term?

THE DEFENDANT:  Yes.

THE COURT:  In your case, it's a maximum of 30 years.

Understood?

THE DEFENDANT:  Yes.

THE COURT:  Those two fifteen year counts can go back to back.

Understood?

THE DEFENDANT:  Yes.

THE COURT:  And then if you get a jail term, you'll also likely, you can count on it for today's purposes, get a supervised release term that follows the jail term.

Follow me so far?

THE DEFENDANT:  Yes, sir.

THE COURT:  And the supervised release term you could get sentenced to that would follow your prison term could be any term of years up to the rest of your life.

Do you understand?

MS. HARRIS:  Your Honor, I think the provision is -- one thing I've explained to Mr. Babafemi is that is unlikely to have practical application since it's basically a foregone conclusion that he will be removed from the United States following his prison term, so he is aware that is statutorily in place.

THE COURT:  Understood.

Remind me of what country your client is a citizen?

MS. HARRIS:  Nigeria.

THE COURT:  We don't have provisional supervision in Nigeria.  For you, that is the one good thing about all this release stuff.  In the typical case, if someone is not going to be deported or removed, they get out of prison, they are released but the case isn't over.  That's why they call it

supervised release.  And if they are here in America, they have to report to a probation officer, follow a bunch of rules.

Understood?

THE DEFENDANT:  Yes, sir.

THE COURT:  You'll be on supervised release but it's not going to matter a whole lot for you because you are going to be -- I see you have this waiver of -- what do they call this stuff, waiver of removal, intent to request judicial removal.  So you have agreed to be sent back to Nigeria.

Right?

THE DEFENDANT:  Yes.

THE COURT:  So you'll be sent back to Nigeria after your jail term is over.  Probably you should count on it. You'll still be on supervised release but since we don't have any probation officers there, you'll be like a completely free person in Nigeria at least as far as this case is concerned.

Now do you understand?

THE DEFENDANT:  Yes, sir.

THE COURT:  Here's the one minor way, not minor, it's major but the possibility that it will happen is minor, the one way in which supervised release might affect someone in your circumstances would be if you tried to come back into the United States.  Because then they would bring a new case against you, illegally reentry, and then they would also say

he is in violation of his supervised release in this case.

So they might ask me to put you back in jail for a couple of years on this case because you violated the terms of your supervised release by trying to come back in.

Do you understand what I said?

THE DEFENDANT:  Yes.

THE COURT:  Did you think you understand the supervised release stuff?

THE DEFENDANT:  To some extent.

THE COURT:  To what extent don't you think you understand it?

THE DEFENDANT:  I think I understand.

THE COURT:  The punch line is it's really not going to matter for you because you are going to be sent back to Nigeria and the one exception to that is it will matter for you if during the term of your supervised release you try to come back into the United States illegally.

Understood?

THE DEFENDANT:  Yes, sir.

THE COURT:  Now you got it?

THE DEFENDANT:  Yes, sir.

THE COURT:  You face a fine subject to your ability to pay, meaning if you can demonstrate that you are unable to pay a fine, I won't impose one.

If you can, I will.  And the maximum fine I can

ALLAN R. SHERMAN, CSR, RPR  Official Court Reporter
United States District Court  Eastern District of New York

impose on each of the two counts is $250,000.

Understood?

THE DEFENDANT:  I understand but.

THE COURT:  What?

THE DEFENDANT:  If -- definitely I can't be able to pay any fine because I'm like financially handicapped.  So I want to say so would there be any sanction in place of the sanction of the fine?

THE COURT:  Well, there will be other sanctions but if you are financially handicapped as you say, and a lot of people are, there is just no fine that is imposed.

Okay?

THE DEFENDANT:  Thank you, sir.

THE COURT:  You are welcome.  It's not me doing that, it's just the law.

You face $200 in special assessments, a hundred dollars on each count.  I have to impose it no matter what, even if you can't pay it, but they don't keep you in jail any longer if you can't pay.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  Finally, there is another form of financial punishment that you may get, may face, called restitution by which you could be ordered to pay back, compensate the victim or victims of your crime, crimes.

Do you understand?

THE DEFENDANT:  No, sir.

THE COURT:  Let's find out what is coming in in that regard.

MS. JAGER:  We don't anticipate any restitution.

THE COURT:  So don't worry about restitution.

Now, each of these possible penalties exist for each of the two counts.  It doesn't really matter for supervised release for lots of reasons but as I have already suggested, you don't face a maximum term of imprisonment of 15 years, you face a maximum term of imprisonment of 30.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  Good.

