

**ORIGINAL**

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  APR 19 2021  ★

BROOKLYN OFFICE

RECEIVED
APR 19 2021
PRO SE OFFICE

*Rec. in p drive 4/20/21 rg

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------

Lawal Babafemi,
   Petitioner

v.

United States of America,
   Respondent

Case No.: 13-CR-00109 (MKB)
---------------------------------------------

MOTION FOR RECONSIDERATION

The Petitioner, Lawal Babafemi, proceeding sui juris, in this Honorable Court, in this motion for reconsideration of the denial of his 28 USC 2255 Motion, on March 31, 2021 by Honorable Judge Cogan.

In support thereof, Mr. Babafemi states as follows:

STATEMENT OF RELEVANT FACTS

I. Procedural

On August 19, 2011, agents from the State Security Service ("S.S.S") arrested Mr. Babafemi at his home in Nigeria. See Involuntary Statement dated Nov. 15, 2011, at pg 4-5 (Exhibit A). While in custody of SSS, in Nigeria, Mr. Babafemi suffered from and was forced to endure various forms of torture, at the hands of SSS agents. Moreover, he was forced to make incriminating statements involuntarily, and against his will. See Presentence Investigation Report ("PSR") at Par. 17. These statements were subsequently presented to a grand jury in the Eastern District of New York.

In February, 2015, in the United States District Court in the Eastern District of New York, an indictment was filed charging Mr. Babafemi with four counts. The indictment was filed charging Mr. Babafemi with four counts. The indictment was premised solely on the basis of the incriminating statements Mr. Babafemi provided to SSS in Nigeria while being tortured. (Ct. Dkt. No. 1).

On October 1, 2013, Lisa Hoyes and Chase A. Scolnick were appointed to serve as trial counsel

/

for Mr. Babafemi. (Ct. Dkt. Nos. 8 & 9).

On April 29, 2014, Mr. Babafemi pled guilty before the Honorable Judge Gleeson, to Counts One and Two of that four count indictment. Count One alleged that, between January 2010, and August 2011, the defendant (Mr. Babafemi) together with others, conspired to provide material support and resources, including services and personnel, including himself, to a foreign terrorist organization, specifically, al Qaeda in the Arabian Peninsula, in violation of 18 USC 2339(a)(1); and Count Two: alleged that, between January 2010 and August 2011, the defendant (Mr. Babafemi), together with others provided, and attempted to provide material support and resources to a foreign terrorist organization, specifically, al Qaeda, in the Arabian Peninsula in violation of 18 USC 2339B(a)(1). (Ct. Dkt. No. 32).

Additionally, on April 29, 2014, during Mr. Babafemi's Rule 11 plea colloquy, the following exchange took place:

The Court: If you go to trial on these charges, the government would have to prove the following on Count One: By the way, have you read the indictment?

The Defendant: Yes, sir.

The Court: Count one charges conspiracy to provide material support to a foreign terrorist organization. If you went to trial on this charge, the government would have to prove beyond a reasonable doubt two things; one, that this agreement, this conspiracy existed, this conspiracy to provide material support and resources to al-Qaeda in the Arabian Peninsula.

And second, it would have to prove beyond a reasonable doubt that you were part of the agreement, you were one of the people who agreed to provide material support to that organization. These are the two we call them elements, ingredients of the crime charged.

Understood?

The Defendant: Yes, sir.

The Court: For count two, it's similar but it doesn't charge a conspiracy. For count two, the government would have to prove beyond a reasonable doubt that between January of 2010 and August of 2011, you actually provided or attempted to provide material support and resources to al-Qaeda in the Iranian [sic] Peninsula, it wasn't by accident or mistake, that you did so knowingly. Those are the things the government would need to prove beyond a reasonable doubt before it could ask a jury to find you guilty of that.

Do you understand that charge?

The Defendant: Yes, sir.

(See Ct. Dkt. No. 78 at 19:3-25; 20:1-8).

II. Substantive

In February 2009, Mr. Babafemi, a 29 year-old Nigerian, Muslim male, left Nigeria traveling in a motor vehicle, to Sudan, where he stayed for 10 months; studying and residing in Kahartown at a University. See Exhibit A; Involuntary Statement dated Nov. 15, 2011, at pg. 4-5.

The primary reason Mr. Babafemi left Sudan, was to find legitimate employment in Saudi Arabia. (Id. at p 6-7).

Mr. Babafemi traveled via boat from the Port of Sudan and arrived in Yemen. (Id. at p.7).

Since Mr. Babafemi didn't have enough money to travel from Yemen to Saudi Arabia, he stayed in Yemen and found legitimate employment. (Id. at p. 8). Mr. Babafemi worked on a farm for approximately two weeks, while he stayed in Yemen in 2010. Subsequently, he was arrested at a police checkpoint, because he lacked a visa, and he was imprisoned for one month. (Id.)

On March 25, 2010, Mr. Babafemi was deported back to Nigeria. (Id. at p. 9).