What will happen is I will determine what I believe is the just punishment.  If that happens to be greater than 15 years, I'll give you 15 on one count, then a consecutive, additional amount on the second count to get to what I think is the just punishment.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  In no event can it be more than 30 years.

Understood?

THE DEFENDANT:  Yes, sir.

THE COURT:  I've already mentioned the estimated guideline range which is subject to some possible arguments at a later stage, meaning the government estimates it will be 292 to 360 months.

You have agreed to dispute, you have agreed -- excuse me, not to dispute the computation of the range except in two respects, and that is under two provisions of the Guidelines Manual, your lawyers have reserved the right to argue for a lower range than the one the government will argue for.

Do you understand all of this?

THE DEFENDANT:  No.

THE COURT:  I take it on the 2X1.1 is the idea that it got caught early enough, you got caught early enough that he is entitled to a three-level adjustment?

MS. HARRIS:  Yes.

THE COURT:  What are you arguing for, a minor role?

MS. HARRIS:  Minor role.  And I'm not certain that we will make the application but we have the right to.

THE COURT:  Let me tell you the important part. There is going to be some argument about exactly what your range is.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  But everything that is in the agreement

is between you and the government.

Do you understand?

THE DEFENDANT:  Yes, sir.

THE COURT:  I'm the one who actually figures out what your range is and none of is this binding on me.

Understood?

THE DEFENDANT:  Yes, sir.

THE COURT:  So I'll do the best I can to apply the law, the Sentencing Guidelines to the facts of your case and to get it right but I'm the one who does it and once I'm done with that, that's going to be your sentencing range.

Understood?

THE DEFENDANT:  Yes, sir.

THE COURT:  And if you are not happy with what I come up with, if I agree with the government and you are not happy with that, or for that matter, even if I come back with a higher range than the government, that is not going to be a basis on which you'll be able to take back your plea of guilty.

Do you understand?

THE DEFENDANT:  Yes, sir.

THE COURT:  You've given up your right to appeal from or change in any other way any sentence you that get in this case as long as you don't get more than 30 years in prison.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  If you go to trial on these two charges, the government would have to prove the following on count one. By the way, have you read the indictment?

THE DEFENDANT:  Yes, sir.

THE COURT:  Count one charges a conspiracy to provide material support to a foreign terrorist organization.

If you went to trial on this charge, the government would have to prove beyond a reasonable doubt two things; one, that this agreement, this conspiracy existed, this conspiracy to provide material support and resources to Al Qaeda in the Arabian Peninsula.

And second, it would have to prove beyond a reasonable doubt that you were part of the agreement, you were one of the people who agreed to provide material support to that organization.

Those are the two, we call them elements, ingredients of the crime charged.

Understood?

THE DEFENDANT:  Yes, sir.

THE COURT:  For count two, it's similar but it doesn't charge a conspiracy.  For count two, the government would have to prove beyond a reasonable doubt that between January of 2010 and August of 2011, you actually provided or

attempted to provide material support and resources to Al Qaeda in the Iranian Peninsula, it wasn't by accident or mistake, that you did so knowingly.

Those are the things the government would need to prove beyond a reasonable doubt before it could ask a jury to find you guilty of that.

Do you understand this charge?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you have any questions about the rights you would be giving up by pleading guilty, Mr. Babafemi?

THE DEFENDANT:  No.

THE COURT:  Do you have any questions about the punishments you face if you plead guilty?

THE DEFENDANT:  No.

THE COURT:  Sure?

THE DEFENDANT:  I'm sure.

THE COURT:  Do you have any questions about your plea agreement?

THE DEFENDANT:  No.

THE COURT:  Do you understand the charges that you want to plead guilty to?

THE DEFENDANT:  Yes, sir.

THE COURT:  Are you ready to plead guilty?

THE DEFENDANT:  Yes, sir.

THE COURT:  Ms. Hoyes, Mr. Scolnick, do you know of any reason why your client should not plead guilty?

MS. HARRIS:  No, your Honor.

MR. SCOLNICKJ:  No, your Honor.

THE COURT:  Mr. Babafemi, this first count, conspiracy to provide material support to Al Qaeda in the Iranian Peninsula, how do you plead, guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  As to count two, the charge that you actually provided or attempted to provide material support to that organization, how do you plead, guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  Tell me briefly in your own words what you did that makes you guilty?