In December 2010, Mr. BAbafemi returned to Yemen, although, his ultimate goal and destination was still Saudi Arabia. However, when he arrived at the port in Yemen he didn't have enough money to continue his trip to Saudi Arabia. Consequently, he returned to the farm that he previously worked on in early 2010. Many other migrants worked at this farm. At the farm, Mr. Babafemi met Yahya, an Arabian Muslim male who spoke English. (Id. at p. 12).

In a short period, Yahya and Mr. Babafemi developed a cordial relationship. Yahya introduced Mr. Babafemi to a religious school in which Mr. Babafemi was interested in attending. When Mr. Babafemi discovered this school, he decided to stay in Yemen, for a short-time, for the sole purpose of learning more Arabic (Quranic verses) before proceeding to Saudi Arabia. (Id. at p. 13).

Mr. Babafemi traveled with Yahya under the pretense that Yahya would take him to a better Islamic school than the one he was attending. (Id. at p. 16-20). After Mr. Babafemi discovered that Yahya had lied about the other Islamic school, Mr. Babafemi contrived an independent plan to leave Yemen and proceed to Saudi Arabia. Mr. Babafemi informed

Yahya and another individual that he [knew] five people who would like to come to Yemen, when actually, he didn't know anyone who wanted to travel to Yemen. (Id. at 20-22). Mr. Babafemi received the money from the man in Yemen under the false pretense that he would use the money to send 5 people from Nigeria to Yemen, although he never intended to follow through with the plan. (Id.).

In May of 2011, Mr. Babafemi arrived in Saudi Arabia. Within about two-weeks he was arrested and deported back to Nigeria on June 1, 2011. (Id. at 25-26).

On or about June, 2011, in Luqman's office, Mr. Babafemi [discussed] with Luqman about going to Yemen for jihad. Meaning to strive in the cause of Allah. See (Id. at p.26); see e.g. of Jihad in the Quran at 2:16; 9:24; 22:78; 25:52. Mr. Babafemi also [discussed] the subject of traveling to Yemen with one other person. However, he wasn't interested. (Id. at p. 29).

Mr. Babafemi continued to talk to Luqman on the phone, but they agreed to never discuss Yemen again. (Id.) In late June 2011, Mr. Babafemi deleted and destroyed any contacts with the individuals in Yemen and he invested the money he accepted from the individual in Yemen. (Id.). None of the individuals in Yemen never had any means of contacting Mr. Babafemi. (Id. at p.2 2 &26).


ARGUMENTS

III. Mr. Babafemi's Guilty Plea Was Constitutionally Deficient
When The Trial Court Misinformed Him About The Nature
Of The Offense In Which He Pleaded Guilty To.

18 USC 2339(B)(a)(1) Providing material support or resources to designated foreign terrorist organizations provides in relevant part that:

(a) Prohibited activities.

(1) Unlawful conduct. Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so...To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization...that the organization has engaged or engages in terroristic activity...or that the organization has engaged or engages in terrorism...See 18 USC 2339B(a)(1). Exhibit - E.

4

In order to comply with the constitutional requirements of due process and the Fed.R.Crim.P.11, a court must determine, and the record must affirmatively demonstrate that the defendant entered a guilty plea voluntarily and with an intelligent understanding of his fundamental rights and the nature of the offense to which he pled guilty. See Boykin v. Alabama, 395 US 238, 242-43 (1969).

These requirements are inflexible, the absence of which calls the legality of the plea into question. Boykin, 395 US at 242-43. It is well-settled under Federal law that "a plea does not qualify as intelligent unless a criminal defendant first receives "real notice" of the true nature of the charges against him, the first and most universally recognized requirement of due process." Smith v. O'Grady, 312 US 329, 334 (1941).

In Bousley v. United States, 523 US 614 (1998), the petitioner, Kenneth Bousley, pleaded guilty to "using" a firearm in violation of 18 USC 924(c)(1) in 1990. Five years later, the Supreme Court held in Bailey v. United States, 516 US 137, 144 (1995), that 924(c)(1)'s "use" prong requires the government to show "active employment of the firearm." Petitioner meanwhile had sought collateral relief under 28 USC 2255, claiming that his guilty plea was not knowing and intelligent because he was misinformed by the District Court as to the nature of the charged crime. The Bousley Court held that, although his claim was procedurally defaulted, petitioner may be entitled to a hearing on the merits of it if he makes the necessary showing to relieve the default. Bousley, 523 US at 616.

The High Court pointed to its decisions that stand for the proposition that when "a substantive federal criminal statute does not reach certain conduct like decisions placing conduct beyond the power of the criminal law-making authority to proscribe, [it] necessarily carry a significant risk that a defendant stands convicted of "an act that the law does not make criminal." Bousley, 523 US at 620 (quoting Davis v. United States, 417 US 333, 346 (1974)). For under our Federal system it is only Congress, and not the courts, which make conduct criminal. Id. (quoting United States v. Lanier, 520 US 259, 267-268 (1997)).