THE DEFENDANT:  I did meet the Al Qaeda in Yemen and I collected some amount of money from them to recruit English speaking Nigerians for them.  And when I eventually got to Nigeria, I indeed made attempt to recruit two persons for them.

THE COURT:  This was during the period between January of 2010 and August of 2011?

THE DEFENDANT:  Yes.

THE COURT:  And when you -- did you take the money from Yemen and go back to Nigeria?

THE DEFENDANT:  Yeah, I took the money but I -- I

took the money.  Eventually I went to Nigeria.

THE COURT:  When you took the money, when you were in Yemen, did you agree with at least one other person to provide material support to Al Qaeda in the Iranian Peninsula?

THE DEFENDANT:  Yes, I did.

THE COURT:  And I take it that that material support took the form when you got back to Nigeria of recruiting English speaking Nigerians for Al Qaeda in the Iranian Peninsula?

THE DEFENDANT:  Yes.

THE COURT:  What else is there by way of an actual basis?

I think that covers it.

Do you agree?

MS. JAGER:  Yes, your Honor.

THE COURT:  I find that Mr. Babafemi is acting knowingly and voluntarily.

Let me ask you this.  Is anybody pressuring you to plead guilty?

THE DEFENDANT:  No, sir.

THE COURT:  Is this your own decision after consulting with your lawyers about your options?

THE DEFENDANT:  Yes.

THE COURT:  Are there any, apart from these promises that are in writing in this plea agreement, any other promises

that have been made to you to get you to plead guilty?

THE DEFENDANT:  No, your Honor.

THE COURT:  I'm sorry?

THE DEFENDANT:  No, sir.

THE COURT:  Has anybody promised you what sentence you will get in the case?

THE DEFENDANT:  No, sir.

THE COURT:  And this is what you want to do?  You don't want to go to trial, you would rather plead guilty?

THE DEFENDANT:  Yes, sir.

THE COURT:  I find he is acting knowingly and voluntarily.  He understands the rights he is giving up, the punishments he faces.  I find there is a factual basis for his pleas of guilty to count one and two, so I accept the pleas.

What is your date?

THE CLERK:  August 27 at 3:30.

MS. JAGER:  Your Honor, if I may interject, the one thing I don't believe your Honor covered was the consent to removal which was stipulated to in the plea agreement.

THE COURT:  Yes, what is this?

MS. JAGER:  I'm not certain if you covered the appellate waiver at all.

THE COURT:  I have an order of judicial removal. Let me say what I think the essence of this is and smarter minds will correct me if I go wrong.

I have these documents here, a document from the Immigration and Customs Enforcement that concurs in your notice of intent to request judicial removal.  And I guess what this means is we are replacing me for the immigration authorities' consent that for the removal.

Is that what I'm doing?

MS. JAGER:  May I have a moment, your Honor?

THE COURT:  Yes.  I have a little sticky that says sign here below the words:  "It's hereby ordered that the defendant is removed from the United States to Nigeria promptly upon his sentencing," so I guess --

MS. JAGER:  I think that is correct, your Honor.

THE COURT:  So as I understand it, you are agreeing to make it easier for the United States to send you back to Nigeria by signing these documents that will allow me to order you removed to Nigeria promptly upon my imposition of sentence on you.

Is that your understanding too?

THE DEFENDANT:  Yes.

THE COURT:  Is that what you want?

THE DEFENDANT:  Yes, sir.

THE COURT:  You have given up rights, you could -- I don't know you what you would argue, but you could prolong it I guess if you wanted to stick around.  You have given all that up.

ALLAN R. SHERMAN, CSR, RPR  Official Court Reporter
United States District Court  Eastern District of New York

Understood?

THE DEFENDANT:  Yes.

MS. JAGER:  Thank you, your Honor.

THE COURT:  Is that enough?

MS. JAGER:  Yes.

THE COURT:  Do I have to sign this now?  Am I supposed to sign this now?

MS. JAGER:  Yes, I believe so, your Honor.

THE COURT:  How are they treating you in prison?

THE DEFENDANT:  I'm okay.

THE COURT:  Anything else today?

MS. JAGER:  Not from the government, your Honor.

THE COURT:  Thank you all.

MS. JAGER:  Thank you, judge.

MR. SCOLNICKJ:  Sorry to keep you waiting today.

(Matter concluded.)

ALLAN R. SHERMAN, CSR, RPR  Official Court Reporter
United States District Court  Eastern District of New York