In a concurring opinion, Justice Jackson, J. explained that "when petitioner was advised by the trial judge, by his own lawyer, and by the prosecutor that mere possession of a firearm would

*5*

support a conviction under 924(c), he received critically incorrect legal advice. The fact that all of his advisers acted in good-faith reliance on existing precedent does not mitigate the impact of that erroneous advice. Its consequences for petitioner were just as severe, and just as unfair, as if the court and counsel had knowingly conspired to deceive him in order to induce him to plead guilty to a crime that he did not commit." Bousley, 523 US at 626 (emphasis added).

In this case, Mr. Babafemi pled guilty to 18 USC 2339B(a)(1), and like Bousley, he was mis-informed by the District Court about the nature of the charges against him. Particularly, the trial court failed to inform Mr. Babafemi that if he went to trial the government would have to prove that he had "knowledge that the organization is a designated terrorist organization that engaged or engages in terrorist activity or terrorism. 18 USC 2339B(a)(1). See also, Holder v. Humanitarian Law Project, 561 US 1, 16-17 (2010)(clarifying that the requisite "mental state" required to violate 2339B is "knowledge about the organization's connection to terrorism...).

Here, Mr. Babafemi's plea did not meet this requirement. During the Rule 11 plea colloquy, the Court informed Mr. Babafemi as followed:

> The Court: Count one charges the conspiracy to provide material support to a foreign terrorist organization. If you went to trial on this charge, the government would have to prove beyond a reasonable doubt two things; one, that this agreement, this conspiracy existed, this conspiracy to provide material support and resources to al-Qaeda in the Arabian Peninsula.
>
> And second, it would have to prove beyond a reasonable doubt that you were part of the agreement, you were one of the people who agreed to provide material support to that organization those are the two, we call them elements, ingredients of the crime charged.
>
> Understood?
>
> The Defendant: Yes, sir.

(Ct. Dkt. No. 78 (Plea Hearing)) Exhibit - F

> The Court: For count two, it's similar but it doesn't charge a conspiracy. For count two, the government would have to prove beyond a reasonable doubt that between January of 2010 and August of 2011, you actually provided or attempted to provide material support and resources to Al Qaeda in the Iranian [sic] Peninsula, it wasn't by accident or mistake, that you did so knowingly. Those are the things the government would need to prove beyond a reasonable doubt before it could ask a jury to find you guilty of that.
>
> Do you understand this charge?
>
> The Defendant: Yes, sir.

(Id.). Exhibit - F

6

The Supreme Court cases make perfectly clear that a guilty plea based on such misinformation is constitutionally invalid. Smith v. O'Grady, 312 US 329, 334 (1941); Henderson v. Morgan, 426 US 637, 644-645 (1976). "Such circumstances inherently results in a complete miscarriage of justice and present[s] exceptional circumstances that justify collateral relief under 28 USC 2255." Bousley, 523 US at 626 (quoting Davis, 417 US at 346-347).

"Because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses and understanding of the law in relation to the facts." McCarthy v. United States, 394 US 459, 466 (1969). In Bradshaw v. Stumpf, 545 US 175 (2005), the Supreme Court further clarified that:

> A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowing and intelligently," with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 US 741, 748 (1970).

> Where a defendant pleads guilty to a crime without having been informed of the crimes elements, this standard is not met and the plea is invalid. Henderson v. Morgan, 426 US 637 (1976).

Accordingly, Mr. Babafemi's conviction under 18 USC 2339B(a)(1) should be vacated because neither he, nor his counsel, nor the district court correctly understood the nature of his charged crime.

CONCLUSION

Wherefore, based on the foregoing, this Court should reconsider Mr. Babafemi's 28 USC 2255 motion; (2) conduct a hearing on the merits of his misinformation claim; and (3) provide him an opportunity to prove his innocence to overcome the procedural default.

Respectfully Submitted on this _12_ day of April, 2021,

/s/_____
Lawal Babafemi
USM No.:
LSCI Allenwood
PO Box 1000
White Deer, PA 17887

7





U.S. POSTAGE PAID
FCM LG ENV
WHITE DEER, PA
17887
APR 13, 21
AMOUNT
$0.00
R2305K138972-06

11201

USMS

◇82814-053◇
U S District Court
Eastern District NY
225 Cadman PLZ E
Brooklyn, NY 11201
United States

CERTIFIED MAIL®

7018 2290 0001 6395 9187

UNITED STATES
POSTAL SERVICE®

1000

Babafemi, Lawal O.
Fed. Reg # 82814-053
Allenwood Low Security
Correctional Inst.
PO Box 1000
White Deer, PA 17887

Low Security Correcti
Allenwood, PA
Date  4-12-21
The enclosed letter was proc
special mailing procedures for
you. The letter has neither be
inspected. If the writer raise
problem over which this
jurisdiction, you may wish
material for further informatio
If the writer encloses corre
forwarding to another addres
enclosure to th
to anothe